**No. 23-15337**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

LORETTA WILLIAMS,

*Plaintiff-Appellant*,

v.

WHAT IF HOLDINGS, LLC, D/B/A C4R MEDIA CORP., AND
ACTIVEPROSPECT, INC.,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Northern District of California
No. 3:22-cv-03780-WHA
Hon. William Alsup

_____

**APPELLANT'S OPENING BRIEF**

_____

Patrick H. Peluso
Woodrow & Peluso, LLC
3900 E. Mexico Ave., Suite 300
Denver, CO 80210
(720) 213-0676
ppeluso@woodrowpeluso.com

*Attorneys for Appellant Loretta Williams*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... iv

INTRODUCTION ................................................................................1

JURISDICTIONAL STATEMENT ........................................................3

STATUTORY AUTHORITIES ..............................................................4

ISSUE PRESENTED .............................................................................5

STATEMENT OF THE CASE................................................................5

SUMMARY OF THE ARGUMENT ......................................................10

STANDARD OF REVIEW ...................................................................11

ARGUMENT .......................................................................................12

    I.     THE DISTRICT COURT ERRED IN REQUIRING WILLIAMS TO ALLEGE USE OR AFFIRMATIVE ENGAGEMENT WITH RECORDING DATA IN ORDER TO STATE A CIPA CLAIM AGAINST ACTIVEPROSPECT AS A THIRD-PARTY EAVESDROPPER ............................................................................12

          A.    CIPA Creates Four Bases For Wiretapping Liability, Only One Of Which Requires "Use" Of Obtained Information—An Unauthorized Attempt To Read Or Learn The Contents Of A Communication Is, In Itself, Unlawful .....................................13

          B.    Unlike The *Javier* Analysis, The District Court's Distinction Of Eavesdroppers And Tape Recorders Based On Actual Use Or "Affirmative Engagement" Would Circumvent CIPA's Third Clause By Adding A Use Requirement To All Claims ...........19

          C.    Williams Alleged Sufficient Facts To Demonstrate ActiveProspect's Involvement In And Control Over The Recordings It Makes—It Is Capable Of Using The Information Independent Of Any Party To The Communication.................23

ii

CONCLUSION .................................................................................................27

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Gompper v. VISX, Inc.*,
    298 F.3d 893 (9th Cir. 2002)..............................................................11

*Graham v. Noom, Inc.*,
    533 F. Supp. 3d 823 (N.D. Cal. 2021) ...............................................20

*Hazel v. Prudential Fin., Inc.*, No. 22-CV-07465-CRB,
    2023 WL 3933073 (N.D. Cal. June 9, 2023) .....................................22

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020)....................................................... 15, 17

*In re Google Inc.*, No. 13-MD-02430-LHK,
    2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ..................................15

*Javier v. Assurance IQ, LLC*, No. 20-CV-02860-CRB,
    2023 WL 114225 (N.D. Cal. Jan. 5, 2023) ................. 9, 21–22, 25–26

*Johnson v. Blue Nile, Inc.*, No. 20-CV-08183-LB,
    2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) .....................................21

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008)...........................................................11

*Matera v. Google Inc.*, No. 15-CV-04062-LHK,
    2016 WL 8200619 (N.D. Cal. Aug. 12, 2016)...................................15

*Outdoor Media Group, Inc. v. City of Beaumont*,
    506 F.3d 895 (9th Cir. 2007)............................................................11

*Revitch v. New Moosejaw, LLC*, No. 18-CV-06827-VC,
    2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)....................................16

*Ribas v. Clark*,
    38 Cal. 3d 355, 696 P.2d 637 (1985) ..................................... 16–17, 18

*Rogers v. Ulrich*,
    52 Cal. App. 3d 894, 125 Cal. Rptr. 306 (1975)................................20

*Saleh v. Nike, Inc.*,
    562 F. Supp. 3d 503 (C.D. Cal. 2021).................................. 16, 18, 20

iv

*Smith v. LoanMe, Inc.*,
    11 Cal. 5th 183 (2021)...........................................................................17

*Tavernetti v. Superior Ct.*,
    22 Cal. 3d 187, 583 P.2d 737 (1978) ....................................................15

*Valenzuela v. Keurig Green Mountain, Inc.*, No. 22-CV-09042-JSC,
    2023 WL 3707181 (N.D. Cal. May 24, 2023) ....................................22

*Yale v. Clicktale, Inc.*, No. 20-CV-07575-LB,
    2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) ....................................21

*Yoon v. Lululemon USA, Inc.*,
    549 F. Supp. 3d 1073 (C.D. Cal. 2021)...................................... 19, 20

## Statutes

28 U.S.C. § 1291..............................................................................................3

28 U.S.C. § 1332(d), *et seq.*...........................................................................3

Cal. Penal Code § 631(a)................................................................. *passim*

## Rules

Fed. R. App. P. 3(a)(1) ...............................................................................3–4

Fed. R. App. P. 4(a)(1)(A).........................................................................3–4

Fed. R. Civ. P. 12(b)(6) ..............................................................................11

# INTRODUCTION

This lawsuit involves technology developed by Appellee ActiveProspect, Inc. ("ActiveProspect") that is used in partnership with companies like Appellee What If Holdings, LLC d/b/a C4R Media Corp. ("C4R") to covertly monitor and record individuals' interactions with a website.

Appellant Loretta Williams ("Williams") respectfully appeals from the District Court's dismissal of her complaint and denial of her motion for leave to amend based on the conclusion that she did not allege that ActiveProspect used the information that it obtained by recording Williams' visit to C4R's website.

To recap, in December 2021, Williams visited a website owned by C4R and provided her personal information in an attempt to take advantage of an offer being advertised by C4R. Unbeknownst to her, while she was using the website, ActiveProspect was secretly monitoring her visit, recording not only her mouse movements and keystrokes, but the personal information that she was entering on the website and communicating to C4R. Williams subsequently filed suit against ActiveProspect and C4R for alleged invasion of privacy and violation of the California Invasion of Privacy Act ("CIPA"), specifically Section 631's prohibitions on wiretapping. Williams alleged that ActiveProspect violated the law by reading the contents of her communication while it was in transit and without

1

her consent, and she alleged that C4R violated the law by employing or conspiring with ActiveProspect to do so.

Following motions to dismiss, the District Court dismissed Williams' claims, finding that she lacked allegations that ActiveProspect "aggregates," "processes," "uses," or "affirmatively engages" with the intercepted communication and thus supposedly is more akin to a tape recorder than an eavesdropper. Williams moved to amend her complaint with further details about ActiveProspect's involvement with and control over the recordings, but the District Court denied her leave to amend.

Williams appeals both the dismissal of her claims and the denial of leave to amend because the District Court's determination was made in error. The imposition of a "use" requirement for her to state a claim is flawed because Section 631 provides a separate and distinct basis for liability arising from the use of intercepted communications, and Williams did not make a claim under that clause. Further, the District Court erred in declining to adopt the analysis set forth in another case in the Northern District of California, *Javier*, which correctly concluded that there is no basis to impose a "use" requirement on all CIPA claims. Accordingly, under the *Javier* analysis—which considers *capability* for use as opposed to actual use—Williams alleged adequate facts in both her initial

2

complaint and the proposed amended complaint to demonstrate that ActiveProspect is an eavesdropper, not merely the provider of a tape recorder.

The District Court's determinations were made in error, and the Court should reverse and remand for proceedings under the appropriate analysis.

## JURISDICTIONAL STATEMENT

The United States District Court for the Northern District of California had subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), *et seq.* ("CAFA"), because the alleged classes consist of over 100 people, at least one member of each class is a citizen of a different State than the Defendants, and the amount in controversy exceeds $5,000,000. Further, none of the exceptions to CAFA jurisdiction apply.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because the present appeal is from a final decision and judgment entered by the Northern District of California, which disposed of all of Williams' claims. The District Court dismissed Williams' complaint on December 22, 2022, permitting Williams to seek leave to amend. (ER-38.) Following briefing, the District Court denied Williams' motion for leave to amend her complaint and entered final judgment against Williams on February 13, 2023. (ER-4, ER-7.) Williams timely filed a notice of appeal on March 7, 2023. (ER-69.) The appeal is timely pursuant to Fed. R. App. P. 3(a)(1)

and 4(a)(1)(A) because it was filed within thirty (30) days of the District Court's order and entry of final judgment.

## STATUTORY AUTHORITIES

### CAL. PENAL CODE § 631(a)

(a)     Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

-     or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state;

-     or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

4

- or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section,

is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170, or by both a fine and imprisonment in the county jail or pursuant to subdivision (h) of Section 1170. If the person has previously been convicted of a violation of this section or Section 632, 632.5, 632.6, 632.7, or 636, the offense is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170, or by both that fine and imprisonment.

## ISSUE PRESENTED

Whether the District Court erred in requiring Williams to allege "affirmative engagement" or some use of intercepted communications to support a claim for liability as an eavesdropper under the California Invasion of Privacy Act where Williams did not make a claim based on "use" and the complaint otherwise alleges

facts to demonstrate that ActiveProspect is a third party that processes and controls dissemination of its recordings.

## STATEMENT OF THE CASE

On or around December 24, 2021, Williams visited the website claim.foundmoneyguide.com/api/offer—a webpage owned and operated by C4R that offered to verify whether visitors were entitled to $1,000. (ER-60.) Unbeknownst to Williams, her visit to the website was being intercepted and simultaneously recorded by ActiveProspect using its "TrustedForm" software technology. (*Id.*) This interception involved not just the personal information that Williams typed into the website (her name, address, date of birth, and phone number), but also the date and time of her visit, the browser and operating system used during her visit, her geographic location, and a visualization of her keystrokes, mouse movements, and clicks on the page. (*Id.*) ActiveProspect's technology began recording as soon as Williams arrived at the page, and it continued at least until she clicked a button to submit her information and proceed. (ER-60–62.) Williams was not informed of this recording, nor did she consent to it. (ER-62.)

On June 27, 2022, Williams filed her Complaint, bringing claims against C4R and ActiveProspect for invasion of privacy, violation of California's unfair competition law, and the California Invasion of Privacy Act—Williams contends

that ActiveProspect violated CIPA by "reading or attempting to read or learn the contents" or her message while in transit and without consent, and she asserts that C4R violated CIPA by employing or conspiring with ActiveProspect to do so. (ER-64–67.) Williams brought the claims on behalf of herself and a purported class of similarly-situated individuals. (ER-62.)

On September 12, 2022, C4R and ActiveProspect each filed a motion to dismiss for failure to state a claim. (ER-75.) Amid numerous other arguments, both C4R and ActiveProspect argued that ActiveProspect should not be considered a "third party" subject to liability for eavesdropping—they contend that ActiveProspect is akin to a tape recorder or tool and that it "does not use the information for its own purposes." (ER-47–49, ER-53–56.) Williams responded to the motions on October 3, 2022, noting in part that "use" of the intercepted communication would provide for "an additional claim for liability" under the third prong of CIPA, but that use is not required to support claims under the second and fourth prong. (ER-43.)

The District Court heard oral argument on the motions on December 14, 2022, and on December 22, 2022, the Court granted ActiveProspect's and C4R's motions to dismiss as to all of Plaintiff's claims. (ER-38, ER-76–77.) With regard to the CIPA claim in particular, the Court found that Williams' wiretapping claim failed because "the facts as pled show that TrustedForm functioned as a recorder,

and not as an eavesdropper." (ER-36.) Despite recognizing that Williams did not allege "use" as part of her claims and that the third prong of CIPA was inapplicable, the District Court ultimately reasoned in granting dismissal that there were no facts to show that ActiveProspect "intercepted ***and used the data itself***." (*Compare* ER-34, *with* ER-35) (emphasis added). The court pointed to "whether or not the alleged third-party software provider aggregates or otherwise processes the recorded information" as a "key distinction" between whether a software amounts to a tape recorder or an eavesdropper, and it further noted that Williams lacked allegations that ActiveProspect or its software "affirmatively engages with that data in any way other than to store it." (ER-35–36.) While Williams' unfair competition claim was dismissed without leave to amend, the Court ordered that Williams could otherwise "seek leave to amend" her CIPA and constitutional privacy claims by filing a motion and proposed amended complaint. (ER-38.)

Accordingly, Williams filed her motion for leave to amend on January 5, 2023. (ER-77.) In her motion, Williams reiterated that her CIPA claims were based on the second and fourth clauses and that "[u]se of the information constitutes a separate violation of CIPA" that she did not allege. (ER-30.) Nevertheless, to bolster her pleadings regarding ActiveProspect's role as an eavesdropper rather than a tape recorder, Williams' proposed amended complaint contained detailed language from ActiveProspect's patent, which indicates "processing" and

8

"affirmative engagement" with the recording data, as well as hosting the recordings independently from C4R and providing them to interested parties upon request. (ER-16–17.) Williams also included language from ActiveProspect's CEO, who described the company as an "independent third party" that monitors activity and "can send [information] directly" to requesting parties. (ER-16.)

On the same day as Williams' motion, an order was issued in *Javier v. Assurance IQ, LLC*—another case in the Northern District of California concerning similar allegations—and Williams filed a notice of supplemental authority on January 9, 2023. (ER-77.) In her reply brief to the motion for leave to amend, Williams cited to the *Javier* order, in which Judge Charles R. Breyer of the Northern District of California found that "reading a use requirement into the second prong would add requirements that are not present (and swallow the third prong in the process)"; the *Javier* court considered whether ActiveProspect "ha[s] the capability to use" the recording for other purposes, not whether it actually used or "affirmatively engaged" with the data. (ER-11) (emphasis in original).

Despite the *Javier* order and Williams' allegations detailing ActiveProspect's processing, storage, and independent hosting and dissemination of recording data, the District Court denied leave to amend, finding Williams' proposed amendment futile. (ER-7.) The court stated that its prior order did not require allegations of "use," but rather allegations of something "beyond mere

9

recordation — with use being one such example." (*Id.*) Following the District Court's order and entry of final judgment, Williams timely filed her notice of appeal. (ER-69–71, ER-77.)

## SUMMARY OF THE ARGUMENT

I.     The District Court erred in dismissing Williams' CIPA claim, and likewise erred in denying leave to amend, based on her lack of allegations related to ActiveProspect's "affirmative engagement" with or use of the recording it made of Williams' visit to the C4R website. Section 631 of CIPA provides for four separate prongs of liability for wiretapping—only one clause is based on "use" of intercepted communications, and Williams has not made a claim under the "use" prong. The Act does not require a showing of use or some "affirmative engagement" with data to establish unlawful interception, and to require such allegations in order to classify a third party as an eavesdropper would undermine BIPA and swallow the third prong entirely.

The District Court's analysis conflicts with the approach that was taken in *Javier*, where a third party's *capacity* to use the communications (as opposed to actual use) was the relevant consideration. Williams has alleged sufficient facts to establish ActiveProspect's role in processing the recordings and its ability to disclose the communications independent of C4R's control. ActiveProspect's role

10

was that of a third-party eavesdropper, not merely a tape recorder possessed by a party to the communication.

The District Court's finding that Williams did not allege facts to support a finding that ActiveProspect was an eavesdropper—based on its determination that she must allege use, "affirmative engagement," or something else beyond recording of the communication—was made in error, and its orders dismissing Williams' complaint and denying her leave to amend should be reversed.

## STANDARD OF REVIEW

A district court's decision to grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is reviewed *de novo*. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030 (9th Cir. 2008) (citing *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007)). The reviewing court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek*, 519 F.3d at 1031.

Denial of leave to amend is reviewed for an abuse of discretion. *Id.* "Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." *Id.*; *Gompper v. VISX, Inc.,* 298 F.3d 893, 898 (9th Cir. 2002).

**ARGUMENT**

I.   **THE DISTRICT COURT ERRED IN REQUIRING WILLIAMS TO ALLEGE USE OR AFFIRMATIVE ENGAGEMENT WITH RECORDING DATA IN ORDER TO STATE A CIPA CLAIM AGAINST ACTIVEPROSPECT AS A THIRD-PARTY EAVESDROPPER.**

The District Court's determination that Williams' complaint lacked allegations related to ActiveProspect's use, aggregation or processing, or other "affirmative engagement" of the communication that it recorded was made in error, and the dismissal of Williams' complaint and subsequent denial of leave to amend resulting from that conclusion should be reversed. While the District Court correctly noted in its order of dismissal that "use" of information in an unlawfully-intercepted communication constitutes a separate violation of CIPA, the Court thereafter imposed a use requirement in its analysis of whether ActiveProspect's TrustedForm software could be considered akin to an eavesdropper or a tape recorder. Because an eavesdropper may be held liable and a tape recorder may not, deciding between the two based on use of the data would render the third clause of Section 631 superfluous, as all plaintiffs would be required to allege use to classify third parties as eavesdroppers, regardless of the CIPA clause under which their claim is brought.

The District Court's analysis in *Javier* provides a more meaningful avenue to distinguish "eavesdropper" parties from "tape recorder" parties without

12

swallowing a prong of Section 631—the District Court there considered the *capability* of the third party to use the intercepted information to find that the same TrustedForm software at issue in this case was not akin to a tape recorder as a matter of law.

Williams made allegations below that detailed ActiveProspect's patent and the involvement that its software has in processing and storing the recordings it makes—including the ability to produce recordings on command and provide them to any requesting party. These allegations plainly demonstrate ActiveProspect's capability to use or communicate the underlying information obtained completely independently from the control of a party to the communication—in this case, C4R. As such, Williams' allegations establish beyond a speculative level that ActiveProspect was akin to an eavesdropper, rather than a tape recorder, who may be held liable for CIPA violations.

In light of Section 631's distinct clause based on use, as well as the Northern District of California's analysis in *Javier* that distinguished eavesdroppers from tape recorders without imposing a use requirement, the District Court's orders of dismissal and denial of leave to amend were made in error and should be reversed.

A.   **CIPA Creates Four Bases For Wiretapping Liability, Only One Of Which Requires "Use" Of Obtained Information—An Unauthorized Attempt To Read Or Learn The Contents Of A Communication Is, In Itself, Unlawful.**

Williams' claim for unlawful interception of her communications is rooted in Section 631 of CIPA, which creates liability for a number of wiretapping-related activities. The wiretapping prohibition contains four separate clauses, each of which constitutes a distinct violation of the law. The two prongs of liability that form the basis of Williams' claim do not involve "use" of the information obtained—instead, the attempt to read or learn the contents of her communication without her consent is, in itself, a violation of the law. Accordingly, the District Court erred in determining that Williams must allege more than "mere recordation" to maintain her claim.

Section 631 of CIPA makes the following actions punishable by fine or imprisonment: (1) intentionally tapping or making an unauthorized connections with a telephone line or instrument; (2) willfully reading or attempting to read or learn the contents of a communication in transit over any wire without consent of all parties; (3) using or attempting to use or communicate information obtained through the above-described actions; and (4) aiding, employing, or conspiring with another person to do any of the above. CAL. PENAL CODE § 631(a). Put another way, Section 631(a) imposes liability "for three distinct and mutually independent patterns of conduct: [1] intentional wiretapping, [2] willfully attempting to learn the contents or meaning of a communication in transit over a wire, and [3] attempting to use or communicate information obtained as a result of engaging in

14

either of the previous two activities," with a fourth prong establishing conspirator liability. *See Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192, 583 P.2d 737 (1978).

While the first prong plainly applies to a traditional wiretap, the second prong of Section 631(a) has been frequently read to apply to new technologies that fit within the confines of the statutory language, including internet communications. *See, e.g.*, *Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 8200619, at *20 (N.D. Cal. Aug. 12, 2016) (applying Section 631 to emails); *In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013) (same); *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (finding standing to pursue CIPA claims for tracking of browsing history).

In the case below, Williams brought a claim against C4R and ActiveProspect under the second and fourth clauses of Section 631(a)—she alleged that ActiveProspect's TrustedForm software "read or attempt[ed] to read or learn the contents or meaning" of her communications in transit without consent (a violation of the second prong), and she alleged that C4R "partnered with (and conspired with) ActiveProspect" to do so (a violation of the fourth prong). (ER-65–66.) Neither of these clauses contains language referring to "use" or further communication of the information obtained, and accordingly a plaintiff need not show use of the intercepted communication to state a claim for relief under the

15

first, second, and fourth prongs of Section 631(a). *See* CAL. PENAL CODE § 631(a).

Rather, use or communication of information obtained by wiretap or unauthorized

interception would result in *another* violation of Section 631(a), under the third

prong. *Id.*

      In other words, tapping a wire or attempting to read or learn the contents of a

communication in transit is enough on its own to constitute unlawful conduct,

regardless of whether the third party uses the information beyond the purposes of a

party to the communication. The same logic applies to internet communications as

to traditional phone conversations: to permit website owners like W4R to hire third

parties to secretly record user communications as long as they do so at the

direction and for the benefit of a party to the communication would "vitiate the

statute's protections." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal.

2021). An eavesdropper who is authorized by a party to tap or record a

communication is always doing so at the direction of said party—this does not

circumvent or negate liability. *Id.* at 520–21 (citing *Revitch v. New Moosejaw,*

*LLC*, No. 18-CV-06827-VC, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019)

("Although Moosejaw cannot be liable for eavesdropping on its own

communications with Revitch, the complaint adequately alleges that Moosejaw

violated section 631 by enabling [a third party's] wrongdoing."); *Ribas v. Clark*, 38

Cal. 3d 355, 358–62, 696 P.2d 637 (1985) (holding individual liable for

eavesdropping on conversation between a husband and wife when directed to do so by the wife). These standards comport with the purpose of wiretapping laws, which is "to prevent the acquisition of the contents of a message by an unauthorized third-party or 'an unseen auditor.'" *In re Facebook*, 956 F.3d at 608; *see also Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 200 (2021) (noting distinction between secondhand repetition of a conversation and "simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device").

In its order on the motions to dismiss, the District Court below demonstrated an awareness of the distinct "use" clause in Section 631(a): "[Williams] makes no allegation that ActiveProspect used her information in any way, so the third clause of Section 631(a) is inapplicable here." (ER-34.) Nevertheless, the Court ultimately granted dismissal because it found that Williams lacked allegations that ActiveProspect "aggregates or otherwise processes the recorded information," "used the data itself," or "affirmatively engages with that data in any way other than to store it"—all of which would amount to a "use[] . . . in any manner" as proscribed by the third clause of CIPA Section 631(a). *Compare* (ER-35–36), *with* CAL. PENAL CODE § 631(a). In both traditional phone cases like *Ribas* and internet communication cases like *Saleh*, for example, it is the eavesdropping itself that is actionable, regardless of what the third party did or did not do with the information

17

they obtained. *Compare Ribas*, 696 P.2d at 640, *with Saleh*, 562 F. Supp. 3d at 520–21. The District Court erred in imposing a use requirement on claims that otherwise do not require a showing that intercepted data was "used" in any way.

In denying Williams leave to amend her complaint, the District Court attempted to soften its stance:

> Our prior order did not find that use of recorded data *must* be alleged, but rather that the *lack* of any allegations beyond mere recordation — with use being one such example — therefore means TrustedForm as described in our [sic] complaint functioned as a recorder, not an eavesdropper.

(ER-7.) This explanation fares no better, as what the Court describes as "mere recordation" can, in fact, constitute a violation of CIPA. The first clause proscribes wiretapping generally, while the second clause likewise prohibits an unauthorized party from reading or attempting to read or learn the contents of a communication in transit—neither of these prohibitions are concerned with the purpose or subsequent use of obtained information. CAL. PENAL CODE § 631(a).

While there is a distinction between technology that is considered akin to an eavesdropper and that which is akin to a tape recorder, a distinction that Plaintiff will address below, the District Court's decision to define the lines between the two according to "use" or some "affirmative engagement" beyond recordation was made in error, and it effectively swallows and nullifies an entire clause of Section

18

631(a). Accordingly, the Court's dismissal and denial of leave to amend should be reversed.

**B.    Unlike The *Javier* Analysis, The District Court's Distinction Of Eavesdroppers And Tape Recorders Based On Actual Use Or "Affirmative Engagement" Would Circumvent CIPA's Third Clause By Adding A Use Requirement To All Claims.**

In the context of third-party software or devices that record communications, courts frequently contend with the question of whether the technology is more akin to an "eavesdropper"—which would give rise to liability—or a "tape recorder"— which is merely an inert device that cannot be held liable. While the District Court below adopted an analysis that considered ActiveProspect's use of the recordings (or lack thereof) to determine that it was more like a tape recorder, this analysis was expressly rejected by the Northern District of California in *Javier*, and the capacity-based standard set forth in *Javier*, which has been applied in subsequent cases, does not create a novel "use" requirement in portions of Section 631 that otherwise do not require it. The District Court's decision should be reversed, and Williams' claims should be reviewed according to the standard set forth in *Javier*.

When considering the role of third-party software in the recording of internet communications, courts are inevitably faced with the following question: "in analogue terms: is [the technology] a tape recorder held by [a party to the communication], or is it an eavesdropper standing outside the door?" *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021). This question

is necessary because, in the case of a tape recorder held by a participant to the communication, there is no liability as a result of the participant exception to Section 631(a)—"a party to a communication can record it (and is not eavesdropping when it does)." *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021) (citing *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 897–99, 125 Cal. Rptr. 306 (1975)).

Though the *Yoon* court found this to be a question of fact for a jury, "best answered after discovery," *see Yoon*, 549 F. Supp. 3d at 1081, many courts have grappled with it on a motion to dismiss, including the District Court below, and they have not all applied the same standard. For instance, in *Saleh*, the Central District of California found that the third-party software in question was more akin to an eavesdropper because the third party was "a separate legal entity that offers 'software-as-a-service' and not merely a passive device." *Saleh*, 562 F. Supp. 3d at 520. Some would argue this analysis is too permissive, as it would seemingly classify any and all "software-as-service" technologies as eavesdroppers. The District Court below, however, engaged in an analysis on the opposite end of the spectrum—concluding that plaintiffs like Williams must allege that the third party "aggregates," "processes," "use[s]," or otherwise "affirmatively engages" with the data that it intercepts. (ER-35–36.) However, as explained above, this standard is legally flawed because it imposes a "use" requirement on portions of CIPA that do

not require use to state a claim. *Compare id.*, *with* CAL. PENAL CODE § 631(a).

Between these two approaches falls the analysis employed by the Northern District of California in *Javier*. Judge Breyer in *Javier* took direct issue with the findings of Judge Alsup in the case below and Judge Beeler in the matters of *Johnson v. Blue Nile, Inc.*, No. 20-CV-08183-LB, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021), and *Yale v. Clicktale, Inc.*, No. 20-CV-07575-LB, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021). Judge Breyer rejected their consideration of whether the third party did anything more with the intercepted communications than that which the party to the communication directed:

> There are two problems with this reading of Section 631. The first is that it interprets the second prong of the statute—"willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit"—based on the intentions and usage of the prospective third party. *See* Cal. Penal Code § 631(a). But the third prong of the statute already penalizes "use"—"us[ing], or attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained." *Id.* Thus, **reading a use requirement into the second prong would add requirements that are not present (and swallow the third prong in the process).**

*Javier v. Assurance IQ, LLC*, --- F.Supp. 3d ---, No. 20-CV-02860-CRB, 2023 WL 114225, at *6 (N.D. Cal. Jan. 5, 2023) (emphasis added). The Court in *Javier* found "only two other grounds" upon which it could conclude that ActiveProspect (one of the Appellees in this matter) was not an unannounced second auditor or

"eavesdropper": (1) whether ActiveProspect lacks "the capability to use its record of the interaction for any other purpose (just as a tape recorder has no independent capability to divulge the recording for any other purpose but that of its owner)"; and (2) whether use of the software is sufficiently ubiquitous that the plaintiff would have known he was being recorded. *Id.* (emphasis in original). The Court found that Javier had pleaded ActiveProspect's capabilities "beyond the ordinary function of a tape recorder," and that his allegations of unawareness that he was being recorded would be taken as true. *Id.*

While the District Court below declined to adopt the *Javier* analysis after Williams noted it in her reply in support of the motion for leave to amend (*see* ER-6–7, ER-11–12), this standard has since been applied in other CIPA proceedings as well. *See Hazel v. Prudential Fin., Inc.*, No. 22-CV-07465-CRB, 2023 WL 3933073, at *4 (N.D. Cal. June 9, 2023) ("[T]he concern is not on whose behalf the recording is undertaken, but whether the recorder is capable of using the recording for other ends.") (emphasis in original); *Valenzuela v. Keurig Green Mountain, Inc.*, No. 22-CV-09042-JSC, 2023 WL 3707181, at *4 (N.D. Cal. May 24, 2023) ("[T]he question is whether the third party has 'the capability to use its record of the interaction for [another] purpose.'") (emphasis in original). The *Javier* standard is effective because it properly analyzes the third party's degree of involvement and control over the recordings or intercepted communications

22

without imposing an additional use requirement that would circumvent the third basis for CIPA liability under Section 631(a).

The District Court erred in concluding that Williams must allege a use or "affirmative engagement" beyond recording of a communication to plausibly suggest that ActiveProspect is an eavesdropper, as opposed to a tape recorder. An analogous "eavesdropper standing outside the door" need not use or engage with the information they obtain to be liable as an eavesdropper—they are liable for attempting to learn the contents of a communication in transit without consent of all parties to the communication. Unlawfulness does not require that the eavesdropper use the information they overheard—it is simply unlawful that the eavesdropper intercepted the information without consent, as they *could* further spread information beyond the parties to the communication. The same standard should apply to companies like ActiveProspect that are engaged by website owners to surreptitiously monitor and record website visits and communication. The Court should reverse the orders of the District Court and remand for proceedings under the appropriate standard, which does not add a new use requirement.

**C.** **Williams Alleged Sufficient Facts To Demonstrate ActiveProspect's Involvement In And Control Over The Recordings It Makes—It Is Capable Of Using The Information Independent Of Any Party To The Communication.**

Though the District Court denied Williams leave to amend her complaint based on its conclusion that she did not allege anything "beyond mere

23

recordation," Williams did in fact allege that ActiveProspect had control over the recordings it made, and her proposed amendment contained even further details regarding its capability to disclose the information independent of C4R's control. Thus, under the standard identified in *Javier*, Williams adequately demonstrated that ActiveProspect's TrustedForm system is more akin to an eavesdropper than a tape recorder. The District Court's conclusion that she must allege more, including "use being one such example," was made in error and should be reversed.

Beginning in her initial complaint, Williams alleged that ActiveProspect is liable for willfully learning the contents of Plaintiff's communication while it was in transit to C4R, and that C4R is likewise liable for employing or conspiring with ActiveProspect to do so. (ER-65–66.) Though she alleged that ActiveProspect's TrustedForm software was implemented on C4R's website, Williams alleged further details to demonstrate that ActiveProspect is an independent third party that collects and stores the recordings at issue. (ER-58–59, ER-62) ("All TrustedForm videos are hosted on ActiveProspect's servers, and to access the videos one must follow a hyperlink provided by ActiveProspect. Moreover, ActiveProspect independently collects and stores information provided by web users on the websites of its clients.") Taken as true, these factual allegations are sufficient to demonstate that ActiveProspect is liable as an eavesdropper—ActiveProspect is a third party to the communications between website users like Williams and the

24

website owner, C4R, and ActiveProspect's independent hosting and provision of access to its recordings suggests that it has the capability to use the information contained in those recordings beyond the control of C4R. In short, under the analysis set forth in *Javier*, Williams' initial complaint contained sufficient allegations to survive the "eavesdropper vs. tape recorder" distinction on a motion to dismiss.

Following the District Court's order of dismissal, which was premised on a lack of allegations related to how ActiveProspect "aggregates," "processes," "use[s]," or otherwise "affirmatively engages" with the communications it intercepts (*see* ER-35–36), Williams moved for leave to amend her complaint, and she included even more details in her proposed amended complaint, including: (1) statements by ActiveProspect's CEO, describing the technology as an independent third party capable of "send[ing information] directly" to requesting parties; (2) citations to language from ActiveProspect's software patent, which confirms its capability to send collected information to any "requesting interested party," beyond the control of a party to the communication; and (3) further patent language describing ActiveProspect's processing and assignment of reference keys to records, as well as a description of its awareness and monitoring of the subject website. (ER-16–17.) Under the *Javier* standard, these additional factual allegations would more than support a finding that ActiveProspect was a third-

party eavesdropper as opposed to merely the provider of a "tape recorder" device. *Compare id.*; *with Javier*, 2023 WL 114225 at *6.

Nevertheless, the District Court denied Williams leave to amend her complaint, finding her amendment "futile" and lacking "any allegations beyond mere recordation." (ER-7.) Between the dismissal and the denial of leave to amend, it is unclear what, exactly, the District Court would accept as additional factual allegations—the dismissal sought information regarding aggregation, processing, use, or other affirmative engagement with the data, and Williams provided more detailed allegations related to aggregation, processing, and affirmative engagement. (*Compare* ER-35–36, *with* ER-16–17.) However, it then denied leave to amend, finding that Williams' enhanced allegations did not "move the needle," while otherwise stating that use was just "one such example" of the allegations it sought beyond recordation. (ER-6, ER-7.) Taking these orders together, it seems the only allegations that would satisfy the District Court's standard would be use, as it did not accept Williams' allegations as to processing, aggregation, or "affirmative engagement." But, as explained above, "use" of information obtained in violation of Section 631(a) constitutes a *separate*, additional violation that Williams does not allege, pursuant to the third clause. *See* CAL. PENAL CODE § 631(a). As such, the District Court's error, as well as the need for a uniform, workable analysis, is evident.

Williams does not ask this Court to fashion a novel standard of analysis for the question of whether a software company that records communications is more akin to an eavesdropper or a tape recorder—a standard has already been delineated in *Javier*. The consideration of whether a recording technology has the *capability* to use information independently, and beyond the control of a party to the underlying communication, accomplishes the objective of weeding out technologies that truly function as an inert device similar to a tape recorder without imposing an additional "use" requirement on portions of CIPA's Section 631 that do not require use. The District Court erred in the application of its standard that insists upon a demonstration of use, and its orders of dismissal and denial of leave to amend should be reversed in favor of the appropriate analysis identified in *Javier*.

## CONCLUSION

For the foregoing reasons, the District Court's orders of dismissal and denial of leave to amend should be reversed, and the case should be remanded with instructions to permit Williams to proceed with her amended complaint.


Date: August 4, 2023                     Respectfully submitted,

                                         By: */s/ Patrick H. Peluso*

                                         Patrick H. Peluso
                                         Woodrow & Peluso, LLC

27

3900 E. Mexico Ave., Suite 300
Denver, CO 80210
(720) 213-0676
ppeluso@woodrowpeluso.com

*Attorneys for Appellant Loretta Williams*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)**   23-15337

The undersigned attorney or self-represented party states the following:

[**X**] I am unaware of any related cases currently pending in this court.

[ ]  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ]  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

N/A

**Signature**   /s/ Patrick H. Peluso                    **Date** 8/4/2023
*(use "*s/[typed name]*" to sign electronically filed documents)*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** _____ 23-15337 _____

    I am the attorney or self-represented party.

    **This brief contains** _____ **6,141** _____ **words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

    I certify that this brief *(select only one)*:

[**X**] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** __/s/ Patrick H. Peluso_____ **Date** 8/4/2023_____
*(use "s/[typed name]" to sign electronically filed documents)*

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.


Dated: August 4, 2023                    By: */s/ Patrick H. Peluso*

Patrick H. Peluso
Woodrow & Peluso, LLC
3900 E. Mexico Ave., Suite 300
Denver, CO 80210
(720) 213-0676
ppeluso@woodrowpeluso.com

*Attorneys for Appellant Loretta Williams*