**No. 23-15337**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

LORETTA WILLIAMS,

*Plaintiff-Appellant,*

v.

WHAT IF HOLDINGS, LLC, D/B/A C4R MEDIA CORP., AND
ACTIVEPROSPECT, INC.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of California
No. 3:22-cv-03780-WHA
Hon. William Alsup

---

**EXCERPTS OF RECORD**
Volume 1 of 1

---

Patrick H. Peluso
Woodrow & Peluso, LLC
3900 E. Mexico Ave., Suite 300
Denver, CO 80210
(720) 213-0676
ppeluso@woodrowpeluso.com

*Attorneys for Appellant Loretta Williams*

**ER-1**

# INDEX

**Page**

Final Judgment,
Docket No. 56 (filed February 13, 2023) ............................................................ ER-4

Order Denying Leave to Amend Complaint,
Docket No. 55 (filed February 13, 2023) ............................................................ ER-5

Reply In Support of Motion for Leave to Amend (*Excerpt*),
Docket No. 54 (filed February 3, 2023) .............................................................. ER-8

Proposed First Amended Complaint,
Docket No. 50-1 (filed January 5, 2023) ............................................................ ER-13

Motion for Leave to File Amended Complaint (*Excerpt*),
Docket No 50 (filed January 5, 2023) ................................................................ ER-28

Order Granting Motions to Dismiss,
Docket No. 49 (filed December 22, 2022) .......................................................... ER-31

Plaintiff's Response in Opposition to Motions to Dismiss (*Excerpt*),
Docket No. 36 (filed on October 3, 2022) .......................................................... ER-39

ActiveProspect's Motion to Dismiss (*Excerpt*),
Docket No. 26 (filed on September 12, 2022) .................................................... ER-45

C4R's Motion to Compel Arbitration and/or Dismiss (*Excerpt*),
Docket No. 25 (filed on September 12, 2022) .................................................... ER-50

Complaint,
Docket No. 1 (filed on June 27, 2022) ............................................................... ER-57

Notice of Appeal,
Docket No. 57 (filed on March 7, 2023) ............................................................ ER-69

Error! Unknown document property name.

District Court Docket Sheet ............................................................ ER-72

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LORETTA WILLIAMS,

            Plaintiff,

     v.

WHAT IF HOLDINGS, LLC, and
ACTIVEPROSPECT, INC.,

           Defendants.

No. C 22-03780 WHA

**FINAL JUDGMENT**

For the reasons stated in the accompanying order dismissing this action, final judgment is hereby entered in favor of defendants What If Holdings, LLC and ActiveProspect, Inc., and against plaintiff Loretta Williams. The Clerk **SHALL CLOSE THE FILE**.

**IT IS SO ORDERED.**

Dated: February 13, 2023.

_____

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

**ER-4**

1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7

8                  NORTHERN DISTRICT OF CALIFORNIA

9

10   LORETTA WILLIAMS,

11              Plaintiff,                    No.  C 22-03780 WHA

12        v.

13   WHAT IF HOLDINGS, LLC, and          **ORDER DENYING LEAVE**
     ACTIVEPROSPECT, INC.,               **TO AMEND AND**
14                                       **VACATING HEARING**
                Defendants.

15

16        In this putative class action alleging wiretapping via recording software deployed on

17   certain webpages, plaintiff moves for leave to file a first amended complaint.  For the

18   following reasons, plaintiff's motion is **DENIED**.

19        The facts herein are described in our previous order (Dkt. No. 49).  In sum, plaintiff

20   visited defendant What If Holdings, LLC's website, which utilized software made by

21   defendant ActiveProspect, Inc. called "TrustedForm."  TrustedForm creates video replays of a

22   website visitor's interactions with the webpage on which it is deployed, as it did for plaintiff's

23   interaction with certain pages on What If's website.  Plaintiff's original complaint asserted that

24   this recordation violated the wiretapping provision of the California Invasion of Privacy Act

25   (CIPA), California's Unfair Competition Law, and plaintiff's right to privacy under the

26   California Constitution.  Our prior order granted defendants' motions to dismiss all claims,

27   finding that the facts as alleged indicate that TrustedForm in this instance functions more as a

28   recording device and less as a third-party eavesdropper.

United States District Court
Northern District of California

Plaintiff now moves for leave to file a first amended class action complaint, retaining the claims under CIPA and the California Constitution. This order follows full briefing and finds the motion suitable for disposition on the papers under Civil Local Rule 7-1(b).

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend shall be freely given when justice so requires. Nevertheless, leave is not granted automatically: "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 815 (9th Cir. 2020) (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)). Amendment is futile "[i]f no amendment would allow the complaint to withstand dismissal as a matter of law." *Id.* (citing *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989)).

Plaintiff's proposed amendments do not move the needle. The substantive amendments provide additional descriptive context for TrustedForm, specifically by quoting: (1) statements by ActiveProspect's CEO from a podcast; (2) language from ActiveProspect's patent related to TrustedForm; and (3) an article discussing the privacy threat posed by website recordation software (Proposed First Am. Compl. ¶¶ 9–12). What is *not* explained in plaintiff's proposed amendments is how these details connect to plaintiff's interaction with the What If website, the basis for our action. The quoted patent language describes in technical terms how interactions are recorded and how those recordings are retrieved. That comports with our prior order's finding that TrustedForm, as it was deployed here, functions as a recording device. The CEO's statements describe ActiveProspect as "an independent third party," but this has no bearing on our prior order's conclusion that ActiveProspect is not acting as a third party for purposes of a CIPA wiretapping claim under Section 631(a), given the facts alleged here. Likewise, the article warning against threats to privacy is irrelevant unless it contains factual averments manifesting the violations claimed in the complaint. Critically, the proposed amendments add no additional facts regarding the actual alleged violations.

Plaintiff also filed a notice of supplemental authority consisting of Judge Charles R. Breyer's order in a separate action involving TrustedForm, *Javier v. Assurance IQ, LLC*, No. 3:20-cv-02860-CRB (N.D. Cal. Jan. 5, 2023). *Javier* contained different factual allegations

2

1    which are inapplicable here.  Moreover, plaintiff cites that decision for the proposition that "the

2    question as to whether a plaintiff must allege some use of the recorded data to maintain a CIPA

3    claim under the second prong of the statute is unresolved at best" (Reply 4).  But that

4    proposition puts the cart before the horse.  Our prior order did not find that use of recorded

5    data *must* be alleged, but rather that the *lack* of any allegations beyond mere recordation —

6    with use being one such example — therefore means TrustedForm as described in our

7    complaint functioned as a recorder, not an eavesdropper.  Plaintiff's proposed amended

8    complaint suffers the same flaw.  This order thus finds the amendment futile.

9         For the foregoing reasons, plaintiff's motion for leave to file a first amended class action

10   complaint is **DENIED**.  The hearing for this motion on February 16, 2023, is hereby **VACATED**.

11   Judgment will be entered accordingly.

12

13        **IT IS SO ORDERED.**

14

15   Dated:  February 13, 2023.

16

17   _____

18   WILLIAM ALSUP
     UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

3

**ER-7**

Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
1939 Harrison St., Suite 150
Oakland, CA 94612
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Steven L. Woodrow*
swoodrow@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Pro Hac Vice* admission to be sought

Attorneys for Plaintiff and the Class

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Loretta Williams,** individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>v.<br><br>**What If Holdings, LLC** d/b/a **C4R Media Corp.**, and **ActiveProspect, Inc.**<br><br>                              Defendants. | Case No.  3:22-cv-03780-WHA<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**<br><br>Hearing: February 16, 2022<br>Time: 1:30 PM<br>Location: Courtroom 12 |

I.     **INTRODUCTION**[1]

Plaintiff Loretta Williams ("Plaintiff" or "Williams") hereby files her reply in support of her motion for leave to amend the Complaint.

Plaintiff's motion and proposed amended complaint address and cure the deficiencies identified in the Court's order granting Defendants What If Holdings, LLC's and ActiveProspect, Inc.'s (collectively "Defendants") motions to dismiss. (Dkt. 49.) On December 22, 2022, the Court granted Defendants' motions to dismiss: Plaintiff's unfair competition claim was dismissed because Plaintiff failed to allege a loss of money or property (which she does not dispute), and Plaintiff's first and third claims for relief—brought under the California Invasion of Privacy Act ("CIPA") and the California constitution respectively—were both dismissed for failure to plausibly plead wiretapping, based on the Court's determination that "the facts as pled show that TrustedForm functioned as a recorder, and not as an eavesdropper." (*Id.* at 6.) The proposed First Amended Complaint alleges facts detailing ActiveProspect's continuous role as a verification server that collects, processes, and ultimately produces recording data to independent parties—in light of these capabilities, ActiveProspect is more akin to an eavesdropper than a tape recorder, and the analysis employed in *Javier* should apply here with equal force. Further, Plaintiff addressed Defendants' other arguments for dismissal in her response to the motions, and her complaint otherwise contains sufficient allegations to maintain her claims.

As explained below, Plaintiff should be granted leave to amend.

II.    **ARGUMENT**

    A.    **The Proposed Amended Complaint Is Not Futile—The Amendments Address The Deficiencies Identified By The Court In Its Order Of Dismissal.**

First, and as set forth in Plaintiff's motion, the proposed amendments are not futile. In

---

[1] As a preliminary note, Plaintiff acknowledges that this brief was due last week. Plaintiff's Counsel mistakenly believed that the due date was to be calculated from the hearing date, and that the rescheduling of the hearing from February 9, 2023 to February 16, 2023 afforded an additional week for the reply. Plaintiff's Counsel now understands this to be incorrect and apologizes to the Court for missing the deadline and will ensure that all deadlines are met going forward. Plaintiff requests that the Court consider the arguments raised herein, as there is no prejudice to the Defendants in doing so.

**REPLY IN SUPPORT OF
MOTION FOR LEAVE TO AMEND**
    - 2 -

dismissing Plaintiff's CIPA and invasion of privacy claim, the Court concluded, based on the facts as pled, that TrustedForm functioned as a tape recorder rather than an eavesdropper, and accordingly the Court found that Plaintiff failed to plausibly plead wiretapping. (Dkt. 49 at 6, 8.) Accordingly, Plaintiffs' proposed Amended Complaint contains a variety of additional factual allegations regarding ActiveProspect's TrustedForm system, including citations to patent language, that is suggestive of her clam that the system "more closely resembles an eavesdropper than simply a device used to record a conversation." (*See* Dkt. 50 at 4.) For example, because the Court emphasized whether the system "aggregates or otherwise processes the recorded information" "engages with that data in any way" (dkt. 49 at 5, 6), Plaintiff alleges that the system "collects, processes, aggregates, stores, and ultimately produces recordings of website visits upon request," based on patent language that explains how the TrustedForm system "issues a reference key," "collects information about the visitor . . . using the reference key to identify the collected information," and ultimately provides collected information to requesting parties. (*See* Dkt. 50-1 at ¶ 11.) The language also explains that it doesn't just record a conversation as a tape recorder would, but further "collects information about the visitor and the lead generator during the communication session," as ActiveProspect's verification server becomes "'aware' of the URL of the form and begins to monitor the web page for any changes." (*Id.* at ¶ 12.) These allegations are decidedly more detailed than Plaintiff's initial complaint, and they address the Court's specific concerns that the facts, as previously pled, did not contain enough information to suggest that ActiveProspect was a third-party eavesdropper.

Plaintiff also includes citations to statements made by ActiveProspect's CEO regarding the company's monitoring efforts and presence during the recording of communications (*id.* ¶ 9), as well as a Princeton study confirming that the monitoring and interception process often begins "before the user submits the form" and "without any visual indication to the user," just as Plaintiff has alleged. (*Id.* ¶ 12.) While these additional citations may not be enough on their own to suggest that ActiveProspect is more akin to a third-party eavesdropper than a tape recorder, they provide further context as to ActiveProspect's presence as an "independent third party," and Plaintiff's unawareness of and inability to consent to such presence the interception of her communications

1   with the website itself. (*Id.* ¶¶ 9, 32.) Defendants' assertion that Plaintiff has "simply added

2   conclusory, non-substantive allegations" is incorrect—her complaint contains additional factual

3   allegations, particularly regarding patent language, that detail how ActiveProspect "aggregates or

4   otherwise processes" the information it records, which is what the Court found was lacking in her

5   initial allegations. (*See* Dkt. 52 at 6; Dkt. 49 at 5.)

6        Further, and in light of the *Javier* decision that Plaintiff submitted to the Court as

7   supplemental authority in support of her motion, the question as to whether a plaintiff must allege

8   some use of the recorded data to maintain a CIPA claim under the second prong of the statute is

9   unresolved at best. The *Javier* Court took issue with the imposition of "use" allegations:

10          There are two problems with this reading of Section 631. The first is that it
11          interprets the second prong of the statute—"willfully and without consent of all parties to
            the communication, or in any unauthorized manner, reads, or attempts to read, or to learn
12          the contents or meaning of any message, report, or communication while the same is in
            transit—based on the intentions and usage of the prospective third party. *See* Cal. Penal
13          Code § 631(a). But the third prong of the statute already penalizes "use"—"us[ing], or
            attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any
14          information so obtained." *Id.* Thus, **reading a use requirement into the second prong**
15          **would add requirements that are not present (and swallow the third prong in the**
16          **process).**

17   *Javier v. Assurance IQ, LLC*, No. 20-CV-02860-CRB, 2023 WL 114225, at *6 (N.D. Cal. Jan. 5,

18   2023) (emphasis added). The Court in *Javier* considered whether ActiveProspect "ha[s] the

19   <u>capability</u> to use its record of the interaction for any other purpose" (unlike a tape recorder, which

20   has no capability "to divulge the recording for any other purpose but that of its owner"), and

21   whether recording software is sufficiently ubiquitous that the plaintiff would have known he was

22   being recorded. (*Id.*) (emphasis in original). The Court found that it had such capability, "beyond

23   the ordinary function of a tape recorder," and that the plaintiff's allegations that he was unaware

24   that he was being recorded would be taken as true. (*Id.*)

25        Plaintiff recognizes that the Court here has asked for more allegations, particularly

26   regarding whether ActiveProspect "aggregates or otherwise processes" the recorded information

27   and does more than simply "store" it (dkt. 49 at 5–6), and she has provided citations to the patent

28

**REPLY IN SUPPORT OF**              - 4 -
**MOTION FOR LEAVE TO AMEND**

language to support her allegation that it indeed does. The patent reveals that ActiveProspect has the capability to independently retrieve and send its recordings to "requesting interested part[ies]." (Dkt. 50-1 at ¶ 10.) This is considerably beyond the capabilities of a tape recorder—Plaintiff seeks leave to amend her complaint with sufficient allegations to suggest that ActiveProspect was, in fact, an independent eavesdropper liable for violating CIPA.

**B.    As Detailed In Her Response To The Motions To Dismiss, Plaintiff Maintains That She Has Plead Sufficient Facts To Withstand Defendants' Other Arguments For Dismissal.**

Defendants next argue that Plaintiff's motion for leave should be denied because she did not make further amendments to account for each and every one of Defendant's arguments for dismissal. (Dkt. 52 at 10–14.) This is not the result of Plaintiff "ignor[ing]" the Court's order—Defendant's alternative arguments for dismissal do not automatically equate to "deficiencies" in Plaintiff's complaint, and, as detailed in her response to the motions to dismiss, she has met her pleading burden to state claims for relief above the plausible level, regardless of the myriad defenses or supposed "deficiencies" that Defendants assert are present.

In turn, Plaintiff will briefly address each of Defendants' claimed "deficiencies" that formed the bases of their motions to dismiss: (1) whether ActiveProspect "intercepted" Plaintiff's communications while in transit; (2) whether Plaintiff consented to the recording; (3) whether "content," as opposed to record information, was intercepted; (4) whether Plaintiff agreed to arbitrate her claims; and (5) whether Plaintiff alleged a reasonable expectation of privacy.

*Interception*

With regard to interception, Defendants claim that ActiveProspect did not "intercept" information in transit, arguing that it merely stored information. Plaintiff has alleged that her communications were intercepted because her keystrokes, clicks, and personal information were recorded "in real time" as she communicated with C4R Media's website. (Dkt. 50-1 at ¶¶ 2, 26–32.) Defendant claims that this is insufficient, citing cases like *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 898 (Ct. App. 1975) ("a recording made by a participant does not intercept the message while it is in transit; the recording rather transcribes the message as it is being received."), and *Konop v.*

# Exhibit A

Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
1939 Harrison St., Suite 150
Oakland, CA 94612
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Patrick H. Peluso*
    ppeluso@woodrowpeluso.com
Steven L. Woodrow*
    swoodrow@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Pro Hac Vice* admission to be sought

Attorneys for Plaintiff and the Class

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

**Loretta Williams,** individually and on behalf of all others similarly situated,

Plaintiff,

v.

**What If Holdings, LLC** d/b/a **C4R Media Corp.**, and **ActiveProspect, Inc.**

Defendants.

Case No. 3:22-cv-03780-WHA

**[PROPOSED] FIRST AMENDED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

1.     Plaintiff Loretta Williams ("Plaintiff" or "Williams") brings this Class Action Complaint and Jury Demand ("Complaint") against Defendants What If Holdings, LLC d/b/a C4R Media Corp. ("C4R Media") and ActiveProspect, Inc. ("ActiveProspect") to obtain redress for, and to put an end to, Defendants' serial wiretapping of the electronic communications of visitors to C4R Media's websites, including claim.foundmoneyguide.com.

2.     The wiretaps are embedded in the computer code on C4R Media's websites and are used by Defendants to covertly observe and record visitors' keystrokes and clicks in real time.

3.      Such actions violated the California Invasion of Privacy Act, Cal. Penal Code 631 ("CIPA"), and invaded Plaintiff's and class members' privacy rights.

4.      Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**NATURE OF THE ACTION**

5.      Defendant ActiveProspect is a software-as-a-service company that offers software as both a product and a service to lead generators and telemarketers. ActiveProspect's services include wiretapping website interactions through the use of its product, a software known as "TrustedForm." This software is designed to assist lead generators and telemarketers in attempting compliance with the federal Telephone Consumer Protection Act by documenting alleged evidence of prior express consent to receive telemarketing calls provided on websites.

6.      One feature of ActiveProspect's "TrustedForm" product is a "video replay" function, which records, in real time, a person's interaction with a website that is using TrustedForm.

7.      As one of ActiveProspect's "Knowledge Managers" puts it on ActiveProspect's website,

> When the TrustedForm script is loaded on a page, the HTML (technically the DOM) is collected and stored, as well as all the "event data" such as mouse movements and clicks, and key presses, as well as changes to the DOM right up to the point the user leaves the page, which is typically upon submitting the form. Whatever the user does on the page is captured, including changes and corrections to the information entered in the form.

> The TrustedForm certificate generated by the script includes all of this event data, which can be replayed exactly as it happened on top of the original DOM. This is the most authentic record possible of the end users' interaction with the form. It is not a re-creation in that we make no assumptions or estimates as to what happened on the page. We play back the events exactly as they occurred.

https://community.activeprospect.com/questions/4180654 (last visited June 1, 2022).

8.      Said another way, TrustedForm "captures a copy of the web page viewed by the visitor and the user events that took place on the page including form inputs, mouse movements

and clicks. It plays these events back as a screen capture of how the user interacted with the page." *See* "Certificate of Authenticity for Web Leads," attached hereto as Exhibit A.

9. In 2020, ActiveProspect's CEO Steve Rafferty appeared as a guest on a TCPA-related podcast called "Unprecedented," in which he and the CEO of Jornaya, a competing lead verification company, discussed their businesses.[1] The podcast hosts introduced the companies as "the guardian angels of the TCPAWorld, keeping watch over millions of website interactions each month." During the interview, Rafferty repeatedly referred to the ActiveProspect as an "independent third party" who "monitors" activity on a given lead website—Raffery described ActiveProspect as "there as an independent third party [who can] say, 'hey this is what really happened.' You don't have to trust the buyer or the seller of the lead, you can trust [ActiveProspect]. We were there. Here is what happened." Rafferty further explained that ActiveProspect "can send [information] directly" to other parties that request it.

10. ActiveProspect's involvement in the recording process is not merely that of a device, but a third party. As described in the abstract of its patent, ActiveProspect operates a "verification server" that collects, processes, aggregates, stores, and ultimately produces recordings of website visits upon request:

> A lead generator contacts a verification server [*i.e.*, ActiveProspect] when a visitor lands on a hosting site of the lead generator to enter lead information into a form. **The verification server issues a reference key** (token) to the lead generator and **collects information about the visitor and the hosting site of the lead generator, using the reference key to identify the collected information**. When the visitor submits the form, the lead generator sends the form data, which includes the entered lead information and the reference key received from the verification server, to at least one interested party. **When the verification server receives a request for the collected information from the interested party, the collected information is retrieved based on the reference key included in the request and sent to the requesting interested party**.

U.S. Patent No. 2012/0290491 A1, at (57) (filed May 12, 2011) (emphasis added) (attached hereto

---

[1] *Unprecedented Episode 19*, TCPAWORLD, https://players.brightcove.net/5807743129001/ default_default/index.html?videoId=6217015344001.

1   as Exhibit B).

2        11.     The patent likewise states that "the verification server collects information about the

3   visitor and the lead generator during the communication session during which the lead generator

4   receives contact information and other relevant information (i.e. lead data) submitted by the

5   visitor." (Ex. B at [0027].) The patent further explains that the script embedded in a lead

6   generator's website "provides to the verification server [*i.e.*, ActiveProspect] the URL of the web

7   page where the form resides. At this point, **the verification server is "aware" of the URL of the**

8   **form and begins to monitor the web page** for any changes." (*Id.* at [0057]) (emphasis added).

9        12.     In addition to being intrusive, technology like TrustedForm poses a threat to

10  consumer security. In a 2017 study, Princeton University researchers noted that "[c]ollection of

11  page content by third-arty replay scripts may cause sensitive information such as medical

12  conditions, credit card details, and other personal information displayed on a page to leak to the

13  third-party as part of the recording. This may expose users to identify theft, online scams, and other

14  unwanted behavior."[2] The study found that "the extent of data collected by these services far

15  exceeds user expectations; text typed into forms is collected **before the user submits the form**,

16  and precise mouse movements are saved, **all without any visual indication to the user**."

17  (emphasis added).

18       13.     ActiveProspect enters into partnerships with various telemarketers and lead

19  generators who wish to utilize TrustedForm. ActiveProspect provides its software and scripts to

20  those partners, and ActiveProspect thereafter is enabled to record visits to the partners' websites.

21       14.     One such entity is C4R Media, which used TrustedForm to record visitors to its

22  website claim.foundmoneyguide.com and other websites that it operates.

23       15.     C4R Media knows that TrustedForm captures strokes, clicks, and other interactions

24  on its websites—it is a primary reason why C4R Media contracts with ActiveProspect for the

25  TrustedForm product in the first place.

26  _____

27  [2] Michael Kassner, *Session-replay scripts disrupt online privacy in a big way*, TECHREPUBLIC
28  (Dec. 26, 2017), https://www.techrepublic.com/article/session-replay-scripts-are-disrupting-online-
    privacy-in-a-big-way/

**FIRST AMENDED**                    - 4 -
**CLASS ACTION COMPLAINT**

**ER-17**

16. Pursuant to their agreement with each other, C4R Media implemented TrustedForm by embedding ActiveProspect's code onto click.foundmoneyguide.com and, on information and belief, many of C4R Media's other lead generation websites.

17. Unfortunately for Defendants, their conduct constitutes wiretapping under California law. ActiveProspect's TrustedForm software surreptitiously intercepts the communications made by consumers to C4R Media in real-time, and Defendants do not secure prior express consent before recording consumers' mouse clicks, movements, and communications on the websites.

18. As a result of Defendants' violations of the CIPA, Plaintiff Williams and the members of the Class were deprived of their privacy rights guaranteed to them by California law, and they are thus entitled to injunctive relief and statutory damages in the amount of $5,000 for each violation. *See* Cal. Penal Code § 637.2.

**PARTIES**

19. Plaintiff Williams is a natural person and citizen of the State of California.

20. Defendant C4R Media is a limited liability company with its principal place of business located in Fort Lee, New Jersey.

21. Defendant ActiveProspect is a Nevada corporation with its principal places of business located in Austin, Texas.

**JURISDICTION AND VENUE**

22. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), *et seq.* ("CAFA"), because the class consists of over 100 people, at least one member of each class is from a State other than the state of the Defendants, and the amounts in controversy are over $5,000,000. Further, none of the exceptions to CAFA jurisdiction apply.

23. This Court has personal jurisdiction over Defendants because they conduct substantial business in this District, the unlawful conduct alleged in the Complaint occurred in and/or were directed to this District, and Plaintiffs' claims arise out of each Defendants' forum-related activities.

24. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of

the events and omissions giving rise to the claims occurred in this District.

**FACTS SPECIFIC TO PLAINTIFF**

25.     On or around December 24, 2021, Williams visited claim.foundmoneyguide.com/api/offer, a website owned and operated by C4R Media.

26.     During that visit, Defendants recorded her visit through the use of ActiveProspect's TrustedForm replay function. The video captured Williams' keystrokes and clicks on the website, as well as the date and time of her visit, the browser and operating system used by Williams during the visit, and her geographic location.

27.     TrustedForm also recorded Williams' name, address, date of birth, and phone number.

28.     A screenshot of the TrustedForm recording related to Williams's visit is below:



29.     As the screenshot of the TrustedForm replay shows, Williams' personal information is included on the page. But at this point in the video, the "I CONFIRM" button is not clicked. However, approximately 3 seconds into the video, Williams' cursor appears and clicks "I CONFIRM":



30.     Then one additional second later, the cursor moves over to the green "CLAIM YOUR CASH!" button:

31.     Thus, Williams' interaction (including her keystrokes and mouse movement and

FIRST AMENDED
CLASS ACTION COMPLAINT

- 7 -

1  clicks) was recorded by C4R Media and ActiveProspect using ActiveProspect's TrustedForm

2  technology.

3      32.    This recording was done without Plaintiff's consent. Defendants did not inform

4  website visitors that their strokes and clicks would be recorded, much less secure prior express

5  consent. Indeed, the wiretapping began the moment Williams and other members of the alleged

6  Class visited the webpage, before clicking any button.

7      33.    All TrustedForm videos are hosted on ActiveProspect's servers, not the servers of

8  website clients like C4R Media. In order to access the videos, an interested party must make a

9  request to and follow a unique URL hyperlink provided by ActiveProspect associated with the

10 recording on its server. Moreover, ActiveProspect independently collects and stores information

11 provided by web users on the websites of its clients.

12     34.    Members of the alleged Class were unlawfully monitored in the same way as

13 Williams' was: TrustedForm functions the exact same way no matter which persons is visiting a

14 site, or which of C4R's websites the person is visiting.

15     35.    For wiretapping her visit to C4R's visit, Plaintiff brings this suit, on behalf of

16 herself and those similarly situated, to put an end to Defendants' repeated and widespread CIPA

17 violations. Such violations entitle her, and other similarly situated persons, to injunctive relief plus

18 statutory damages of $5,000 per violation.

19                          **CLASS ACTION ALLEGATIONS**

20     36.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure Rules

21 23(b)(2) and 23(b)(3) on behalf of herself and a Class defined as follows:

22     All persons in California who: (1) from a date one year prior to the filing of the
       initial complaint in this action to the date notice is sent to the Class; (2) visited one
23     of C4R Media's websites; (3) which utilized ActiveProspect's "TrustedForm"
       software; (4) who had their electronic communications intercepted and/or recorded
24     by ActiveProspect; and (5) where the Defendants claim to have secured prior
       express consent to monitor, record, collect, and store electronic communications in
25     the same manner as they claim to have secured prior express consent from
       Williams, or where Defendants do not claim they secured any such prior express
26     consent.

27     37.    Excluded from the Class are: (1) Defendants, Defendants' agents, subsidiaries,

28

FIRST AMENDED                          - 8 -
CLASS ACTION COMPLAINT

1    parents, successors, predecessors, and any entity in which Defendants or their parents have a

2    controlling interest, and those entities' officers and directors, (2) the Judge or Magistrate Judge to

3    whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) Plaintiff's

4    counsel and Defendants' counsel; (4) persons who execute and file a timely request for exclusion,

5    (5) persons who have had their claims in this matter finally adjudicated and/or otherwise released,

6    and (6) the legal representatives, successors, and assigns of any such excluded person. Plaintiff

7    anticipates the need to amend the class definition following a reasonable period for discovery

8    regarding the contours of the Class.

9        38.    **Numerosity:** The exact number of class members is unknown to Plaintiff at this

10   time, but it is clear that individual joinder is impracticable. On information and belief, Defendants

11   wiretapped thousands of California residents. Further, the class members can readily be ascertained

12   through Defendants' records.

13       39.    **Commonality:** Common questions of law and fact exist as to all members of the

14   Class for which this proceeding will provide common answers in a single stroke based upon

15   common evidence, including:

16       (a)    Whether Defendants' conduct described herein violated the CIPA;

17       (b)    Whether Defendants secured prior express consent before monitoring, recording,

18              collecting, and storing the electronic communications of Plaintiff and the Class;

19       (c)    Whether Defendants have violated the California Constitution; and

20       (d)    The proper measure of damages.

21       40.    **Typicality:** As a result of Defendants' uniform and repeated pattern of unlawful

22   recording, Plaintiff and the class members suffered the same injury and similar damages. If

23   Defendants' actions violated the CIPA as to Plaintiff, then they violated the CIPA as to all class

24   members. Thus, Plaintiff's claims are typical of the claims of the other class members.

25       41.    **Adequate Representation:** Plaintiff is a member of the Class and both she and her

26   counsel will fairly and adequately represent and protect the interests of the Class, as neither has

27   interests adverse to those of the class members and Defendants have no defenses unique to

28   Plaintiff. In addition, Plaintiff has retained counsel competent and experienced in complex

**FIRST AMENDED**                    - 9 -
**CLASS ACTION COMPLAINT**

1  litigation and class actions. Further, Plaintiff and her counsel are committed to vigorously

2  prosecuting this action on behalf of the members of the Class, and they have the financial resources

3  to do so.

4       42.    **Conduct Applicable Towards Class as a Whole:** Defendants acted consistently

5  with respect to every member of the Class. No Class Member was treated specially or different as

6  Defendants acted in the same manner with respect to all Class Members. As such, injunctive relief

7  and corresponding declaratory relief are available and appropriate.

8       43.    **Predominance:** The common questions of law and fact set forth above go to the

9  very heart of the controversy and predominate over any supposed individualized questions.

10 Irrespective of any given class member's situation, the answer to whether Defendants' conduct

11 described herein repeatedly violated the CIPA is the same for everyone—a resounding "yes"—and

12 the same will be proven using common evidence.

13      44.    **Superiority and Manageability:** A class action is superior to all other methods of

14 adjudicating the controversy. Joinder of all class members is impractical, and the damages suffered

15 by/available to the individual class members will likely be small relative to the cost associated with

16 prosecuting an action. Thus, the expense of litigating an individual action will likely prohibit the

17 class members from obtaining effective relief for Defendants' misconduct. In addition, there are

18 numerous common factual and legal questions that could result in inconsistent verdicts should

19 there be several successive trials. In contrast, a class action will present far fewer management

20 difficulties, as it will increase efficiency and decrease expense. Further, class-wide adjudication

21 will also ensure a uniform decision for the class members.

**<u>FIRST CAUSE OF ACTION</u>**
**Violation of Cal. Penal Code § 631, *et seq.***
**(On Behalf of Plaintiff and the Class)**

24      45.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth

25 herein.

26      46.    The CIPA provides that it is a violation of Cal. Penal Code § 631(a) for a defendant,

27 "by means of any machine, instrument, contrivance, or in any other matter," to do any of the

28 following:

**FIRST AMENDEND**                  - 10 -
**CLASS ACTION COMPLAINT**

**ER-23**

Intentionally tap[], or make[] any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

Or

Willfully and without the consent of all parties to the communication, or in any unauthorized manner, read[] or attempt[] to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

Or

Use[], or attempt[] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

Or

Aid[], agree[] with, employ[], or conspire[] with any person or persons to unlawfully do, or permit or cause to be done any of the acts or things mentioned above in this section.

47.     Section 631(a) is not limited to phone lines. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21(N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, --- F.3d --- 2020 WL 1807978 (9th Cir. Apr. 9, 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

48.     TrustedForm is a "machine, instrument, contrivance, or . . . any other manner" that is used by ActiveProspect and C4R Media to engage in the unlawful practices described in this Complaint.

49.     By using TrustedForm, Defendants intentionally tapped the lines of communication between Plaintiff (and absent Class Members) and C4R Media's websites by willfully and without consent reading or attempting to read or learn the contents or meaning of electronic

**FIRST AMENDED**                               - 11 -
**CLASS ACTION COMPLAINT**

communications of Plaintiff and the putative class members, while such communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

50.     Defendants lack prior express consent from Plaintiff and the Class for Defendants to "read or attempt to read or learn the contents or meaning" of their electronic communications being made in the State of California.

51.     C4R Media partnered with (and conspired with) ActiveProspect to achieve the unlawful conduct described herein.

52.     This violation of Section 631(a) is an invasion of privacy and confers Article III standing.

53.     Absent an injunction, Plaintiff and the members of the Alleged Class are at risk of continued harm. TrustedForm is used by many website operators and there is no practical way to know if the future whether website communications will be monitored and recorded by Defendants, absent ceasing to utilize the internet (a near impossibility in the year 2022).

54.     Accordingly, pursuant to Cal. Penal Code § 637.2(a)(1), Plaintiff and the Class seek injunctive relief and statutory damages in the amount of $5,000 per violation.

### SECOND CAUSE OF ACTION
**Invasion of Privacy Under California's Constitution**
**(On Behalf of Plaintiff and the Class)**

55.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

56.     Plaintiff and other members of the Class have an interest in conducting personal activities (such as visiting websites), without observation or interference, including visiting websites without being subjected to secret wiretaps.

57.     Defendants intentionally invaded the privacy rights of Plaintiff and other members of the Class, and worked cooperatively to do so.

58.     This invasion of privacy is serious in nature and scope and constitutes a breach of the social norms in the digital age.

59.   Thus, Plaintiff seeks all relief available for invasion of privacy under the California Constitution on behalf of herself and members of the alleged Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that this Court issue an order:

A.   Certifying this case as a class action on behalf of the Class defined above, appointing Williams as class representative and appointing her counsel as class counsel;

B.   Finding that Defendants' actions constitute repeated and willful violations of the CIPA;

C.   Awarding injunctive relief under the CIPA enjoining Defendants from continuing to violate the CIPA by unlawfully wiretapping electronic communication without consent;

D.   Awarding damages, including statutory damages where applicable, to Plaintiff and the Class in amounts to be determined at trial;

E.   Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F.   Awarding Plaintiff and the Class pre- and post- judgment interest, to the extent allowable; and

G.   Such further and other relief as the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.


Respectfully submitted,

Dated: January 5, 2023                    **LORETTA WILLIAMS**, individually and on behalf of all others similarly situated,

By:   _/s/ Patrick H. Peluso_
One of Plaintiff's Attorneys

**FIRST AMENDEND**                    - 13 -
**CLASS ACTION COMPLAINT**

Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
1939 Harrison St., Suite 150
Oakland, CA 94612
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Steven L. Woodrow*
swoodrow@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Pro Hac Vice*

Counsel for Plaintiff and the Class

Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
1939 Harrison St., Suite 150
Oakland, CA 94612
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Steven L. Woodrow*
swoodrow@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*_Pro Hac Vice_ admission to be sought

Attorneys for Plaintiff and the Class

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Loretta Williams,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**What If Holdings, LLC** d/b/a **C4R Media Corp.**, and **ActiveProspect, Inc.**<br><br>Defendants. | Case No.  3:22-cv-03780-WHA<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**<br><br>Hearing: February 9, 2022<br>Time: 8:00 AM<br>Location: Courtroom 12 |

**ER-28**

1   collects, processes, and ultimately produces recording data to independent parties—a role far more

2   akin to that of an eavesdropper than a simple recording device or software. As a result, and as

3   explained further below, Plaintiff's proposed First Amended Complaint cures the deficiencies

4   identified the Court, and Plaintiff should be granted leave to amend.

5   **II.   ARGUMENT**

6         Under Federal Rule 15, leave to amend pleadings "shall be freely given when justice so

7   requires." *See* Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227,

8   230, 9 L.Ed. 222 (1962) ("[Rule 15(a)(2)'s] mandate is to be heeded.") "Rule 15(a) is very liberal

9   and leave to amend shall be freely given when justice so requires." *AmerisourceBergen Corp. v.*

10   *Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). "However, courts "need not grant leave to

11   amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3)

12   produces an undue delay in litigation; or (4) is futile." *Id*. Indeed, among the factors that may

13   justify denial of leave to amend are "undue delay, bad faith, and futility." *Arthur v. Maersk, Inc.*,

14   434 F.3d 196, 204 (3d Cir. 2006) (quoting *Forman*, 371 U.S. at 182). As explained below, there

15   has been no undue delay or bad faith on Plaintiff's part, amending wouldn't be futile, and

16   Defendants will not suffer any prejudice at all. The Court should grant leave to amend accordingly.

17
18         **A.   There Has Been No Undue Delay Or Bad Faith—Williams Seeks Leave To Amend Before The First Set Of Discovery—And The Amendments Are Meant To Address Pleading Errors Identified By The Court.**

19         Williams has not delayed or acted in bad faith in moving for leave to amend. Rather,

20   Plaintiff files the instant motion just weeks after the Court granted Defendants' Motion to Dismiss,

21   within the timeframe the Court provided in its Order. This can hardly be called undue delay or bad

22   faith. Indeed, the purpose of the proposed amendments aren't to delay the case at all; rather, the

23   amendments are necessary to ensure that Williams can correct the pleading issues the Court

24   identified. As such, the Court should refuse to find any undue delay or bad faith here.

25
26         **B.   The Proposed Amended Complaint Is Hardly Futile—The Amendments Fix Errors That The Court Identified In Dismissing The Claims Of The Initial Complaint.**

27         The proposed amendments are hardly futile. First, the proposed Amended Complaint

28   removes Williams' claim for relief under the California Unfair Competition Law, which the Court

dismissed without leave to amend. Second, Plaintiff provides additional factual support and greater details regarding ActiveProspect's TrustedForm system—specifically how it more closely resembles an eavesdropper than simply a device used to record a conversation. (*See* Proposed First Amended Complaint at ¶ 9–13, 32–33.) Plaintiff's proposed amended complaint also includes allegations regarding the language of ActiveProspect's patent, which details the company's continued involvement as an aggregator and host of the recordings. (*Id.* ¶¶ 10–11.) Plaintiff also includes allegations related to statements made by ActiveProspect's CEO regarding the company's monitoring efforts and presence during the recording of communications. (*Id.* ¶ 9.) In doing so, Plaintiff has plausibly alleged wiretapping in violation of the California Invasion of Privacy Act ("CIPA"), and a violation of the California Constitution (which was similarly dismissed for failure to allege wiretapping).

Plaintiff's CIPA claim is based on the second and fourth clauses of the wiretapping prohibition, specifically for "reading or attempting to read or learn the contents" of a communication in transit between two parties and for aiding or conspiring with another party to do so. (*See* Dkt. 1 at ¶ 42–47); CAL. PENAL CODE § 631(a). Use of the information constitutes a separate violation of CIPA, and Plaintiff does not allege such use for the purposes of stating a claim under the third clause. (*Id.*) Nevertheless, in dismissing the original claims, the Court reasoned that Plaintiff lacked allegations to suggest that ActiveProspect "affirmatively engages with that data in any way." (Dkt. 49 at 6.) The Court also noted a "key distinction" from other cases based on "whether or not the alleged third-party software provider aggregates or otherwise processes the recorded information." (*Id.* at 5.) Plaintiff's additional factual allegations squarely address these supposed pleading defects. As such, Plaintiff's proposed amendments aren't futile and leave should be granted.

**C.** **Finally, Defendants Will Suffer No Prejudice At All—The Amendments Do Not Materially Alter The Claims Or Allegations Set Forth In The Original Complaint, With Which Defendants Are Already Familiar.**

The Court will consider an amendment unduly prejudicial to the nonmoving party if it "brings in entirely new and separate claims, adds new parties, or at least entails more than an alternative claim or a change in the allegations of the complaint . . . ." *Jacobs v. Xerox Corp. Long*

1

2

3

4

5

6          UNITED STATES DISTRICT COURT

7

8          NORTHERN DISTRICT OF CALIFORNIA

9

10   LORETTA WILLIAMS,

11              Plaintiff,                        No.  C 22-03780 WHA

12        v.

13   WHAT IF HOLDINGS, LLC, and              **ORDER RE MOTIONS TO DISMISS**
     ACTIVEPROSPECT, INC.,                   **AND COMPEL ARBITRATION**
14
              Defendants.
15
     _____
16

17                              **INTRODUCTION**

18         In this diversity and putative class action, plaintiff asserts that defendants violated

19   California wiretapping and unfair competition statutes as well as the California constitution by

20   using software to record her computer screen.  Defendants move both to dismiss and to compel

21   arbitration.  For the reasons that follow, the motions to dismiss are **GRANTED**.

22                               **STATEMENT**

23         Defendant ActiveProspect, Inc. is a software company incorporated in Nevada with its

24   principal place of business in Texas.  At all material times, ActiveProspect offered a software

25   product called "TrustedForm," which had the ability to document a website visitor's

26   keystrokes and mouse movements as they happened and then create a video replay of the

27   website visitor's interactions with the website.  Clients implemented TrustedForm by

28   embedding ActiveProspect's code onto their websites (Compl. ¶¶ 5–17).

Plaintiff Loretta Williams is a resident of California. On December 24, 2021, plaintiff visited a website owned and operated by defendant What If Holdings, LLC, a company based in New Jersey. She alleges that What If used TrustedForm to record her keystrokes and clicks on the website, while also recording data regarding the date and time of her visit, her browser and operating system, and her geographic location. Plaintiff's complaint contains screenshots of the resultant recording, which show a four second video of her interactions with a single webpage displaying her name and contact information. Plaintiff alleges she never consented to this recording. As such, Plaintiff asserts that What If and ActiveProspect violated the wiretapping provision of the California Invasion of Privacy Act, California's Unfair Competition Law, and plaintiff's right to privacy under the California Constitution (Compl. ¶¶ 15, 21–31, 41–62).

Defendants each move to dismiss all three claims under FRCP 12(b)(6). What If also moves to compel arbitration, which ActiveProspect joins. This order follows full briefing and oral argument.

## ANALYSIS

To survive a motion to dismiss, plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the party asserting it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory allegations or "formulaic recitation of the elements" of a claim, however, are not entitled to the presumption of truth. *Id.* at 681.

This order will first consider whether plaintiff has sufficiently pled a CIPA violation for wiretapping. It will then address plaintiff's UCL claim and constitutional claim, both of which are predicated on the CIPA claim. For the reasons that follow, all claims are dismissed.

### 1. CIPA WIRETAPPING CLAIM.

Defendants argue that plaintiff fails to plead various requisite elements of a violation under CIPA, set forth in Section 631(a) of the California Penal Code. Plaintiff contends that

2

each element is sufficiently pled. This order finds that neither defendant is a third-party eavesdropper under Section 631(a). Plaintiff's failure to plead this element proves fatal to her claim.

Section 631(a), which provides for civil in addition to criminal liability, states as follows:

> (a) Any person [1] who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or [2] who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or [3] who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or [4] who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section . . . .

The Supreme Court of California has distilled this down to "three distinct and mutually independent patterns of conduct: intentional wiretapping, wilfully attempting to learn the contents or meaning of a communication in transit over a wire, and attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Superior Court of San Diego Cty.*, 583 P.2d 737, 741 (Cal. 1978).

Here, What If's liability is premised on the fourth clause of Section 631(a), which targets one who "aids, agrees with, employs, or conspires with" another party that violates any of the prior three clauses. As the website owner, What If was the intended recipient of plaintiff's communication. Parties to a conversation cannot eavesdrop on their own conversation, so no other part of Section 631(a) is applicable to What If. *See Warden v. Kahn*, 160 Cal. Rptr. 471, 475 (Cal. Ct. App. 1979) (distinguishing "eavesdropping by a third party" from "recording by a participant to a conversation"); *Rogers v. Ulrich*, 125 Cal. Rptr. 306, 309 (Cal. Ct. App. 1975). What If's liability in this case is therefore based entirely on whether ActiveProspect violated Section 631(a) in some way, and plaintiff does not argue to the contrary (Opp. 16).

United States District Court
Northern District of California

3

ActiveProspect's liability on the other hand is premised on the second clause of Section 631(a) (Opp. 16). Plaintiff makes no allegation that ActiveProspect used her information in any way, so the third clause of Section 631(a) is inapplicable here (Opp. 16–17). Meanwhile the first clause of Section 631(a) concerns telephonic wiretapping specifically, which does not apply to the context of the internet. *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 825 (N.D. Cal. 2020) (Judge Beth Labson Freeman) (explaining that "the plain text of the statute . . . expressly requires that the unauthorized 'connection' be made with 'any telegraph or telephone wire, line, cable, or instrument'" (quoting Cal. Penal Code § 631(a))); *In re Google Inc. Gmail Litig.*, No. C 13-02430 LHK, 2013 WL 5423918, at *20 (N.D. Cal. Sept. 26, 2013) (Judge Lucy H. Koh) (describing the "limitation of 'telegraphic or telephone' on 'wire, line, cable, or instrument' in the first clause of [Section 631(a)]"). Indeed, courts have applied Section 631(a) via the language of its second clause to the internet browsing context. *See, e.g.*, *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d at 826 (analyzing whether communication was sent from or received in California); *Silver v. Stripe Inc.*, No. C 20-08196 YGR, 2021 WL 3191752, at *3–4 (N.D. Cal. July 28, 2021) (Judge Yvonne Gonzalez Rogers) (analyzing whether alleged eavesdropping was consented to); *Adler v. Community.com, Inc.*, No. C 21-02416 SB JPR, 2021 WL 4805435, at *3–4 (C.D. Cal. Aug. 2, 2021) (Judge Stanley Blumenfeld, Jr.) (analyzing whether communication was intercepted in transit).

Because a party to the communication is exempt from liability under CIPA, our dispositive question is whether ActiveProspect constitutes a third-party eavesdropper. *See Davis v. Facebook, Inc. (In re Facebook Inc. Internet Tracking Litig.)*, 956 F.3d 589, 607 (9th Cir. 2020). Put differently, the question boils down to whether ActiveProspect was an independent third party hired to eavesdrop on What If's communications, or whether ActiveProspect's software was merely a tool that What If used to record its own communications with plaintiff.

Our facts suggest the latter. The complaint most pertinently alleges that What If deployed ActiveProspect's TrustedForm recording software only on What If's websites and that the recordings were stored and accessed on ActiveProspect's servers (Compl. ¶¶ 6–8, 12,

4

**ER-34**

United States District Court
Northern District of California

1  21–29).  These limited allegations are not enough to show that ActiveProspect was a third-

2  party eavesdropper as contemplated by Section 631(a).

3       Plaintiff posits that if ActiveProspect is not considered a third party, then website owners

4  can always circumvent Section 631(a) by hiring a vendor to record communications (Opp. 17).

5  Not so.  Our relevant inquiry here is whether a website owner's usage of third-party

6  recordation software can be considered equivalent to having hired a third party to record.  That

7  inquiry thus determines whether or not the software provider can be considered a third party in

8  the first place for purposes of a Section 631(a) analysis.  Judge Laurel Beeler's reasoning in

9  deciding a series of factually similar cases is instructive:  a key distinction is whether or not the

10  alleged third-party software provider aggregates or otherwise processes the recorded

11  information, which might suggest that the software vendor independently "uses" the gathered

12  data in some way.  *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832–33 (N.D. Cal. 2021);

13  *Johnson v. Blue Nile, Inc.*, No. C 20-08183 LB, 2021 WL 1312771, at *3 (N.D. Cal. Apr. 8,

14  2021); *Yale v. Clicktale, Inc.*, No. C 20-07575 LB, 2021 WL 1428400, at *3 (N.D. Cal. Apr.

15  15, 2021); *see also In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 608 ("Permitting

16  an entity to engage in the *unauthorized duplication and forwarding* of unknowing users'

17  information would render permissible the most common methods of intrusion, allowing the

18  exception to swallow the rule" (emphasis added)).

19       Just like in *Graham*, there are no facts here to suggest that ActiveProspect "intercepted

20  and used the data itself."  *Graham*, 533 F. Supp. 3d at 832.  If anything, the facts suggest the

21  contrary.  The specific recording alleged in the complaint shows the same webpage in every

22  screenshot.  This demonstrates that TrustedForm was deployed on a single page as opposed to

23  the entire website.  The top of every screenshot in the complaint shows that the recordation in

24  question was four seconds of plaintiff's interaction with that particular page of What If's

25  website.  The interaction consists of confirming user-inputted information from prior pages,

26  specifically by checking an "I CONFIRM" box and then clicking on a "CLAIM YOUR

27  CASH!" button to proceed (Compl. ¶¶ 22–27).  As defendants assert and plaintiff recognizes,

28  this recordation is used to document the user's "consent" to receive telemarketing phone calls

5

United States District Court
Northern District of California

1    (Compl. ¶ 5; What If Br. 18; ActiveProspect Br. 18).  The facts as pled suggest that the

2    recordation is routine documentation and therefore clerical in nature, which is qualitatively

3    different from data mining.  That recorded videos are hosted and accessed on ActiveProspect's

4    servers is part of how the software tool functions, and plaintiff makes no allegation that

5    ActiveProspect or its TrustedForm product affirmatively engages with that data in any way

6    other than to store it.

7        By contrast, both *Saleh* and *Yoon*, which plaintiff cites, involved recordation software of

8    a much broader scope, namely *all* of users' interactions across an entire website.  *See Saleh v.*

9    *Nike, Inc.*, 562 F. Supp. 3d 503, 509 (C.D. Cal. 2021) (Judge Fernando L. Aenlle-Rocha); *Yoon*

10   *v. Lululemon United States*, 549 F. Supp. 3d 1073, 1077 (C.D. Cal. 2021) (Judge John W.

11   Holcomb).  In other words, the allegations in *Yoon* suggested that the recordation software

12   there "extend[ed] beyond the ordinary function of a tape recorder," and thus there was a

13   question of fact as to how different it was.  *Yoon*, 549 F. Supp. 3d at 1081.  Plaintiff fails to

14   make comparable allegations here.

15       In sum, the facts as pled show that TrustedForm functioned as a recorder, and not as an

16   eavesdropper.  ActiveProspect is not liable for wiretapping under Section 631(a) for providing

17   a software tool, and the fact that What If used software rather than a physical recording device

18   for the same function does not mean that it aided and abetted wiretapping.  Plaintiff's

19   wiretapping claim is therefore **DISMISSED**.

20       In light of the foregoing, this order need not consider the issues of consent, whether

21   communications were intercepted in transit, and whether the recorded data constitute protected

22   content under CIPA.  Plaintiff's reliance on *Javier v. Assurance IQ, LLC* is therefore

23   inapposite, as *Javier* was expressly cabined to the question of consent.  No. C 21-16351, 2022

24   WL 1744107, at *2 (9th Cir. May 31, 2022).

25       However, this is not to say that consent is irrelevant.  What If's entire lead generation

26   business model is to entice website visitors to consent to telemarketing phone calls, and

27   ActiveProspect's software enables them to do so.  Although this order sides with defendants, it

28

6

**ER-36**

United States District Court
Northern District of California

1    does not in any way bless a business model that depends on the ability of telemarketing

2    companies to freely harass unsuspecting Americans.

3        **2.    CALIFORNIA UNFAIR COMPETITION LAW CLAIM.**

4        Plaintiff's second claim for relief is a violation of the UCL's prohibition against any

5    "unlawful, unfair or fraudulent business act or practice," Cal. Bus. & Prof. Code § 17200,

6    specifically the "unlawful" prong (Compl. ¶ 53).  UCL provides an independent cause of action

7    but requires an underlying violation because "[S]ection 17200 borrows violations of other laws

8    and treats them as unlawful practices."  *See Davis v. HSBC Bank*, 691 F.3d 1152, 1168 (9th

9    Cir. 2012) (alteration in original) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,

10   973 P.2d 527, 539–40 (Cal. 1999)).  Plaintiff's UCL claim fails because her underlying CIPA

11   violation fails.

12       Additionally, a UCL claim may only be brought by "a person who has suffered injury in

13   fact and has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof.

14   Code § 17204.  This means that to have standing under California's UCL, plaintiff "must

15   demonstrate some form of economic injury."  *Kwikset Corp. v. Superior Court*, 246 P.3d 877,

16   885 (Cal. 2011); *see Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009).  Plaintiff has

17   conceded that she lacks UCL standing because she "did not experience a loss of money or

18   property to support standing" (Opp. 8).  Plaintiff's UCL claim is accordingly **DISMISSED**

19   **WITHOUT LEAVE TO AMEND**.

20       **3.    CALIFORNIA CONSTITUTION CLAIM.**

21       Plaintiff's third claim for relief is for invasion of privacy under the California

22   Constitution.  For such claims, plaintiffs must plead that "they possess a legally protected

23   privacy interest."  *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 601 (quoting

24   *Hernandez v. Hillsides, Inc.*, 211 P.3d 1063, 1073 (Cal. 2009)).  Whether plaintiff possesses a

25   legally-protected privacy interest is "a question of law to be decided by the court."  *Hill v.*

26   *Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633, 657 (Cal. 1994).

27       Here, plaintiff's asserted privacy interest is "an interest in conducting personal activities

28   (such as visiting websites), without observation or interference, including visiting websites

7

without being subjected to secret wiretaps" (Compl. ¶ 59; Opp. 19).  Because plaintiff did not plausibly plead wiretapping, plaintiff likewise did not plausibly plead a protected privacy interest under the California Constitution.  Plaintiff's constitutional claim is accordingly **DISMISSED**.

### CONCLUSION

For the foregoing reasons, defendants' motions to dismiss are **GRANTED**.  Defendants' motion to compel arbitration is **DENIED AS MOOT OR WAIVED**.  Plaintiff may seek leave to amend her complaint and shall have **FOURTEEN CALENDAR DAYS** from the date of this order to file a motion, noticed on the normal 35-day track, for leave to file an amended complaint.  A proposed amended complaint must be appended to the motion.  The motion should explain how the amendments to the complaint cure the deficiencies identified herein, as well as any others raised in defendants' briefs.  If such a motion is not filed by the deadline, this case will be closed.

**IT IS SO ORDERED.**

Dated:  December 22, 2022.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
1939 Harrison, Suite 150
Oakland, CA 94612
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Steven L. Woodrow*
swoodrow@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*_Pro Hac Vice_

_Attorneys for Plaintiff and the Class_

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Loretta Williams**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**What If Holdings, LLC**, d/b/a **C4R Media Corp.**, and **ActiveProspect, Inc.**,<br><br>Defendants. | Case No. 3:22-cv-03780-WHA<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION AND/OR DISMISS**<br><br>Date: Dec. 14, 2022<br>Time: 8:00 a.m.<br>Courtroom: 12 |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

I.      INTRODUCTION.................................................................................1

II.     BACKGROUND .................................................................................1

III.    ARGUMENT ......................................................................................2

      A.     WIH Did Not Adequately Notify Or Obtain Assent From Williams Or The Class Members To Support Enforcement Of Its Website Terms, Including The Clause Mandating Arbitration...........................................................2

      B.     ActiveProspect Is Not Entitled To Enforce Arbitration As A Non-Signatory Third Party To The Supposed Hybridwrap Agreement WIH Seeks To Enforce. ...................................................................................6

      C.     Plaintiff Has Adequately Stated Her Claims For Relief To Survive A Motion To Dismiss.................................................................................8

           1.     Plaintiff did not consent to the wiretapping at issue.................................9

           2.     Plaintiff has adequately stated a claim for relief against Defendants for violation of CIPA's wiretapping prohibitions. .......................................11

                *Interception of Transmission*........................................11

                *Content of Communication* ........................................14

                *ActiveProspect's Involvement*........................................15

            3.     Plaintiff has stated a claim for relief for invasion of privacy pursuant to the California Constitution. .......................................18

IV.     CONCLUSION ........................................................................20

visit to the website, as noted in the complaint, include "the date and time of the visit, the browser and operating system used by Williams during the visit, and her geographic location." (*Id.* ¶ 22.) Plaintiff did not intend to communicate that information to WIH; rather, it was generated as a result of the medium of communication and merely detailed characteristics of her communication. Her personal information—name, address, date of birth, and phone number—was the content of her communication with WIH, and the message she intended to communicate. The mere fact that such types of data may be record information in other cases does not necessarily make them so here. By Defendants' logic, divulging personal information such as name or address could never be protected, even if it were the sole content and purpose of a communication.

Defendants' position is untenable. Phone numbers and email addresses may be record information when related to phone calls and email exchanges, but they are not categorically excluded from being "contents" of a communication. Plaintiff communicated with WIH, and the content of her message included her name, address, date of birth, and phone number. The record information in this instance was the date and time of her visit, browser information, and geographic location—not the very information that she intended to convey to WIH. Accordingly, Defendants' arguments that only record information was recorded or intercepted is without merit.

### *ActiveProspect's Involvement*

The final basis for dismissal that Defendants argue is that ActiveProspect supposedly does not qualify as a third party that intercepted or tapped the communications between Plaintiff and WIH—according to Defendants, the use of ActiveProspect's "TrustedForm" software to record Plaintiff's communications should be treated akin to a party to the communications using a tape recorder, rather than a third-party eavesdropper. Defendants' argument is predicated on logic that would completely nullify the fourth clause of CIPA's Section 631(a), and otherwise the issue of whether ActiveProspect may be treated as a tape recorder or an eavesdropper is a factual question best answered after discovery.

The fourth clause of Section 631(a) imposes liability on anyone who "aids, agrees with,

employs, or conspires with any person" to engage in "any of the acts or things" prohibited by the previous three clauses of the section. CAL. PENAL CODE § 631(a). Thus, if ActiveProspect is liable for willfully learning the contents of Plaintiff's communication while it was transmitted to WIH, then WIH may be held liable for employing or conspiring with ActiveProspect to do so—Plaintiff has alleged precisely that scenario. (Dkt. 1 at ¶¶ 45–47) ("[WIH] partnered with (and conspired with) ActiveProspect to achieve the unlawful conduct described herein."). Though ActiveProspect's code was implemented on WIH's website, Plaintiff alleged sufficient details to demonstrate that ActiveProspect is an independent third party that collects and stores the recordings at issue. (*See id.* ¶¶ 5–12, 29) ("All TrustedForm videos are hosted on ActiveProspect's servers, and to access the videos one must follow a hyperlink provided by ActiveProspect. Moreover, ActiveProspect independently collects and stores information provided by web users on the websites of its clients.") Taken as true, these factual allegations are sufficient to state a claim that ActiveProspect is liable as an independent third party that intercepted Plaintiff's communications (in violation of § 631(a)'s second clause) and WIH is liable for agreeing or conspiring with ActiveProspect to do so (in violation of § 631(a)'s fourth clause).

Defendants cite *Graham* in support of their contention that ActiveProspect is not a third party wiretapper but "simply a vendor" of software "equivalent [to] a tape recorder," and that "ActiveProspect merely provides a 'tool'" and does not use the information for its own purposes." (Dkt. 25 at 17; Dkt. 26 at 8–9) (citing *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021). These contentions are flawed in several ways. First, the notion that a third party can secretly record communications as long as it does not "use the information for its own purposes" contradicts the several bases of liability established by the plain text of CIPA—Section 631(a) imposes liability "for three distinct and mutually independent patterns of conduct: [1] intentional wiretapping, [2] willfully attempting to learn the contents or meaning of a communication in transit over a wire, and [3] attempting to use or communicate information obtained as a result of

engaging in either of the previous two activities," with a fourth basis of liability for agreeing or conspiring with another to do any of the above. *See Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192, 583 P.2d 737 (1978). While the use of Plaintiff's intercepted communications could provide for another, independent basis of liability under the third clause, Plaintiff need not plead usage of the information to state a claim under the second or fourth clauses of Section 631(a).

Second, *Graham* is distinguishable because the Court therein found that the plaintiff had not alleged that the third party "intercepted and used the data itself." *Graham*, 533 F. Supp. at 823. Here, Plaintiff need not plead usage to state a claim for interception, but she has alleged that ActiveProspect tapped her communications and that it "independently collects and stores information provided by web users on the websites of its clients," like WIH. (Dkt. 1 at ¶ 29.) Williams has alleged sufficient facts to state claims for relief under two clauses of Section 631(a), regardless of whether ActiveProspect "used" her information in some unknown way; if it did, she could assert an additional claim for liability, but it is not required for the claims she has set forth.

Defendants' theory that § 631(a) should permit website owners like WIH to hire third parties to secretly record user communications would "vitiate the statute's protections" if adopted: the statute plainly assigns liability to third parties who record a conversation, as well as to parties to a conversation that engage the third party to do so. *See, e.g.*, *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021) (rejecting defendants' argument "that any third party who surreptitiously recorded a conversation between two parties would not violate § 631(a) so long as it was recording the conversation at the direction and for the benefit of a party"). An eavesdropper who is employed or authorized by one party to intercept or record a communication is always doing so at the direction of said party—this does not prevent liability. *Id.* at 520–21 (citing *Revitch v. New Moosejaw, LLC*, No. 18-CV-06827-VC, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("Although Moosejaw cannot be liable for eavesdropping on its own communications with Revitch, the complaint adequately alleges that Moosejaw violated section 631 by enabling [a third party's] wrongdoing."); *Ribas v. Clark*, 38 Cal. 3d 355, 358–62, 696 P.2d 637 (1985)

(holding attorney liable for eavesdropping on conversation at the direction of his client).

The California Supreme Court has often emphasized the "express objective" of CIPA—to protect a person making communications from a situation where the person on the other end of the line "permits an outsider to . . . listen in." *Ribas*, 38 Cal. 3d at 364; *see also Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 200 (2021) (noting distinction between secondhand repetition of a conversation and "simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device"). The Ninth Circuit has similarly held that wiretapping statutes are designed "to prevent the acquisition of the contents of a message by an unauthorized third-party or 'an unseen auditor.'" *In re Facebook*, 956 F.3d 589, 608 (9th Cir. 2020). The Court in *Graham* found that the plaintiff lacked allegations to suggest that the third party was an eavesdropper, rather than a provider of a tool akin to a tape recorder. *Graham*, 533 F. Supp. at 832–33. Here, Plaintiff has alleged that ActiveProspect is an independent third party that recorded her communications with WIH's website (at the behest of WIH) and collected and stored such information—these allegations support the reasonable inference that ActiveProspect was a third party eavesdropping on a conversation, not a tape recorder.

Ultimately, whether ActiveProspect is more akin to a tape recorder or an eavesdropper "is a question of fact for a jury, best answered after discovery into the storage mechanics of" its system. *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021). At this stage of the pleadings, Plaintiff has met her burden to allege and elevate her right to relief above the speculative level. Taken in a light most favorable to the Plaintiff, as must be done a motion to dismiss, Plaintiff's allegations adequately state claims for relief under CIPA, and Defendants' motions to dismiss should be denied.

### 3. Plaintiff has stated a claim for relief for invasion of privacy pursuant to the California Constitution.

Finally, Defendants argue that Plaintiff has not adequately stated a claim for invasion of privacy under the Constitution of California. To plead a privacy violation under the California

1  **KELLEY DRYE & WARREN LLP**
   Becca J. Wahlquist (SBN 215948)
2  350 South Grand Avenue, Suite 3800
   Los Angeles, CA 90071
3  Telephone: (213) 547-4900
   Facsimile: (213) 547-4901
4  bwahlquist@kelleydrye.com

5  **KELLEY DRYE & WARREN LLP**
   Lauri A. Mazzuchetti (*Pro Hac Vice forthcoming*)
6  One Jefferson Road, 2nd Floor
   Parsippany, NJ 07054
7  Telephone: (973) 503-5900
   Facsimile: (973) 503-5950
8  lmazzuchetti@kelleydrye.com

9  *Attorneys for Defendant ActiveProspect, Inc.*

10                **UNITED STATES DISTRICT COURT**
11               **NORTHERN DISTRICT OF CALIFORNIA**

12  **Loretta Williams,** individually and on behalf    Case No. 3:22-cv-03780-WHA
    of all others similarly situated,
13                                                      [Assigned to Hon. William Alsup]
                          Plaintiff,
14
           v.                                           **DEFENDANT ACTIVEPROSPECT, INC.'S**
15                                                      **NOTICE OF MOTION AND MOTION TO**
    **What If Holdings, LLC d/b/a C4R Media**           **DISMISS COMPLAINT PURSUANT TO**
16  **Corp.,** and **ActiveProspect, Inc.,**            **FED. R. CIV. P. 12(b)(6)**

17                         Defendants.                  [Request for Judicial Notice, and Proposed Order
                                                        filed concurrently]
18
19                                                      Hearing: December 15, 2022
                                                        Time: 8:00 a.m.
20                                                      Location: Courtroom 12

21
22
23
24
25
26
27
28
                                                    CASE NO. 3:22-CV-03780-WHA
    DEFENDANT ACTIVEPROSPECT, INC.'S MOTION TO DISMISS COMPLAINT
                 PURSUANT TO FED. R. CIV. P. 12(B)(6)

1

**TABLE OF CONTENTS**

2   I. INTRODUCTION ....................................................................................................1

3   II. FACTUAL BACKGROUND...............................................................................2

4          A.     ActiveProspect's TrustedForm Software ........................................2

           B.     Plaintiff's Visit to The Website Owner's Page .............................4

5   III. ARGUMENT ......................................................................................................6

6          A.     Plaintiff Fails to State a Valid Claim Under Section 631 .............7

7                 1.     Plaintiff Has Not Adequately Pled Any Unauthorized Connection of
                         a Communication While In Transit...........................................7

8                        (a)     No Unauthorized Connection..............................8

9                        (b)     No Interception While In Transit .........................9

10                       (c)     No Communication ............................................12

11                2.     Plaintiff Has Not Pled Use of a Telegraph or Telephone..........12

12                3.     Plaintiff Otherwise Fails to State a Claim under CIPA............13

13                4.     Plaintiff Consented under CIPA............................................14

           B.     Plaintiff Fails to State a Valid Claim for Unfair Competition Under
14                California Business Professions Code...............................................16

15         C.     Plaintiff Fails to State a Valid Claim for Invasion of Privacy Under the
                  California Constitution ...................................................................16

16                1.     Plaintiff Has Not Adequately Pled That She Had a Reasonable
                         Expectation of Privacy .........................................................17

17
                  2.     Plaintiff Has Not Adequately Pled That ActiveProspect's Conduct
18                       Amounts to a Serious Invasion of a Protected Privacy Interest ..............17

19   IV. CONCLUSION .................................................................................................19

20

21

22

23

24

25

26

27

28

CASE NO. 3:22-CV-03780-WHA
MEMORANDUM OF POINTS AND AUTHORITIES

**ER-46**

*Dep't of Forestry and Fire Prot.*, 212 F. Supp. 3d 808, 811 (N.D. Cal. 2016) (quoting *Ashcroft*, 556 U.S. at 678). "[C]ourts do not 'accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Id.* (quoting *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)). "And even where facts are accepted as true, 'a plaintiff may plead [her]self out of court' if [s]he 'pleads facts which establish that [s]he cannot prevail on h[er] . . . claim.'" *Id.* (quoting *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997)).

Applying this standard, Plaintiff's claims should be dismissed with prejudice.

### A.      **Plaintiff Fails to State a Valid Claim Under Section 631**

The California Supreme Court has explained that CIPA Section 631(a) makes unlawful "three operative clauses covering 'three distinct and mutually independent patterns of conduct': (1) 'intentional wiretapping [with any telegraph or telephone],' (2) 'willfully attempting to learn the *contents* or meaning of a *communication in transit* over a wire,' and (3) 'attempting to use or communicate information obtained as a result of engaging in either of the two previous activities.'" *See Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021) (quoting *Tavernetti v. Superior Court of San Diego County*, 22 Cal. 3d 187, 192, 583 P.2d 737 (Cal. 1978) (emphasis added); *see also* Cal. Penal Code § 631(a); *accord In re Google Inc.*, No. 13-MD-02430-LHK, 2013 WL 5423918, at *15 (N.D. Cal. Sep. 26, 2013)). Section 631(a) includes a fourth basis for liability, for anyone "'who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the' other three bases for liability." *Id.* (quoting Cal. Penal Code § 631(a)).

Plaintiff's Section 631 claim should be dismissed because she has not pled facts that support a violation of any of these provisions of CIPA.

### 1.      **Plaintiff Has Not Adequately Pled Any Unauthorized Connection of a Communication While In Transit**

Under Section 631(a)'s second clause, which is the apparent focus of the Complaint, a plaintiff must allege that defendant "willfully and without the consent of all parties to the communication, or in any *unauthorized manner*, read, or attempted to read, or to learn the contents or meaning of any message, report, or communication while the same was *in transit* or passing over

any wire, line, or cable, or was being sent from, or received at any place within California." *Mastel*, 549 F. Supp. 3d at 1136 (emphasis added) (quoting Cal. Penal Code § 631(a)).

### (a)     No Unauthorized Connection

Section 631 provides a cause of action only for "eavesdropping"—that is, "the secret monitoring of conversations by *third parties*." *Ribas v. Clark*, 38 Cal. 3d 355, 359, 696 P.2d 637 (Cal. 1985) (emphasis added). Plaintiff's CIPA claim is predicated entirely upon the theory that ActiveProspect qualifies as a "third-party" for purposes of any alleged communications that Plaintiff had with the Website Owner. (Compl. ¶¶ 22-27.) This claim lacks merit.

In *Graham v. Noom, Incorporated*, Judge Beeler addressed a similar theory that attempted to hold a vendor – similar to ActiveProspect – liable under Section 631 of CIPA, arguing that the vendor qualified as a "third-party" for purposes of CIPA. 533 F. Supp. 3d at 831. The court recognized that defendant Noom was using "a vendor that provides a software service" and there were "no allegations [] that [the vendor] intercepted and used the data itself." 533 F. Supp. 3d at 832. Accordingly, the court dismissed the CIPA claim at the pleading stage for failure to state a claim. *Id.* at 834; *see also Yale v. Clicktale, Inc.*, No. 20-cv-07575, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021) (same); *Johnson v. Blue Nile, Inc.*, No. 20-cv-08183, 2021 WL 1312771, at *2 (N.D. Cal. Apr. 8, 2021) (same).

The same result should be reached here. In this case, Plaintiff alleges only that "ActiveProspect offers a product to lead generators and telemarketers known as 'TrustedForm'" that records evidence of prior express written consent to be contacted by visitors to the Website. (Compl. ¶ 5.) The Website Owner – not ActiveProspect – installed the TrustedForm software on its Website. (*Id.* ¶¶ 2, 7.) There is no allegation that ActiveProspect used any information entered by Plaintiff for its own purposes.[4] (*See generally* Compl.) Instead, as Plaintiff herself alleges, ActiveProspect merely

---

[4] The Ninth Circuit's unpublished decision in *Javier v. Assurance IQ, LLC* has no application here, because in that case, the court specifically declined to address this question, given that it was not reached by the district court, which dismissed the case based on the website owner's privacy policy. No. 21-16351, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) ("[W]e [] do not reach Defendants' other arguments, including whether . . . ActiveProspect is a third party under Section 631(a)").

provides a "tool" to aid the Website Owner in the conduct of its own business.[5] *Graham*, 533 F. Supp. 3d at 832. Therefore, the CIPA claim should be dismissed on this ground alone.

### (b) No Interception While In Transit

Courts in California have found that the second clause of CIPA "only imputes liability when the defendant reads, or attempts to read, a communication that is '*in transit* or *passing* over any wire, line, or cable, *or is being sent from, or received* at any place within' California."[6] *Mastel*, 549 F. Supp. 3d at 1136; *see also Mireskandari v. Daily Mail*, No. 12-cv-02943, 2013 WL 12129559, *10 n.44 (C.D. Cal. Jul. 30, 2013) (finding that plaintiff had failed to plausibly allege CIPA claim under second clause because complaint failed "plausibly to plead that [defendant] intercepted any electronic communication while it was in transit; at most, he alleges the illegal disclosure of data [defendant] held in storage").

In order for a "wiretap" to occur, a communication must be "intercepted" while it is "in transit or passing over a wire, line or cable." Cal. Penal Code § 631(a). In interpreting Section 631, courts have generally construed it "as coextensive with the [federal] Wiretap Act." *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1228 n.9 (C.D. Cal. 2017) (citing *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1033 (N.D. Cal. 2014); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 954 (N.D. Cal. 2014)); *see also* Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510-2523 ("Wiretap Act").

---

[5] Casting ActiveProspect into the role of third-party eavesdropper would be the equivalent of holding a security camera manufacturer responsible for monitoring what occurs in its client's department store. ActiveProspect provides a tool and service to business owners and is not an uninvited eavesdropper.

[6] The Third Circuit in *Popa v. Harriet Carter Gifts, Inc.*, 45 F. 4th –, No. 21-2203, 2022 WL 3366425, at *3-5 (3d Cir. June 8, 2022), recently interpreted the definition of the term "intercept" under Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("WESCA") and reversed an award of summary judgment in defendants' favor. That case is inapposite here because the appellate court relied upon specific statutory language in Pennsylvania's WESCA to reach its conclusion. It does not excuse Plaintiff's failure to allege interception entirely, and such failure further supports dismissal of the CIPA claim.

1  SHEPPARD MULLIN RICHTER & HAMPTON LLP
   JAY T. RAMSEY Cal. Bar. No. 273160
2  1910 Avenue of the Stars, Suite 1600
   Los Angeles, California 90067-6055
3  Telephone:  310.228.3700
   Facsimile:  310.228.3701
4  Email:        jramsey@sheppardmullin.com

5
   KLEIN, MOYNIHAN, TURKO LLP
6  NEIL ASNEN (Pro Hac Application Forthcoming)
7  450 7th Ave.
   New York, New York 10123
8  Telephone:  212.246.0900
   Email:        nasnen@kleinmoynihan.com
9

10 *Attorneys for Defendant What If Holdings,*
11 *LLC d/b/a C4R Media Corp.*

12

13                **UNITED STATES DISTRICT COURT**

14 **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

15 LORETTA WILLIAMS, individually      | Case No. 3:22-cv-3780-WHA
16 and on behalf all others similarly  |
   situated,                          | *Assigned to the Hon. William Alsup*
17                                     |
18              Plaintiffs,            | **DEFENDANT WHAT IF**
                                       | **HOLDINGS, LLC d/b/a C4R MEDIA**
19        v.                           | **CORP.'S MOTION TO COMPEL**
                                       | **ARBITRATION AND/OR DISMISS**
20 WHAT IF HOLDINGS, LLC d/b/a         |
   C4R MEDIA CORP., and                |
21 ACTIVEPROSPECT, INC.                | Date:        December 15, 2022
                                       | Time:        8:00 a.m.
22              Defendants.            | Courtroom:   12, 19th Floor
23                                     |
24                                     | Complaint Filed:    June 27, 2022
25                                     | Trial Date:         None Set

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ............................................................................ 1

ISSUES TO BE DECIDED ...................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................... 1

I.      INTRODUCTION .......................................................................... 1

II.     LEGAL STANDARD ..................................................................... 3

III.    PLAINTIFF'S CLAIMS ARE SUBJECT TO MANDATORY ARBITRATION ............................................................................ 4

     A.    The Arbitrator, Not The Court, Should Determine Arbitrability ............ 5

     B.    Even If The Court Reaches Questions Of Arbitrability, It Must Compel Arbitration ................................................................. 6

         1.    There is a Valid Agreement to Arbitrate ........................ 7

         2.    Plaintiff's claims are subject to the arbitration provision ............ 9

         3.    The arbitration clause is presumed valid and enforceable ......... 10

IV.    THE COMPLAINT MUST BE DISMISSED AS A MATTER OF LAW ......................................................................................... 12

     A.    Plaintiff Consented To The Conduct At Issue ...................................... 12

     B.    The Complaint Does Not State A Valid CIPA Claim .......................... 13

     C.    The Complaint Fails To State A Claim For Violation Of The California Constitution's Right To Privacy .......................................... 18

     D.    Plaintiff Has No Standing For Her Unfair Competition Law Claim ................................................................................... 20

V.     CONCLUSION ............................................................................ 21

Zitter Decl. ¶ 7; Ex. C.

By virtue of agreeing to the foregoing *prior* to reaching the Website's TCPA consent page, on which Plaintiff asserts that her communications were allegedly illegally recorded, Plaintiff cannot state a viable claim of any kind purporting to arise from the recording that occurred subsequent to that provision of consent.[1] Not only is the *absence* of consent an element of a claim pursuant to CIPA § 631(a), but Plaintiff also cannot plausibly allege a violation of a constitutional right to privacy when the allegedly intrusive act was one to which she consented.

### B.     The Complaint Does Not State A Valid CIPA Claim

California's Penal Code § 631(a), coding the California Invasion of Privacy Act ("CIPA"), generally attaches liability to a person if that person secretly listens to another's conversations. *See Graham v. Noom, Inc.*, 53 F.Supp.3d 823, 832 (2021). Specifically, the statute provides, *inter alia*, as follows:

> Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable by a fine not exceeding two thousand five hundred dollars ($2,500).

---

[1]     The consent that Plaintiff provided *prior* to the recording is notably contrasted with the retroactive consent that was recently deemed insufficient to preclude a CIPA claim by the Ninth Circuit in *Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022).

The California Supreme Court has explained that this provision contains three operative clauses, which cover "three distinct and mutually independent patterns of conduct": (1) "intentional wiretapping"; (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire" and (3) "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Tavernetti v. Superior Court*, (1978) 22 Cal.3d 187, 192.

Only a third party can listen to a conversation secretly. *Rogers v. Ulrich*, (1975) 52 Cal.App.3d 894, 897-899. A party to a communication can record it (and is not eavesdropping when it does). *Id*. As a result, because the information submitted to the Website was communicated by Plaintiff to WIH, the first three aforementioned patterns of conduct do not apply to WIH. Consequently, only §631(a)'s fourth basis for liability applicable to anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be any of the" other three bases of liability could feasibly apply to WIH. Nevertheless, because ActiveProspect's conduct does not plausibly fit into any of the three bases, then logically there is no basis with which to hold WIH liable.

*There was no Intentional Wiretapping:* Plaintiff's allegations are insufficient to invoke the first basis of liability, intentional wiretapping, because that portion of the statute explicitly only applies to telephones or telegraphs and does not extend to Internet communications. The Website is not a "telephone instrument" anymore than the operating system of an iPhone is. Nonetheless, it was recently held that a mobile application's accessing a user's copy and paste iOS functionality, "Pasteboard," was not covered by the "intentional wiretapping" basis of §631(a) liability notwithstanding the conduct unquestionably occurring on a person's telephone. *Mastel v. Miniclip SA*, 549 F.Supp.3d 1129, 1136 (E.D. Cal. 2021). *Mastel* explicitly rejected the notion that because courts interpreting CIPA extended CIPA's second clause to technologies beyond telephone or telegraphs for purposes of the second clause of CIPA, the same must be true with respect to CIPA's first

clause. *Mastel* approvingly cited to *Matera v. Google, Inc.*, 2016 WL 8200619, *18 (N.D. Cal. Aug. 12, 2006), *In re Google Inc.*, 2013 WL 5423918, *20 (N.D. Cal. Sept. 26, 2013), and *In Re Google Private Litigation*, 457 F.Supp.3d 797, 799, 826 (N.D. Cal. 2020) in support of its conclusion that the first prong of CIPA is limited solely to communications passing over telegraph or telephone wires. For the reason that communications on the Website were did not pass over telegraph or telephone wires, the first clause of CIPA does not apply.

> ### *There was no Willful Attempt to Learn Contents of the Communication:*

Moreover, the second basis of CIPA liability, "willfully attempting to learn the contents or meaning of a communication in transit over a wire," is inapplicable for the simple fact that the information that Plaintiff complains was purportedly recorded on the Website does not constitute "content" of a communications for purposes of CIPA.

"The analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *Cline v. Reetz-Laiolo*, 329 F.Supp.3d 1000, 1051 (N.D. Cal. 2018). The Wiretap Act defines the term "contents" as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510. The Ninth Circuit has held that "contents" means the "intended message conveyed by the communication" as opposed to "record information regarding the characteristics of the message that is generated in the course of communication." *In re Zynga Privacy Litigation*, 750 F.3d 1098, 1106 (9th Cir. 2014). The Ninth Circuit has further explained that record information "includes the name, address, and subscriber number or identify of a subscriber or customer." *Id.* Additionally, it has also been held that email address, and phone number are not content, *see In re Yahoo Mail Litig.*, 7 F.Supp.3d 1016, 1034 (N.D. Cal. 2014), nor are IP addresses and/or URLs content. *See In re Nickelodeon Consumer Priv. Litig.*, 2014 WL 3012873, *15 (D.N.J. July 2, 2014).

Plaintiff alleges that the following was recorded by the TrustedForm technology: keystrokes, mouse movements, clicks, name, address, date of birth, and phone numbers. *See Complaint* ¶ 22, 23, 27.   None of these pieces of data constitutes a communication's content.  They are all record information.  As a result, the Complaint does not state a claim for violation of CIPA.

*CIPA's Third Clause does not apply:* Because Plaintiff has failed to state a valid CIPA claim pursuant to either the first or second clause of the statute, she has necessarily failed as a matter of law to assert a violation of CIPA's third clause.  *See In re Google Assistant Priv. Litig.,* 457 F.Supp. 3d at 827 ("Plaintiffs must establish that the information at issue . . . was obtained through a violation of the first or second clauses.  Because plaintiffs have not done so, they have also failed to plead a violation of the third clause.").

For the foregoing reasons, Plaintiff's CIPA claims fail as a matter of law and must be dismissed accordingly.

While the foregoing analysis demonstrates that the Complaint fails to allege a CIPA claims as a matter of law, it is also worth noting that technology such as ActiveProspect's TrustedForm has previously been deemed to be no more than an instrument to permit a party to a communication to record its own communications. *Graham v. Noom, Inc.*, 533 F.Supp.3d 823 (N.D. Cal. 2021) provides the most appropriate guidance given the nearly identical fact pattern.  In *Noom*, the plaintiffs claimed that a software as a service provider, FullStory, eavesdropped on their communications with Noom by embedding code on Noom's website to capture data such as keystrokes, mouse clicks, page scrolling, all of which were associated with the website visit and which could be viewed through a playback function called Session Replay.  Additional information captured was the date and time of the visit, duration of the visit, IP addresses, locations at the time of visit, browser types, and the operating system of the device used to access the website, in addition to the personally identifiable information and protected health information that users

submit to Noom's website. The *Noom* Court conclusively found that the FullStory product did not illegally eavesdrop on the plaintiffs' communications in violation of Cal. Penal Code § 631(a) nor invade any reasonably protected privacy interest in violation of the California Constitution by finding that FullStory was not a third-party eavesdropper. Instead, the *Noom* Court correctly concluded that it was simply a vendor that allowed Noom to capture Noom's own data for future internal analysis. In effect, FullStory's software was the equivalent of a tape recorder which permitted Noom to record its own data and to subsequently analyze its own data.

The *Noom* Court comprehensively distinguished the relevant facts from inapposite cases in which Internet-related activity was deemed to be illegal eavesdropping. Examples of the illegal Internet-based eavesdropping included *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019), in which a third-party's computer code was embedded on an online retailer's website, but the purpose of capturing data was exclusively to the benefit of the code-provider to create its own marketing database, not to benefit any party to the underlying website-based communication. More notoriously, In *re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020), Facebook code was embedded on third party websites which tracked users of those third party websites even when they were not signed into Facebook. Facebook was then able to assemble a cradle to grave history of the users browsing activity to sell that data to advertisers.

Notably, the *Noom* Court drew a clear line of demarcation between the data mining operations of third-party code providers, which could plausibly give rise to a CIPA claim by virtue of the profit generating marketing purposes for which the data had been captured, with the legal data capturing software in *Noom* which allow parties to the communication utilize their own data. ActiveProspect's TrustedForm product clearly falls into the latter category, by permitting companies such as WIH to use the recordings to demonstrate compliance with the federal telemarketing statute, a fact acknowledged by the Complaint. *Complaint* ¶ 5.

1   Rebecca Davis (SBN 271662)
    rebecca@lozeaudrury.com
2   **LOZEAU DRURY LLP**
    1939 Harrison St., Suite 150
3   Oakland, CA 94612
    Telephone: (510) 836-4200
4   Facsimile: (510) 836-4205

5   Patrick H. Peluso*
        ppeluso@woodrowpeluso.com
6   Steven L. Woodrow*
        swoodrow@woodrowpeluso.com
7   **WOODROW & PELUSO, LLC**
    3900 East Mexico Avenue, Suite 300
8   Denver, Colorado 80210
    Telephone: (720) 213-0675
9   Facsimile: (303) 927-0809

10  *Pro Hac Vice* admission to be sought

11  Attorneys for Plaintiff and the Class

12              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
13

14  **Loretta Williams,** individually and on behalf
    of all others similarly situated,
15
                                                Case No.
16                              Plaintiff,

17  v.                                          **CLASS ACTION COMPLAINT**

18  **What If Holdings, LLC** d/b/a **C4R Media
    Corp.**, and **ActiveProspect, Inc.**        **JURY TRIAL DEMANDED**
19

20                              Defendants.

21
          1.      Plaintiff Loretta Williams ("Plaintiff" or "Williams") brings this Class Action
22
    Complaint and Jury Demand ("Complaint") against Defendants What If Holdings, LLC d/b/a C4R
23
    Media Corp. ("C4R Media") and ActiveProspect, Inc. ("ActiveProspect") to obtain redress for, and
24
    to put an end to, Defendants' serial wiretapping of the electronic communications of visitors to
25
    C4R Media's websites, including claim.foundmoneyguide.com.
26
          2.      The wiretaps are embedded in the computer code on C4R Media's websites and are
27
    used by Defendants to covertly observe and record visitors' keystrokes and clicks in real time.
28

    **CLASS ACTION COMPLAINT**           - 1 -

3.      Such actions violated the California Invasion of Privacy Act, Cal. Penal Code 631 ("CIPA"), and invaded Plaintiff's and class members' privacy rights.

4.      Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**NATURE OF THE ACTION**

5.      Defendant ActiveProspect offers a product to lead generators and telemarketers known as "TrustedForm". This product is designed to allow these lead generators and telemarketers to attempt compliance with the federal Telephone Consumer Protection Act by documenting alleged evidence of prior express consent to receive telemarketing calls provided on websites.

6.      One feature of ActiveProspect's "TrustedForm" product is a "video replay" function, which records, in real time, a person's interaction with a website that is using TrustedForm.

7.      As one of ActiveProspect's "Knowledge Managers" puts it on ActiveProspect's website,

> When the TrustedForm script is loaded on a page, the HTML (technically the DOM) is collected and stored, as well as all the "event data" such as mouse movements and clicks, and key presses, as well as changes to the DOM right up to the point the user leaves the page, which is typically upon submitting the form. Whatever the user does on the page is captured, including changes and corrections to the information entered in the form.

> The TrustedForm certificate generated by the script includes all of this event data, which can be replayed exactly as it happened on top of the original DOM. This is the most authentic record possible of the end users' interaction with the form. It is not a re-creation in that we make no assumptions or estimates as to what happened on the page. We play back the events exactly as they occurred.

https://community.activeprospect.com/questions/4180654 (last visited June 1, 2022).

8.      Said another way, TrustedForm "captures a copy of the web page viewed by the visitor and the user events that took place on the page including form inputs, mouse movements and clicks. It plays these events back as a screen capture of how the user interacted with the page."

1    *See* "Certificate of Authenticity for Web Leads," attached hereto as Exhibit A.

2          9.      ActiveProspect enters into partnerships with various telemarketers and lead

3    generators who wish to utilize TrustedForm. ActiveProspect then provides its software and scripts

4    to those partners.

5          10.     One such entity is C4R Media, which uses TrustedForm on its website

6    claim.foundmoneyguide.com and other websites that it operates.

7          11.     C4R Media knows that TrustedForm captures strokes, clicks, and other interactions

8    on its websites—it is a primary reason why C4R Media contracts with ActiveProspect for the

9    TrustedForm product in the first place.

10         12.     Pursuant to their agreement with each other, C4R Media installed TrustedForm by

11   embedding ActiveProspect's code onto click.foundmoneyguide.com and, on information and

12   belief, many of C4R Media's other lead generation websites.

13         13.     Unfortunately for Defendants, their conduct constitutes wiretapping under

14   California law because Defendants do not secure prior express consent before recording their

15   movements on the websites.

16         14.     As a result of Defendants' violations of the CIPA, Plaintiff Williams and the

17   members of the Class were deprived of their privacy rights guaranteed to them by California law,

18   and they are thus entitled to injunctive relief and statutory damages in the amount of $5,000 for

19   each violation. *See* Cal. Penal Code § 637.2.

20                                    **PARTIES**

21         15.     Plaintiff Williams is a natural person and citizen of the State of California.

22         16.     Defendant C4R Media is a limited liability company with its principal place of

23   business located in Fort Lee, New Jersey.

24         17.     Defendant ActiveProspect is a Nevada corporation with its principal places of

25   business located in Austin, Texas.

26                            **JURISDICTION AND VENUE**

27         18.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28

28   U.S.C. § 1332(d), *et seq.* ("CAFA"), because the class consists of over 100 people, at least one

CLASS ACTION COMPLAINT              - 3 -

**ER-59**

1  member of each class is from a State other than the state of the Defendants, and the amounts in

2  controversy are over $5,000,000. Further, none of the exceptions to CAFA jurisdiction apply.

3      19.    This Court has personal jurisdiction over Defendants because they conduct

4  substantial business in this District, the unlawful conduct alleged in the Complaint occurred in

5  and/or were directed to this District, and Plaintiffs' claims arise out of each Defendants' forum-

6  related activities.

7      20.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of

8  the events and omissions giving rise to the claims occurred in this District.

9                          **FACTS SPECIFIC TO PLAINTIFF**

10     21.    On or around December 24, 2021, Williams visited

11 claim.foundmoneyguide.com/api/offer, a website owned and operated by C4R Media.

12     22.    During that visit, the TrustedForm replay function created a video that captured

13 Williams' keystrokes and clicks on the website. It also captured the date and time of the visit, the

14 browser and operating system used by Williams during the visit, and her geographic location.

15     23.    TrustedForm also recorded Williams' name, address, date of birth, and phone

16 number.

17     24.    A screenshot of the TrustedForm related to Williams's visit is below:



25. As the screenshot of the TrustedForm replay shows, Williams' personal information is included on the page. But at this point in the video, the "I CONFIRM" button is not clicked. However, approximately 3 seconds into the video, Williams' cursor appears and clicks "I CONFIRM":



26. Then one additional second later, the cursor moves over to the green "CLAIM YOUR CASH!" button:



27.     Thus, Williams' interaction (including her keystrokes and mouse movement and clicks) was recorded by C4R Media and ActiveProspect using ActiveProspect's TrustedForm technology.

28.     This recording was done without Plaintiff's consent. Defendants did not inform website visitors that their strokes and clicks would be recorded, much less secure prior express consent. Indeed, the wiretapping began the moment Williams and other members of the alleged Class visited the webpage.

29.     All TrustedForm videos are hosted on ActiveProspect's servers, and to access the videos one must follow a hyperlink provided by ActiveProspect. Moreover, ActiveProspect independently collects and stores information provided by web users on the websites of its clients.

30.     Members of the alleged Class were unlawfully monitored in the same way as Williams' was: TrustedForm functions the exact same way no matter which persons is visiting a site, or which of C4R's websites the person is visiting.

31.     For wiretapping her visit to C4R's visit, Plaintiff brings this suit, on behalf of herself and those similarly situated, to put an end to Defendants' repeated and widespread CIPA violations. Such violations entitle her, and other similarly situated persons, to injunctive relief plus statutory damages of $5,000 per violation.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure Rules 23(b)(2) and 23(b)(3) on behalf of herself and a Class defined as follows:

> All persons in California who: (1) from a date one year prior to the filing of the initial complaint in this action to the date notice is sent to the Class; (2) visited one of C4R Media's websites; (3) which utilized ActiveProspect's "TrustedForm" software; (4) who had their electronic communications intercepted and/or recorded by ActiveProspect; and (5) where the Defendants claim to have secured prior express consent to monitor, record, collect, and store electronic communications in the same manner as they claim to have secured prior express consent from Williams, or where Defendants do not claim they secured any such prior express consent.

33.     Excluded from the Class are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a

controlling interest, and those entities' officers and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) Plaintiff's counsel and Defendants' counsel; (4) persons who execute and file a timely request for exclusion, (5) persons who have had their claims in this matter finally adjudicated and/or otherwise released, and (6) the legal representatives, successors, and assigns of any such excluded person. Plaintiff anticipates the need to amend the class definition following a reasonable period for discovery regarding the contours of the Class.

34. **Numerosity:** The exact number of class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants wiretapped thousands of California residents. Further, the class members can readily be ascertained through Defendants' records.

35. **Commonality:** Common questions of law and fact exist as to all members of the Class for which this proceeding will provide common answers in a single stroke based upon common evidence, including:

(a) Whether Defendants' conduct described herein violated the CIPA;

(b) Whether Defendants secured prior express consent before monitoring, recording, collecting, and storing the electronic communications of Plaintiff and the Class;

(c) Whether Defendants have violated the California Constitution; and

(d) The proper measure of damages.

36. **Typicality:** As a result of Defendants' uniform and repeated pattern of unlawful recording, Plaintiff and the class members suffered the same injury and similar damages. If Defendants' actions violated the CIPA as to Plaintiff, then they violated the CIPA as to all class members. Thus, Plaintiff's claims are typical of the claims of the other class members.

37. **Adequate Representation:** Plaintiff is a member of the Class and both she and her counsel will fairly and adequately represent and protect the interests of the Class, as neither has interests adverse to those of the class members and Defendants have no defenses unique to Plaintiff. In addition, Plaintiff has retained counsel competent and experienced in complex litigation and class actions. Further, Plaintiff and her counsel are committed to vigorously

prosecuting this action on behalf of the members of the Class, and they have the financial resources to do so.

38. **Conduct Applicable Towards Class as a Whole:** Defendants acted consistently with respect to every member of the Class. No Class Member was treated specially or different as Defendants acted in the same manner with respect to all Class Members. As such, injunctive relief and corresponding declaratory relief are available and appropriate.

39. **Predominance:** The common questions of law and fact set forth above go to the very heart of the controversy and predominate over any supposed individualized questions. Irrespective of any given class member's situation, the answer to whether Defendants' conduct described herein repeatedly violated the CIPA is the same for everyone—a resounding "yes"—and the same will be proven using common evidence.

40. **Superiority and Manageability:** A class action is superior to all other methods of adjudicating the controversy. Joinder of all class members is impractical, and the damages suffered by/available to the individual class members will likely be small relative to the cost associated with prosecuting an action. Thus, the expense of litigating an individual action will likely prohibit the class members from obtaining effective relief for Defendants' misconduct. In addition, there are numerous common factual and legal questions that could result in inconsistent verdicts should there be several successive trials. In contrast, a class action will present far fewer management difficulties, as it will increase efficiency and decrease expense. Further, class-wide adjudication will also ensure a uniform decision for the class members.

**FIRST CAUSE OF ACTION**
**Violation of Cal. Penal Code § 631,** *et seq.*
**(On Behalf of Plaintiff and the Class)**

41. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

42. The CIPA provides that it is a violation of Cal. Penal Code § 631(a) for a defendant, "by means of any machine, instrument, contrivance, or in any other matter," to do any of the following:

Intentionally tap[], or make[] any unauthorized connection, whether physically,

electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

Or

Willfully and without the consent of all parties to the communication, or in any unauthorized manner, read[] or attempt[] to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

Or

Use[], or attempt[] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

Or

Aid[], agree[] with, employ[], or conspire[] with any person or persons to unlawfully do, or permit or cause to be done any of the acts or things mentioned above in this section.

43.     Section 631(a) is not limited to phone lines. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21(N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, --- F.3d --- 2020 WL 1807978 (9th Cir. Apr. 9, 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

44.     TrustedForm is a "machine, instrument, contrivance, or . . . any other manner" that is used by ActiveProspect and C4R Media to engage in the unlawful practices described in this Complaint.

45.     By using TrustedForm, Defendants intentionally tapped the lines of communication between Plaintiff (and absent Class Members) and C4R Media's websites.

46.     Defendants lack prior express consent from Plaintiff and the Class for Defendants to "read or attempt to read or learn the contents or meaning" of their electronic communications being

1    made in the State of California.

2        47.    C4R Media partnered with (and conspired with) ActiveProspect to achieve the

3    unlawful conduct described herein.

4        48.    This violation of Section 631(a) is an invasion of privacy and confers Article III

5    standing.

6        49.    Absent an injunction, Plaintiff and the members of the Alleged Class are at risk of

7    continued harm. TrustedForm is used by many website operators and there is no practical way to

8    know if the future whether website communications will be monitored and recorded by

9    Defendants, absent ceasing to utilize the internet (a near impossibility in the year 2022).

10       50.    Accordingly, pursuant to Cal. Penal Code § 637.2(a)(1), Plaintiff and the Class seek

11   injunctive relief and statutory damages in the amount of $5,000 per violation.

**SECOND CAUSE OF ACTION**
**Violation of California's Unfair Competition Law, Cal. Bus. Prof. Code**
**Section 17200 *et seq.* ("UCL")**
**(On Behalf of Plaintiff and the Class)**

15       51.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth

16   herein.

17       52.    Defendants' conduct set forth above is unlawful and in violation of the TCPA and

18   its implementing regulations. As such, Defendant has violated the Unfair Competition Law's

19   "unlawful" prong with respect to the California Class members.

20       53.    Defendants' conduct violated Cal. Penal Code § 631 and thus violated the UCL's

21   unlawful prong.

22       54.    Defendants' conduct also invaded the privacy of the Plaintiff and the Class

23   Members and was therefore unlawful and unfair.

24       55.    Defendants should be enjoined from making such additional invasions of privacy.

25       56.    Defendants should also be ordered to secure prior express consent before any

26   further wiretapping of electronic communication.

27       57.    Defendants should also be required to pay reasonable costs and attorneys' fees.

28

**THIRD CAUSE OF ACTION**
**Invasion of Privacy Under California's Constitution**
**(On Behalf of Plaintiff and the Class)**

58.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

59.     Plaintiff and other members of the Class have an interest in conducting personal activities (such as visiting websites), without observation or interference, including visiting websites without being subjected to secret wiretaps.

60.     Defendants intentionally invaded the privacy rights of Plaintiff and other members of the Class, and worked cooperatively to do so.

61.     This invasion of privacy is serious in nature and scope and constitutes a breach of the social norms in the digital age.

62.     Thus, Plaintiff seeks all relief available for invasion of privacy under the California Constitution on behalf of herself and members of the alleged Class.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that this Court issue an order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Williams as class representative and appointing her counsel as class counsel;

B.     Finding that Defendants' actions constitute repeated and willful violations of the CIPA;

C.     Awarding injunctive relief under the CIPA enjoining Defendants from continuing to violate the CIPA by unlawfully wiretapping electronic communication without consent;

D.     Awarding damages, including statutory damages where applicable, to Plaintiff and the Class in amounts to be determined at trial;

E.     Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

CLASS ACTION COMPLAINT          - 11 -

**ER-67**

F.    Awarding Plaintiff and the Class pre- and post- judgment interest, to the extent allowable; and

G.    Such further and other relief as the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: June 27, 2022                     **LORETTA WILLIAMS**, individually and on behalf of all others similarly situated,

By:        */s/ Rebecca Davis*
           One of Plaintiff's Attorneys

Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
**LOZEAU DRURY LLP**
1939 Harrison St., Suite 150
Oakland, CA 94612
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Steven L. Woodrow*
swoodrow@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Pro Hac Vice* admission to be sought

*Counsel for Plaintiff and the Class*

CLASS ACTION COMPLAINT                - 12 -

**ER-68**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 1. Notice of Appeal from a Judgment or Order of a United States District Court

Name of U.S. District Court: California Northern District

U.S. District Court case number: 3:22-cv-03780-WHA

Date case was first filed in U.S. District Court: 6/27/2022

Date of judgment or order you are appealing: 2/13/2023

Fee paid for appeal? *(appeal fees are paid at the U.S. District Court)*

● Yes    ○ No    ○ IFP was granted by U.S. District Court

**List all Appellants** *(List each party filing the appeal. Do not use "et al." or other abbreviations.)*

Plaintiff Loretta Williams

Is this a cross-appeal?  ○ Yes  ● No

If Yes, what is the first appeal case number?

Was there a previous appeal in this case?  ○ Yes  ● No

If Yes, what is the prior appeal case number?

Your mailing address:

3900 E. Mexico Ave.

Suite 300

City: Denver    State: CO    Zip Code: 80210

Prisoner Inmate or A Number (if applicable):

**Signature** /s/ Patrick Peluso    **Date** 3/7/2023

*Complete and file with the attached representation statement in the U.S. District Court*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

**Form 1**    *Rev. 12/01/2018*

**ER-69**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 6. Representation Statement

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*

Name(s) of party/parties:

Loretta Williams

Name(s) of counsel (if any):

Steven L. Woodrow, Patrick H. Peluso

Address: 3900 E. Mexico Ave., Suite 300, Denver, CO 80210

Telephone number(s): 720-213-0676

Email(s): swoodrow@woodrowpeluso.com, ppeluso@woodrowpeluso.com

Is counsel registered for Electronic Filing in the 9th Circuit?  ⦿ Yes  ○ No

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*

Name(s) of party/parties:

What If Holdings, LLC

Name(s) of counsel (if any):

Jay Thomas Ramsay, Neil E. Asnen

Address: 1910 Avenue of the Stars, Suite 1600, Los Angeles, CA 90067-

Telephone number(s): 310-228-2259

Email(s): jramsay@sheppardmullin.com, nasnen@kleinmoynihan.com

*To list additional parties and/or counsel, use next page.*

Feedback or questions about this form? Email us at *forms@ca9.uscourts.gov*

**Form 6**                                          *1*                                          *Rev. 12/01/2018*

**ER-70**

Continued list of parties and counsel: *(attach additional pages as necessary)*

**<u>Appellants</u>**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Is counsel registered for Electronic Filing in the 9th Circuit?  ○ Yes  ○ No

**<u>Appellees</u>**

Name(s) of party/parties:

ActiveProspect, Inc.

Name(s) of counsel (if any):

Lauri Anne Mazzuchetti, Becca J. Wahlquist

Address: One Jefferson Road, 2nd Floor, Parsippany, NJ 07054

Telephone number(s): (973) 503-5910

Email(s): lmazzuchetti@kelleydrye.com, bwahlquist@kelleydrye.com

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 6**                    *2*                    *Rev. 12/01/2018*

**ER-71**

ADRMOP,APPEAL,CLOSED

## U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:22−cv−03780−WHA

Williams v. What If Holdings, LLC et al
Assigned to: Judge William Alsup
Case in other court:  USCA#:23−15337
Cause: 28:1332 Diversity−(Citizenship)

Date Filed: 06/27/2022
Date Terminated: 02/13/2023
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory
Actions
Jurisdiction: Federal Question

**Plaintiff**

**Loretta Williams**
*ndividually and on behalf of all others
similarly situated*

represented by **Rebecca Leah Davis**
Lozeau Drury LLP
1939 Harrison Street, Suite 150
Oakland, CA 94612
(510) 836−4200
Fax: (510) 836−4205
Email: rebecca@lozeaudrury.com
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Steven Lezell Woodrow**
Woodrow & Peluso, LLC
3900 East Mexico Avenue, Suite 300
Denver, CO 80210
(720) 213−0675
Fax: (303) 927−0809
Email: swoodrow@woodrowpeluso.com
*LEAD ATTORNEY
PRO HAC VICE
ATTORNEY TO BE NOTICED*

**Patrick Harry Peluso**
Woodrow & Peluso, LLC
3900 East Mexico Avenue, Suite 300
Denver, CO 80210
(720) 213−0675
Fax: (303) 927−0809
Email: ppeluso@woodrowpeluso.com
*PRO HAC VICE
ATTORNEY TO BE NOTICED*

**Steven L. Woodrow**
Woodrow & Peluso, LLC
3900 East Mexico Avenue, Suite 300
Denver, CO 80210
720−213−0675
Fax: 303−927−0809
Email: swoodrow@woodrowpeluso.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**What If Holdings, LLC**
*doing business as*
C4R Media Corp.

represented by **Jay Thomas Ramsey**
Sheppard Mullin Richter & Hampton LLP
1910 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067−6055
(310) 228−2259
Fax: (310) 228−3701

**ER-72**

Email: jramsey@sheppardmullin.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Neil E. Asnen**
Klein Moynihan Turco LLP
450 Seventh Avenue, 40th Floor
New York, NY 10123
212–246–0900
Email: nasnen@kleinmoynihan.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ActiveProspect, Inc.**                  represented by **Lauri Anne Mazzuchetti**
Kelley Drye Warren LLP
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
(973) 503–5910
Fax: (973) 503–5950
Email: lmazzuchetti@kelleydrye.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Becca J. Wahlquist**
Kelley Drye & Warren LLP
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
213–547–4916
Fax: 213–547–4901
Email: bwahlquist@kelleydrye.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/27/2022 | 1 | CLASS ACTION COMPLAINT AND JURY TRIAL DEMANDED against ActiveProspect, Inc., What If Holdings, LLC, d/b/a C4R Media Corp, (Filing Fee: $402.00, receipt number ACANDC–17297997). Filed by Loretta Williams. (Attachments: # 1 Exhibit A, # 2 Civil Cover Sheet)(Davis, Rebecca) (Filed on 6/27/2022) Modified on 6/28/2022 (tn, COURT STAFF). (Entered: 06/27/2022) |
| 06/27/2022 | 2 | Proposed Summons. (Davis, Rebecca) (Filed on 6/27/2022) (Entered: 06/27/2022) |
| 06/27/2022 | 3 | Proposed Summons. (Davis, Rebecca) (Filed on 6/27/2022) (Entered: 06/27/2022) |
| 06/27/2022 | 4 | Case assigned to Magistrate Judge Sallie Kim. Counsel for plaintiff or the removing party is responsible for serving the Complaint or Notice of Removal, Summons and the assigned judge's standing orders and all other new case documents upon the opposing parties. For information, visit *E–Filing A New Civil Case* at http://cand.uscourts.gov/ecf/caseopening. Standing orders can be downloaded from the court's web page at www.cand.uscourts.gov/judges. Upon receipt, the summons will be issued and returned electronically. A scheduling order will be sent by Notice of Electronic Filing (NEF) within two business days. Consent/Declination due by 7/11/2022. (ark, COURT STAFF) (Filed on 6/27/2022) (Entered: 06/27/2022) |
| 06/28/2022 | 5 | Summons Issued as to ActiveProspect, Inc. and What If Holdings, LLC., d/b/a C4R Media Corp.. (tn, COURT STAFF) (Filed on 6/28/2022) (Entered: 06/28/2022) |
| 06/28/2022 | 6 | **Initial Case Management Scheduling Order with ADR Deadlines: Joint Case Management Statement due by 9/19/2022. Initial Case Management Conference set for 9/26/2022 at 1:30 PM in San Francisco, Courtroom C, 15th Floor. (tn,** |

| | | |
|---|---|---|
| | | COURT STAFF) (Filed on 6/28/2022) (Entered: 06/28/2022) |
| 07/06/2022 | 7 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 317, receipt number ACANDC–17325343) filed by Loretta Williams. (Peluso, Patrick) (Filed on 7/6/2022) (Entered: 07/06/2022) |
| 07/06/2022 | 8 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 317, receipt number ACANDC–17325383.) filed by Loretta Williams. (Woodrow, Steven) (Filed on 7/6/2022) (Entered: 07/06/2022) |
| 07/08/2022 | 9 | **ORDER by Magistrate Judge Sallie Kim granting 7 Motion for Pro Hac Vice. (sklc2, COURT STAFF) (Filed on 7/8/2022) (Entered: 07/08/2022)** |
| 07/08/2022 | 10 | **ORDER by Magistrate Judge Sallie Kim granting 8 Motion for Pro Hac Vice. (sklc2, COURT STAFF) (Filed on 7/8/2022) (Entered: 07/08/2022)** |
| 07/12/2022 | 11 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Loretta Williams.. (Peluso, Patrick) (Filed on 7/12/2022) (Entered: 07/12/2022) |
| 07/12/2022 | 12 | CLERK'S NOTICE OF IMPENDING REASSIGNMENT TO A U.S. DISTRICT COURT JUDGE: The Clerk of this Court will now randomly reassign this case to a District Judge because either (1) a party has not consented to the jurisdiction of a Magistrate Judge, or (2) time is of the essence in deciding a pending judicial action for which the necessary consents to Magistrate Judge jurisdiction have not been secured. You will be informed by separate notice of the district judge to whom this case is reassigned.<br><br>ALL HEARING DATES PRESENTLY SCHEDULED BEFORE THE CURRENT MAGISTRATE JUDGE ARE VACATED AND SHOULD BE RE–NOTICED FOR HEARING BEFORE THE JUDGE TO WHOM THIS CASE IS REASSIGNED.<br><br>*This is a text only docket entry; there is no document associated with this notice.* (mkl, COURT STAFF) (Filed on 7/12/2022) (Entered: 07/12/2022) |
| 07/12/2022 | 13 | **ORDER REASSIGNING CASE. Case reassigned using a proportionate, random, and blind system pursuant to General Order No. 44 to Judge William Alsup for all further proceedings. Magistrate Judge Sallie Kim no longer assigned to case, Notice: The assigned judge participates in the Cameras in the Courtroom Pilot Project. See General Order No. 65 and http://cand.uscourts.gov/cameras. Signed by Clerk on 07/12/2022. (Attachments: # 1 Notice of Eligibility for Video Recording)(mbc, COURT STAFF) (Filed on 7/12/2022) (Entered: 07/12/2022)** |
| 07/14/2022 | 14 | **NOTICE AND ORDER RE PUTATIVE CLASS ACTIONS AND FACTORS TO BE EVALUATED FOR ANY PROPOSED CLASS SETTLEMENT. Signed by Judge William Alsup. (whalc4, COURT STAFF) (Filed on 7/14/2022). (Entered: 07/14/2022)** |
| 07/15/2022 | 15 | WAIVER OF SERVICE Returned Executed filed by Loretta Williams. Service waived by ActiveProspect, Inc. waiver sent on 6/29/2022, answer due 8/29/2022. (Peluso, Patrick) (Filed on 7/15/2022) (Entered: 07/15/2022) |
| 07/18/2022 | 16 | SUMMONS Returned Executed by Loretta Williams. What If Holdings, LLC served on 7/1/2022, answer due 7/22/2022. (Peluso, Patrick) (Filed on 7/18/2022) (Entered: 07/18/2022) |
| 07/19/2022 | 17 | **CLERK'S NOTICE SCHEDULING INITIAL CASE MANAGEMENT CONFERENCE: Initial Case Management Conference set for 10/13/2022 11:00 AM in San Francisco, Courtroom 12, 19th Floor. Joint Case Management Statement due by 10/6/2022. Standing orders can be downloaded from the Court's webpage at www.cand.uscourts.gov/whaorders. *(This is a text–only entry generated by the court. There is no document associated with this entry.)*(afm, COURT STAFF) (Filed on 7/19/2022) (Entered: 07/19/2022)** |
| 07/22/2022 | 18 | STIPULATION *to Extend Deadline to Respond to Class Action Complaint* filed by What If Holdings, LLC. (Ramsey, Jay) (Filed on 7/22/2022) (Entered: 07/22/2022) |
| 08/25/2022 | 19 | STIPULATION *to Extend Time to Respond to Complaint [Joint]* filed by ActiveProspect, Inc.. (Wahlquist, Becca) (Filed on 8/25/2022) (Entered: 08/25/2022) |

| 08/26/2022 | 20 | STIPULATION *to Extend Deadline to Respond to Class Action Complaint* filed by What If Holdings, LLC. (Ramsey, Jay) (Filed on 8/26/2022) (Entered: 08/26/2022) |
|---|---|---|
| 09/06/2022 | 21 | ADR Certification (ADR L.R. 3–5 b) of discussion of ADR options (Wahlquist, Becca) (Filed on 9/6/2022) (Entered: 09/06/2022) |
| 09/06/2022 | 22 | ADR Certification (ADR L.R. 3–5 b) of discussion of ADR options (Peluso, Patrick) (Filed on 9/6/2022) (Entered: 09/06/2022) |
| 09/06/2022 | 23 | ADR Certification (ADR L.R. 3–5 b) of discussion of ADR options (Ramsey, Jay) (Filed on 9/6/2022) (Entered: 09/06/2022) |
| 09/12/2022 | 24 | Rule 7.1 Disclosure Statement filed by What If Holdings, LLC identifying Corporate Parent What if Media Group, LLC for What If Holdings, LLC. (Ramsey, Jay) (Filed on 9/12/2022) (Entered: 09/12/2022) |
| 09/12/2022 | 25 | MOTION to Compel *Arbitration and/or to Dismiss* filed by What If Holdings, LLC. Motion Hearing set for 12/15/2022 08:00 AM in San Francisco, Courtroom 12, 19th Floor before Judge William Alsup. Responses due by 9/26/2022. Replies due by 10/3/2022. (Attachments: # 1 Declaration Zitter plus exhibits, # 2 Proposed Order)(Ramsey, Jay) (Filed on 9/12/2022) (Entered: 09/12/2022) |
| 09/12/2022 | 26 | MOTION to Dismiss *Complaint Pursuant to Fed. R. CIV. P. 12(b)(6)* filed by ActiveProspect, Inc.. Motion Hearing set for 12/15/2022 08:00 AM in San Francisco, Courtroom 12, 19th Floor before Judge William Alsup. Responses due by 9/26/2022. Replies due by 10/3/2022. (Attachments: # 1 Proposed Order)(Wahlquist, Becca) (Filed on 9/12/2022) (Entered: 09/12/2022) |
| 09/12/2022 | 27 | Request for Judicial Notice re 26 MOTION to Dismiss *Complaint Pursuant to Fed. R. CIV. P. 12(b)(6)* filed byActiveProspect, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Related document(s) 26 ) (Wahlquist, Becca) (Filed on 9/12/2022) (Entered: 09/12/2022) |
| 09/13/2022 | 28 | RULE 7.1 DISCLOSURES AND CERTIFICATION OF INTERESTED ENTITIES OR PERSONS filed by ActiveProspect, Inc. (Wahlquist, Becca) (Filed on 9/13/2022) (Entered: 09/13/2022) |
| 09/14/2022 | 29 | Joinder re 25 MOTION to Compel *Arbitration and/or to Dismiss* by ActiveProspect, Inc.. (Wahlquist, Becca) (Filed on 9/14/2022) (Entered: 09/14/2022) |
| 09/19/2022 | 30 | **CLERK'S NOTICE RESCHEDULING MOTIONS HEARING RE: 25 26 FROM 12/15/2022 TO SPECIALLY SET DATE 12/14/2022 AT 8:00AM: Motion hearing as to 26 MOTION to Dismiss, 25 MOTION to Compel is RESCHEDULED for specially set date 12/14/2022 08:00 AM in San Francisco, Courtroom 12, 19th Floor before Judge William Alsup. *(This is a text–only entry generated by the court. There is no document associated with this entry.)*(afm, COURT STAFF) (Filed on 9/19/2022) (Entered: 09/19/2022)** |
| 09/19/2022 | 31 | MOTION for leave to appear in Pro Hac Vice (Filing fee $ 317, receipt number ACANDC–17547387) filed by ActiveProspect, Inc.. (Mazzuchetti, Lauri) (Filed on 9/19/2022) (Entered: 09/19/2022) |
| 09/20/2022 | 32 | **ORDER by Judge William Alsup granting 31 Motion for Pro Hac Vice. (afm, COURT STAFF) (Filed on 9/20/2022) (Entered: 09/20/2022)** |
| 09/23/2022 | 33 | STIPULATION WITH PROPOSED ORDER *Stipulated Request for Extension of Time for Briefing of Defendants' Motions to Compel Arbitration and/or Dismiss* filed by Loretta Williams. (Attachments: # 1 Declaration of Patrick Peluso, # 2 Proposed Order)(Peluso, Patrick) (Filed on 9/23/2022) (Entered: 09/23/2022) |
| 09/30/2022 | 34 | **ORDER by Judge William Alsup granting 33 Stipulation For Extension of Time For Briefing of Defendants' Motions to Compel Arbitration and/or Dismiss. Opposition due 10/3; reply due 10/17/2022.(afm, COURT STAFF) (Filed on 9/30/2022) (Entered: 09/30/2022)** |
| 10/03/2022 | 35 | MOTION for leave to appear in Pro Hac Vice (Filing Fee: $317.00, receipt number ACANDC–17587323) filed by What If Holdings, LLC. (Asnen, Neil) (Filed on 10/3/2022) (Entered: 10/03/2022) |

| 10/03/2022 | 36 | OPPOSITION/RESPONSE (re 26 MOTION to Dismiss *Complaint Pursuant to Fed. R. CIV. P. 12(b)(6)*, 25 MOTION to Compel *Arbitration and/or to Dismiss* ) filed byLoretta Williams. (Peluso, Patrick) (Filed on 10/3/2022) (Entered: 10/03/2022) |
|---|---|---|
| 10/03/2022 | 37 | STIPULATION WITH PROPOSED ORDER *to Adjourn Case Management Conference and to Stay Discovery Pending Ruling on Motions to Compel Arbitration and/or Dismiss [Joint]* filed by ActiveProspect, Inc.. (Attachments: # 1 Proposed Order)(Wahlquist, Becca) (Filed on 10/3/2022) (Entered: 10/03/2022) |
| 10/04/2022 | 38 | **ORDER AS MODIFIED by Judge William Alsup granting 37 Stipulation to Adjourn Case Management Conference. (afm, COURT STAFF) (Filed on 10/4/2022) (Entered: 10/04/2022)** |
| 10/04/2022 | 39 | **CLERK'S NOTICE RESCHEDULING INITIAL CASE MANAGEMENT CONFERENCE TO 1/12/2023 AT 11:00AM: Joint Case Management Statement due by 1/5/2023. Initial Case Management Conference set for 1/12/2023 11:00 AM in San Francisco, Courtroom 12, 19th Floor. *(This is a text–only entry generated by the court. There is no document associated with this entry.)* (afm, COURT STAFF) (Filed on 10/4/2022) (Entered: 10/04/2022)** |
| 10/06/2022 | 40 | **ORDER by Judge William Alsup granting 35 Motion for Pro Hac Vice. (afm, COURT STAFF) (Filed on 10/6/2022) (Entered: 10/06/2022)** |
| 10/17/2022 | 41 | REPLY (re 25 MOTION to Compel *Arbitration and/or to Dismiss* ) filed byWhat If Holdings, LLC. (Asnen, Neil) (Filed on 10/17/2022) (Entered: 10/17/2022) |
| 10/17/2022 | 42 | REPLY (re 26 MOTION to Dismiss *Complaint Pursuant to Fed. R. CIV. P. 12(b)(6)* ) filed byActiveProspect, Inc.. (Wahlquist, Becca) (Filed on 10/17/2022) (Entered: 10/17/2022) |
| 11/18/2022 | 43 | **CLERK'S NOTICE CHANGING TIME OF HEARING RE: 25 26 MOTIONS SET ON 12/14/2022 FROM 8:00AM TO 11:00AM: Time of hearing re 26 MOTION to Dismiss *Complaint Pursuant to Fed. R. CIV. P. 12(b)(6)*, 25 MOTION to Compel *Arbitration and/or to Dismiss* is RESET for 12/14/2022 11:00 AM in San Francisco, Courtroom 12, 19th Floor before Judge William Alsup. *(This is a text–only entry generated by the court. There is no document associated with this entry.)*(afm, COURT STAFF) (Filed on 11/18/2022) (Entered: 11/18/2022)** |
| 12/06/2022 | 44 | STIPULATION WITH PROPOSED ORDER *to Appear Telephonically or Via Video Conference* filed by What If Holdings, LLC. (Attachments: # 1 Proposed Order)(Ramsey, Jay) (Filed on 12/6/2022) (Entered: 12/06/2022) |
| 12/08/2022 | 45 | **ORDER RE 44 MOTION TO APPEAR TELEPHONICALLY. SIGNED BY JUDGE ALSUP.(whalc4, COURT STAFF) (Filed on 12/8/2022) (Entered: 12/08/2022)** |
| 12/14/2022 | 46 | **Minute Entry for proceedings held before Judge William Alsup:** <br><br>**Motion Hearing held on 12/14/2022 re 25 MOTION to Compel *Arbitration and/or to Dismiss* filed by What If Holdings, LLC, 26 MOTION to Dismiss *Complaint Pursuant to Fed. CIV. P. 12(b)(6)* filed by ActiveProspect, Inc. Parties stated appearances and proffered oral argument. Court takes motions under submission.** <br><br>**Total Time in Court: 11:02 – 12:04 = 1 Hour; 2 Minutes.** <br>**Court Reporter: Lee–Anne Shortridge.** <br><br>**Plaintiff Attorney: Patrick Peluso.** <br>**Defendant Attorneys: Lauri Mazzuchetti, Jay Ramsey, Becca Wahlquist.** <br><br>***(This is a text–only entry generated by the court. There is no document associated with this entry.)* (afm, COURT STAFF) (Date Filed: 12/14/2022) (Entered: 12/15/2022)** |
| 12/21/2022 | 47 | STIPULATION WITH PROPOSED ORDER *and Motion to Extend 26(f) Conference Deadline and Adjourn Case Management Statement and Conference Pending Ruling on Motions to Compel Arbitration and/or Dismiss [Joint]* filed by ActiveProspect, Inc.. (Attachments: # 1 Proposed Order)(Wahlquist, Becca) (Filed on 12/21/2022) |

| | | |
|---|---|---|
| | | (Entered: 12/21/2022) |
| 12/21/2022 | 48 | **ORDER by Judge William Alsup granting 47 Stipulation to Extend 26(f) Conference Deadline and Adjourn Case Management Statement and Conference Pending Ruling on Motions to Compel Arbitration and/or Dismiss [Joint]. (afm, COURT STAFF) (Filed on 12/21/2022) (Entered: 12/21/2022)** |
| 12/22/2022 | 49 | **ORDER GRANTING 25 AND 26 MOTIONS TO DISMISS. SIGNED BY JUDGE ALSUP. (whalc4, COURT STAFF) (Filed on 12/22/2022) (Entered: 12/22/2022)** |
| 01/05/2023 | 50 | MOTION for Leave to File *First Amended Class Action Complaint* filed by Loretta Williams. (Attachments: # 1 Exhibit A – Proposed First Amended Class Action Complaint)(Peluso, Patrick) (Filed on 1/5/2023) (Entered: 01/05/2023) |
| 01/09/2023 | 51 | NOTICE by Loretta Williams *of Supplemental Authority re 50 MOTION for Leave to File First Amended Class Action Complaint* (Attachments: # 1 Exhibit A)(Peluso, Patrick) (Filed on 1/9/2023) (Entered: 01/09/2023) |
| 01/19/2023 | 52 | OPPOSITION/RESPONSE (re 50 MOTION for Leave to File *First Amended Class Action Complaint* ) *[Joint with What If Holdings]* filed byActiveProspect, Inc.. (Attachments: # 1 Exhibit A – Redlined Complaint)(Wahlquist, Becca) (Filed on 1/19/2023) (Entered: 01/19/2023) |
| 01/20/2023 | 53 | **CLERK'S NOTICE RESCHEDULING MOTION HEARING RE: 50 FROM 2/9/2023 TO SPECIALLY SET 2/16/2023 AT 1:30PM: Hearing re: 50 MOTION for Leave to File *First Amended Class Action Complaint* is specially reset for 2/16/2023 01:30 PM in San Francisco, Courtroom 12, 19th Floor before Judge William Alsup.** *(This is a text–only entry generated by the court. There is no document associated with this entry.)***(afm, COURT STAFF) (Filed on 1/20/2023) (Entered: 01/20/2023)** |
| 02/03/2023 | 54 | REPLY (re 50 MOTION for Leave to File *First Amended Class Action Complaint* ) filed byLoretta Williams. (Peluso, Patrick) (Filed on 2/3/2023) (Entered: 02/03/2023) |
| 02/13/2023 | 55 | **ORDER DENYING 50 LEAVE TO AMEND AND VACATING HEARING. Signed by Judge William Alsup. (whalc4, COURT STAFF) (Filed on 2/13/2023) (Entered: 02/13/2023)** |
| 02/13/2023 | 56 | **FINAL JUDGMENT. Signed by Judge William Alsup. (whalc4, COURT STAFF) (Filed on 2/13/2023) (Entered: 02/13/2023)** |
| 03/07/2023 | 57 | NOTICE OF APPEAL to the 9th Circuit Court of Appeals filed by Loretta Williams. Appeal of Order on Motion for Leave to File 55 (Appeal fee of $505 receipt number ACANDC–18051283 paid.) (Peluso, Patrick) (Filed on 3/7/2023) (Entered: 03/07/2023) |
| 03/09/2023 | 58 | USCA Case Number 23–15337 for 57 Notice of Appeal to the Ninth Circuit filed by Loretta Williams. (tn, COURT STAFF) (Filed on 3/9/2023) (Entered: 03/09/2023) |
| 04/06/2023 | 59 | TRANSCRIPT ORDER for proceedings held on 12/14/2022 before Judge William Alsup by Loretta Williams, for Court Reporter Lee–Anne Shortridge. (Peluso, Patrick) (Filed on 4/6/2023) (Entered: 04/06/2023) |
| 04/06/2023 | 60 | Transcript Designation Form for proceedings held on 12/14/2022 before Judge Judge William Alsup, re 57 Notice of Appeal to the Ninth Circuit Transcript due by 5/8/2023. (Peluso, Patrick) (Filed on 4/6/2023) (Entered: 04/06/2023) |
| 05/11/2023 | 61 | Transcript of Proceedings held on 12–14–22, before Judge William H. Alsup. Court Reporter Lee–Anne Shortridge, email: lee–anne_shortridge@cand.uscourts.gov. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerk's Office public terminal or may be purchased through the Court Reporter until the deadline for the Release of Transcript Restriction. After that date it may be obtained through PACER. Any Notice of Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. (Re 59 Transcript Order ) Release of Transcript Restriction set for 8/9/2023. (Related documents(s) 59 ) (las, ) (Filed on 5/11/2023) (Entered: 05/11/2023) |