# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

LORETTA WILLIAMS,
individually and on behalf of all others similarly situated,
*Plaintiff-Appellant,*

v.

WHAT IF HOLDINGS, LLC, DBA C4R Media Corp.
and ACTIVEPROSPECT INC.,
*Defendants-Appellees.*

*Appeal from a Decision of the United States District Court for the Northern District of California,
No. 3:22-cv-03780-WHA · Honorable William Haskell Alsup*

## DEFENDANTS-APPELLEES' ANSWERING BRIEF

LAURI A. MAZZUCHETTI
KELLEY DRYE & WARREN LLP
One Jefferson Road, 2nd Floor
Parsippany, NJ 07054
lmazzuchetti@kelleydrye.com
Telephone: (973) 503-5900

BECCA J. WAHLQUIST
KELLEY DRYE & WARREN LLP
350 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
bwahlquist@kelleydrye.com
Telephone: (213) 547-4916

*Attorneys for Defendant-Appellee
ActiveProspect, Inc.*

JAY T. RAMSEY
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
1901 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
jramsey@sheppardmullin.com
Telephone: (310) 228-2259

NEIL ASNEN
KLEIN MOYNIHAN TURCO LLP
450 7th Avenue
New York, NY 10123
nasnen@kleinmoynihan.com
Telephone: (212) 246-0900

*Attorneys for Defendant-Appellee
What If Holdings, LLC*

 

# CORPORATE DISCLOSURE STATEMENTS

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellee ActiveProspect, Inc. hereby states as follows:

Defendant-Appellee ActiveProspect, Inc. certifies that it has no parent corporation and that no publicly held corporation owns more than ten percent of its stock.

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellee What If Holdings, LLC, hereby states as follows:

Defendant-Appellee What If Holdings, LLC certifies that its parent is What if Media Group, LLC ("WIMG") and that no publicly-held corporation owns ten percent or more of it or of WIMG's stock.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

JURISDICTIONAL STATEMENT .....................................................................3

STATEMENT OF ISSUES PRESENTED............................................................3

STATEMENT OF THE CASE .............................................................................4

I.      BACKGROUND ........................................................................................4

      A.     ACTIVEPROSPECT OFFERS A TOOL TO SUPPORT
LEGAL COMPLIANCE .................................................................4

      B.     WHAT IF USES THE TRUSTEDFORM TOOL TO RECORD
A PORTION OF ITS WEBSITE AS PART OF WHAT IF'S
ROUTINE TCPA COMPLIANCE ....................................................5

II.     PLAINTIFF'S COMPLAINT AND PROCEDURAL HISTORY ...............7

      A.     PLAINTIFF'S COMPLAINT AND HER ALLEGED
INTERACTIONS WITH THE WEBSITE AND
TRUSTEDFORM...............................................................................7

      B.     THE DISTRICT COURT PROPERLY DISMISSES
PLAINTIFF'S LAWSUIT FOR FAILING TO STATE A
CLAIM ............................................................................................8

            1.     Plaintiff's CIPA Claim Was Properly Dismissed......................9

            2.     Plaintiff's Remaining Claims Were Properly Dismissed ........11

      C.     THE DISTRICT COURT PROPERLY DENIED THE
MOTION TO AMEND BECAUSE THE PROPOSED
AMENDED COMPLAINT FAILED TO CURE THE
DEFICIENCIES IDENTIFIED BY THE DISTRICT COURT........12

SUMMARY OF ARGUMENT .............................................................................15

STANDARD OF REVIEW ..................................................................................16

ARGUMENT ........................................................................................................17

I.      THE DISTRICT COURT PROPERLY ANALYZED SECTION 631
TO REQUIRE THAT AN ALLEGED "THIRD-PARTY
EAVESDROPPER" MUST HAVE ENGAGED IN MORE THAN
MERE RECORDATION .........................................................................17

A.    THE DIRECT PARTY EXEMPTION UNDER CIPA .....................17

B.    THE DIRECT PARTY EXEMPTION TO CIPA APPLIES
      HERE......................................................................................20

II.   THE COURT SHOULD REJECT PLAINTIFF'S ATTEMPT TO
      JUDICIALLY EXPAND CIPA LIABILITY THROUGH THE
      *JAVIER II* CAPABILITY TEST ...............................................23

A.    THE TEST ARTICULATED IN *JAVIER II*, WHICH WAS
      PREMISED ON DIFFERENT FACTS, WAS INCORRECTLY
      DECIDED .................................................................................24

B.    EVEN UNDER THE TEST ARTICULATED IN *JAVIER II*,
      PLAINTIFF STILL FAILS TO PLEAD THAT
      ACTIVEPROSPECT IS A THIRD-PARTY EAVESDROPPER .....29

III.  THIS COURT MAY AFFIRM BASED UPON MANY OTHER
      PLEADING DEFICIENCIES THAT THE PARTIES BRIEFED
      BELOW AND THAT PLAINTIFF FAILED TO ADDRESS IN HER
      MOTION TO AMEND ....................................................................32

A.    PLAINTIFF DID NOT PLAUSIBLY ALLEGE THAT
      ACTIVEPROSPECT RECORDED ANY INFORMATION
      WHILE "IN TRANSIT" ..............................................................33

B.    PLAINTIFF DID NOT PLAUSIBLY ALLEGE THAT THE
      INFORMATION ALLEGEDLY RECORDED IS THE
      "CONTENT OF COMMUNICATIONS" UNDER CIPA ...............38

C.    JUDICIALLY NOTICEABLE EVIDENCE ESTABLISHES
      THAT PLAINTIFF AFFIRMATIVELY CONSENTED TO
      ANY ALLEGED RECORDATION .................................................41

      1.    Plaintiff Agreed to the Website's Privacy Policy ....................43

      2.    Plaintiff Consented to the Capture of Her Personally
            Identifiable Information ............................................................44

IV.   PLAINTIFF'S PROPOSED AMENDMENTS FAILED TO
      ADDRESS THE DEFICIENCIES IN HER COMPLAINT,
      RENDERING HER MOTION TO AMEND FUTILE. ...............................46

CONCLUSION .......................................................................................50

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Balletto v. Am. Honda Motor Co.*,
  No. 4:23-cv-01017, 2023 WL 7026931 (N.D. Cal. Oct. 24, 2023)....................31

*Brodsky v. Apple Inc.*,
  445 F. Supp. 3d 110 (N.D. Cal. 2020)..................................................38

*Bunnell v. Motion Picture Ass'n of Am.*,
  567 F. Supp. 2d 1148 (C.D. Cal. 2007)...............................................34

*Byars v. Hot Topic, Inc.*,
  -- F. Supp. 3d --, No. 5:22-CV-01652, 2023 WL 2026994 (C.D.
  Cal. Feb. 14, 2023).......................................................................22, 45

*Cervantes v. Countrywide Home Loans, Inc.*,
  656 F.3d 1034 (9th Cir. 2011) ........................................................47

*Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*,
  710 F.3d 946 (9th Cir. 2013) ..........................................................47

*Cody v. Boscov's Inc.*,
  -- F. Supp. 3d. --, No. 8:22-CV-01434, 2023 WL 2338302 (C.D.
  Cal. Mar. 2, 2023)........................................................................22

*Cook v. GameStop, Inc.*,
  No. 2:22-CV-01292, 2023 WL 5529772 (W.D. Pa. Aug. 28, 2023) ...............39

*Curry v. Yelp Inc.*,
  875 F.3d 1219 (9th Cir. 2017) ........................................................16

*Dawson v. Mahoney*,
  451 F. 3d 550 (9th Cir. 2006) .........................................................42

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ..........................................................18

*Facebook, Inc. v. Duguid*,
  141 S. Ct. 1163 (2021).................................................................27, 28

*Garcia v. Enter. Holdings, Inc.*,
  78 F. Supp. 3d 1125 (N.D. Cal. 2015) ...............................................................41

*Golden Nugget, Inc. v. Am. Stock Exchange, Inc.*,
  828 F.2d 586 (9th Cir. 1987) ..............................................................................33

*Goldstein v. Costco Wholesale Corp.*,
  559 F. Supp. 3d 1318 (S.D. Fla. 2021) ..............................................................40

*Gompper v. VISX, Inc.*,
  298 F.3d 893 (9th Cir. 2002) ..............................................................................16

*Graham v. Noom, Inc.*,
  533 F. Supp. 3d 823 (N.D. Cal. 2021)..........................................................*passim*

*Greenberg v. Amazon.com, Inc.*,
  No. 4:20-CV-02782, 2021 WL 7448530 (N.D. Cal. May 7, 2021) ...................44

*Hernandez v. Path, Inc.*,
  No. 3:12-CV-01515, 2012 WL 5194120 (N.D. Cal. Oct. 19, 2012).................37

*Javier v. Assurance IQ, LLC*,
  649 F. Supp. 3d 891 (N.D. Cal. 2023).........................................................13, 30

*Javier v. Assurance IQ*,
  No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022) .............................45

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018), *cert. denied sub nom. Hagan v.*
  *Khoja*, 139 S. Ct. 2615 (2019) ...........................................................................42

*Licea v. Am. Eagle Outfitters, Inc.*,
  -- F. Supp. 3d --, No. 5:22-CV-01702, 2023 WL 2469630 (C.D.
  Cal. Mar. 7, 2023) .........................................................................................22, 34

*Licea v. Cinmar, LLC*,
  -- F. Supp. 3d --, No. 2:22-CV-06454, 2023 WL 2415592 (C.D.
  Cal. Mar. 7, 2023) .........................................................................................22, 34

*Licea v. Old Navy, LLC*,
  No. 5:22-cv-01413, 2023 WL 3012527 (C.D. Cal Apr. 19, 2023) ...................22

iv

*MacIntyre v. Carroll Coll.*,
48 F.4th 950 (9th Cir. 2022) ................................................................33

*Martin v. Sephora USA, Inc.*,
No. 1:22-cv-01355, 2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) ...................22

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ...............................................17, 19, 35

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) ..................................................34

*Ogden v. Wells Fargo Bank, NA*,
674 F. App'x 650 (9th Cir. 2017) ......................................................47

*Plaskett v. Wormuth*,
18 F.4th 1072 (9th Cir. 2021) ..........................................................16

*Quigley v. Yelp, Inc.*,
No. 3:17-CV-03771, 2018 WL 7204066 (N.D. Cal. Jan. 22, 2018) .................37

*Revitch v. New Moosejaw, LLC*,
No. 3:18-cv-06827, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)........21, 24, 25

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ...........................................................*passim*

*Rodriguez v. Google LLC*,
No. 3:20-cv-04688, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ...............36, 37

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) ......................................................*passim*

*Rosenow v. Facebook, Inc.*,
No. 3:19-CV-01297, 2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) .................37

*Shields v. Jones*,
719 F. App'x 545 (9th Cir. 2017) .....................................................47

*Sunbelt Rentals, Inc. v. Victor*,
43 F. Supp. 3d 1026 (N.D. Cal. 2014)................................................34

*Swarts v. Home Depot, Inc.*,
   No. 4:23-cv-00995, 2023 WL 5615453 (N.D. Cal. Aug. 30, 2023) .................31

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*,
   322 F.3d 1064 (9th Cir. 2003) ......................................................32

*Valenzuela v. Keurig Green Mountain, Inc.*,
   -- F. Supp. 3d --, No. 3:22-CV-09042, 2023 WL 3707181 (N.D.
   Cal. May 24, 2023) ...................................................................37

*In re Vizio, Inc., Consumer Privacy Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) ......................................34, 36

*Warden v. Kahn*,
   99 Cal. App. 3d 805 (1979) .......................................................18, 20

*Wochos v. Tesla, Inc.*,
   985 F.3d 1180 (9th Cir. 2021) .........................................................16

*Wood v. McEwen*,
   644 F.2d 797 (9th Cir. 1981) ...........................................................47

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014).................................................44

*Yockey v. Salesforce, Inc.*,
   No. 4:22-cv-09067, 2023 WL 5519323 (N.D. Cal. Aug. 25, 2023) .................31

*Yoon v. Lululemon USA, Inc.*,
   549 F. Supp. 3d 1073 (C.D. Cal. 2021) .............................................39

*In re Zynga Priv. Litig.*,
   750 F.3d 1098 (9th Cir. 2014) .........................................................38

**Statutes and Regulations**

47 C.F.R. § 64.1200(d)(1)..................................................................4

47 U.S.C. § 227(a)(1).......................................................................4

Cal. Penal Code § 631.................................................................*passim*

Electronic Commc'ns Privacy Act of 1986, 18 U.S.C. §§ 2510-23 .......................34

# INTRODUCTION

The California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630 *et seq.*, was designed to protect California residents from wiretapping and from third parties intercepting private communications while such communications are in transit. Over the past few years, creative lawyering has attempted to graft CIPA wiretapping and eavesdropping claims onto newer technologies that facilitate the operation of websites in an attempt to collect the $5,000 statutory damages. This litigation wave is predicated primarily upon consumers' visits to various websites. Here, and in nearly five hundred other recently-filed CIPA-based putative class action lawsuits,[1] putative class plaintiffs allege that Section 631's wiretapping and eavesdropping provisions apply to businesses' websites simply because a website owner ("Website Owner") uses third-party software to capture information provided by consumers to that business. But as the District Court below correctly held, when a complaint's allegations are that a Website Owner uses a third-party software tool (here, ActiveProspect, LLC's ("ActiveProspect") TrustedForm tool) to capture the information knowingly provided to the Website Owner by the consumer, those allegations cannot plausibly support a CIPA or common law privacy claim. In that circumstance, the Website Owner is merely using a third-party software tool to do

---

[1] Attached as Appendix A to this brief is a list of CIPA class action litigations filed in the last two years making allegations about the use of a website tool and alleged surreptitious "recording" by such tools.

what everyone agrees it can do—capture information provide on its website by users of that website. The software tool does not suddenly become a third-party interloper, guilty of privacy violations.

Plaintiff/Appellant Loretta Williams ("Plaintiff") admits that she knowingly and voluntarily provided certain information to What If Holdings, LLC ("What If")—here, the Website owner—on one of its websites, and concedes that she knew that information would be captured and recorded by What If. Plaintiff alleges, however, that she did not know that What If, using ActiveProspect's TrustedForm tool, captured the information she provided in a manner that kept track of how and when she progressed through the web form. Plaintiff contends that the "recording" of pauses, keystrokes, and mouse clicks constitutes illegal "wiretapping" under the California penal code and in violation of CIPA. As the District Court properly recognized, however, CIPA's scope does not extend to a Website Owner's use of a software tool to record activity on its own website.

Looking to the statute itself, the case law, and a common-sense reading of CIPA, the District Court dismissed Plaintiff's claims. The Court gave Plaintiff leave to amend (ER-38), but when Plaintiff failed to provide a proposed amended complaint that could remedy the deficiencies in her Complaint, the District Court then dismissed her claims with prejudice. (ER-7.) Both the District Court's Order dismissing Plaintiff's CIPA and common law privacy claims, and its Order denying

Plaintiff's Motion to Amend, should be affirmed. This Court should firmly close the door on this line of CIPA actions that threaten staggering amounts of aggregated statutory damages against Website Owners and website tool providers for "recordings" that cannot plausibly constitute "wiretapping" or "eavesdropping" under California law.

## JURISDICTIONAL STATEMENT

Defendants do not contest Plaintiff's Statement of Jurisdiction.

## STATEMENT OF ISSUES PRESENTED

1. Did the District Court properly find that, to state a claim for wiretapping under CIPA, a plaintiff must allege more than a third-party tool's recording of voluntary interactions on a website?

2. Did the District Court properly dismiss Plaintiff's Complaint when it "lack[ed] any allegations beyond mere recordation" and therefore, even when all alleged facts were taken as true, merely claimed that the TrustedForm tool "functioned as a recorder, not an eavesdropper"? (ER-7)

3. Did the District Court properly deny Plaintiff's motion for leave to amend when the proposed amended complaint again failed to plausibly allege that the TrustedForm tool engaged in more than mere recordation of the information she provided to the Website Owner?

## STATEMENT OF THE CASE

## I.    BACKGROUND

### A.    ACTIVEPROSPECT OFFERS A TOOL TO SUPPORT LEGAL COMPLIANCE

ActiveProspect is a software company that, among other things, offers a tool called "TrustedForm."  (ER-15 ¶ 5; ER-58 ¶ 5.)  TrustedForm allows websites embedding that tool to record and store certain interactions with customers for compliance-related purposes.  More specifically, TrustedForm allows a Website Owner to create a record of compliance with the "prior express written consent" requirement of Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, which statute has record keeping requirements involving the provision of a consumer's consent for certain calls.  *Id.* § 227(a)(4); 47 C.F.R. § 64.1200(d)(1).  TrustedForm issues a certificate of authenticity demonstrating when, where, and how the website visitor completed the web form, as well as providing the screens and information the website visitor saw when visiting the webpage and recording what agreements the website visitor made.  (2-SER-215–18; ER-15–16 ¶¶ 7–8; ER-58–59 ¶¶ 7–8.)  As Plaintiff alleged, TrustedForm "captures a copy of the web page viewed by the visitor and the user events that took place on the page including form inputs, mouse movements and clicks.  It plays these events back as a screen capture of how the user interacted with the page."  (ER-15–16 ¶ 8; ER-58–59 ¶ 8.)

The TrustedForm tool can also create a visual reproduction of a website

visitor's interaction with a webpage. (ER-15–16 ¶ 8; ER-58–59 ¶ 8.) It is the Website Owner/operator that decides how the software is used, and it has the ability to flag any sensitive fields on its web form in order to prevent the software's transfer of certain fields or information (rather than recording the website visitor's actual entries). (2-SER-247 ("According to certain configurations, the verification server may ignore or actively avoid collecting any personally identifiable information about the visitor in order to maintain privacy and integrity.").)

In her Complaint, Plaintiff did not allege that the contents of any purported communication between her and What If were intercepted while in transit, nor did she allege that ActiveProspect made any commercial use of her information.

### B. WHAT IF USES THE TRUSTEDFORM TOOL TO RECORD A PORTION OF ITS WEBSITE AS PART OF WHAT IF'S ROUTINE TCPA COMPLIANCE

What If operates, among other websites, claim.foundmoneyguide.com/api/offer (the "Website"), which helps customers investigate whether they are entitled to funds from settled class action and mass tort lawsuits. (2-SER-213.) To demonstrate that it obtained prior express written consent from individuals who have requested to receive marketing calls or text messages, What If implemented ActiveProspect's TrustedForm software on its website to document that consent to be contacted had been provided, including capturing information regarding Plaintiff's website visit at issue. (ER-17 ¶¶ 14–15; ER-59 ¶¶ 10–11.) What If utilized the TrustedForm tool

on its Website for TCPA compliance purposes, and Plaintiff does not dispute this.

The landing page of the Website conspicuously referenced and hyperlinked to the Website's privacy policy (the "Privacy Policy") above the button to "search for your cash," and it required Plaintiff to acknowledge that she accepted the terms of the Privacy Policy prior to interacting with the Website. (*Id.*) The Privacy Policy in effect on the date of Plaintiff's visit stated:

> We collect PII when you register or sign up to be a Commenter, Contributor and/or for Found Money Guide offerings. PII includes any information that can be used to identify or locate a particular person or entity. The PII that we request in connection with the registration process may include, but is not limited to, your: (a) full name; (b) e-mail address; (c) mailing address; (c) daytime and/or cellular telephone numbers; (d) date of birth; and/or (e) any other information requested on the applicable form. *We may also collect your PII when you otherwise agree to the terms of this Privacy Policy, but do not complete the applicable registration process in full.*
>
> …
>
> We may collect certain Non-Personally Identifiable Information ("Non-PII") about you when you visit any of the Site's pages, such as the type of browser you are using (*e.g.*, Internet Explorer, Google Chrome), the type of operating system you are using, (*e.g.*, Windows, IOS) and the domain name of your Internet service provider (*e.g.*, Verizon, Time Warner).
>
> …
>
> We allow third-party companies to collect certain information when users visit our Site. These third party entities may utilize cookies, pixels or other tracking technologies to collect and use both personally identifiable

information (*e.g.*, your name, phone number, physical or electronic address) and non-personally identifiable information (*e.g.*, click stream information, browser type, time and date, subject of advertisements clicked or scrolled over) during your visits to the Site and other websites in order to serve you with advertisements about goods and services likely to be of greater interest to you.

(2-SER-224–25 (emphasis in original).)

## II. PLAINTIFF'S COMPLAINT AND PROCEDURAL HISTORY

### A. PLAINTIFF'S COMPLAINT AND HER ALLEGED INTERACTIONS WITH THE WEBSITE AND TRUSTEDFORM

On June 27, 2022, Plaintiff filed a putative class action complaint (the "Complaint") against What If and ActiveProspect asserting claims under California's unfair competition law and CIPA, as well as invasion of privacy. All of the claims that Plaintiff asserted in the Complaint were based on her visit to, and interaction with, the Website on or about December 24, 2021. (ER-19 ¶ 25; ER-23–26 ¶¶ 45-59; ER-60 ¶ 21; ER-64–68 ¶¶ 41–62.)

Plaintiff claims that when she visited the Website on or about December 24, 2021 (ER-19 ¶ 25; ER-60 ¶ 21), she was presented with its landing page. (2-SER-213.) Plaintiff concedes that she voluntarily entered in her personal information while filling out the contact form. (ER-19–21 ¶¶ 25–31; ER-60–62 ¶¶ 21–27.) She claims that while she was filling out the contact form, TrustedForm recorded "the date and time of the visit, the browser and operating system used by Williams during the visit, [] her geographic location[,]" and her "keystrokes and mouse movement

and clicks." (ER-19 ¶ 26; ER-60 ¶ 22.) She alleges that in recording her full interaction with the Website with the TrustedForm tool, What If and ActiveProspect "intentionally tapped the lines of communication between Plaintiff (and absent Class Members) and [What If's] websites." (ER-24 ¶ 49; ER-65 ¶ 45.) Plaintiff further alleges that What If and ActiveProspect "lack[ed] prior express consent from Plaintiff and the Class for Defendants to 'read or attempt to read or learn the contents or meaning' of their electronic communications being made in the State of California." (ER-25 ¶ 50; ER-65–66 ¶ 46.)

While Plaintiff asserts that TrustedForm "collects and stores information provided by web users," she notably did not allege that either ActiveProspect or What If shared any recorded data, commercialized this data, or otherwise had or have the capability of doing either. (*See* ER-14–27; ER-57–68.) Nor did she allege that any of the communications she had with the What If website were intercepted while in transit.

### B. THE DISTRICT COURT PROPERLY DISMISSES PLAINTIFF'S LAWSUIT FOR FAILING TO STATE A CLAIM

On September 12, 2022, What If and ActiveProspect separately filed motions to dismiss the complaint under FRCP 12(b)(6).[2] (ER-75; 2-SER-253–81; 2-SER-

---

[2]     What If also filed a Motion to Compel Arbitration (joined by ActiveProspect), which was denied by the District Court as moot or waived, given its ruling on the Motion to Dismiss. (*See* ER-38.) Defendants note that should this Court reverse the

282–320.)  In their respective motions,[3] Defendants argued that, under established

CIPA case law, a software that acts as a "tool" for the Website is not a third-party

eavesdropper, but rather is an extension of the Website itself.  (ER-48–49; ER-55–

56.)  Defendants briefed other grounds to dismiss the Complaint, including that (i)

the information allegedly recorded does not constitute "content" of a

communication, (ii) the information allegedly recorded was not intercepted while

"in transit," and (iii) Plaintiff consented to the recording.  (2-SER-269–79.)  On

October 17, 2022, What If and ActiveProspect filed their reply briefs in support of

their motions.  (ER-76; 1-SER-135–55; 2-SER-157–75.)  On December 14, 2022,

the District Court heard oral argument on the parties' respective motions to dismiss,

and eight days later the Court issued an order granting the motions (the "December

2022 Order").  (ER-32; 2-SER-87–134.)

### 1.    Plaintiff's CIPA Claim Was Properly Dismissed

In the December 2022 Order, the District Court recognized that while Section

631 has four distinct clauses, Plaintiff's Complaint made claims under only two

clauses—one as to each Defendant.  First, as the District Court recognized (and

Plaintiff did not dispute), Plaintiff's claim against What If, the Website Owner, could

---

District Court's Orders, then at the least the question of arbitrability should be
remanded to the District Court for its consideration.

[3]      Defendants are attaching the complete briefing on the motion to dismiss to
show that the Court may affirm on other grounds.  (*See infra* Section III.)

only potentially be under the fourth clause of Section 631, which applies to aiding and/or abetting a wiretap. Second, the District Court recognized (and Plaintiff did not dispute) that Plaintiff's claim against ActiveProspect, the alleged third party eavesdropper, could be premised only on the second clause of Section 631.[4] (ER-33–34.)

The December 2022 Order framed the issue as follows: "[b]ecause a party to the communication is exempt from liability under CIPA, [the] dispositive question" under both clauses was "whether ActiveProspect constitutes a third-party eavesdropper." (ER-34.) The District Court further summarized the key legal question for Plaintiff's CIPA claim as follows:

> Put differently, the question boils down to whether ActiveProspect was an independent third party hired to eavesdrop on What If's communications, or whether ActiveProspect's software was merely a tool that What If used to record its own communications with plaintiff.

(*Id.*)

The District Court found that under Plaintiff's own allegations, the TrustedForm software acted as a routine recording tool used by What If for its own purposes. (*Id.*) The District Court found persuasive the fact that Plaintiff's

---

[4]    The District Court also found that that the first clause of Section 631 does not apply to internet activity and was thus inapplicable. (ER-34.) It further found that, because there was "no allegation that ActiveProspect used [Plaintiff's] information in any way, [] the third clause of Section 631(a) is inapplicable" as well. (*Id.*) Plaintiff does not contest these findings on appeal. (*See* Opening Br.)

allegations, even when taken as true, "suggest that the recordation is routine documentation and therefore clerical in nature, which is qualitatively different from data mining." (ER-35–36.) The District Court, therefore, held that under the Complaint's allegations, "ActiveProspect is not liable for wiretapping under Section 631(a) for providing a software tool, and the fact that What If used software rather than a physical recording device for the same function does not mean that it aided and abetted wiretapping." (ER-36.) Based on this reasoning, the District Court dismissed the CIPA claim without prejudice, ordering that if Plaintiff sought to amend her complaint, she must file for leave to do so within 14 days and "explain how the amendments to the complaint cure the deficiencies identified herein, as well as any others raised in defendants' briefs." (ER-38.)

### 2. Plaintiff's Remaining Claims Were Properly Dismissed

As for Plaintiff's cause of action for violation of the California Constitution, the District Court found that Plaintiff could not state a claim because she did not plausibly allege that she had a privacy interest violated—the alleged privacy interest was to conduct personal activity on a website free from wiretapping, and Plaintiff "did not plausibly plead wiretapping." (ER-38.) Thus, because Plaintiff could file for leave to amend her CIPA claim, she was also permitted to file for leave to amend her complaint to cure its deficiencies as to the alleged violations of the California Constitution.

As to Plaintiff's Unfair Competition Law ("UCL") claim, however, the District Court dismissed that cause of action with prejudice both because the CIPA claim failed as a matter of law and because Plaintiff conceded in her opposition briefing that she did not experience any economic harm as required for standing to assert a UCL claim. (ER-37.) On appeal, Plaintiff does not contest the dismissal of the UCL claim with prejudice.

## C. THE DISTRICT COURT PROPERLY DENIED THE MOTION TO AMEND BECAUSE THE PROPOSED AMENDED COMPLAINT FAILED TO CURE THE DEFICIENCIES IDENTIFIED BY THE DISTRICT COURT

On January 5, 2023, Plaintiff filed a four-page motion for leave to amend her complaint, attaching her proposed amended complaint. (ER-14–30.) In the proposed amended complaint, Plaintiff sprinkled in the word "wiretapping" throughout, added several legal conclusions parroting words used in CIPA, and added four (4) paragraphs of factual allegations:

- statements from ActiveProspect's CEO describing the purpose of TrustedForm in recording TCPA consent;

- an excerpt from ActiveProspect's patent discussing how information is recorded; and

- a TechRepublic.com blog post summarizing an article from Princeton University about replay software generally (not TrustedForm).

(ER-16–17 ¶¶ 9–12; 1-SER-31–45.)  In the motion for leave to amend, Plaintiff argued that these new factual allegations address the "supposed pleading defects" that the District Court had identified in its December 2022 Order. (ER-30.) Plaintiff, however, did not even attempt to address in the proposed amended complaint the other defects "raised in defendants' briefs," as per the District Court's directive in the December 2022 Order.  (*See* ER-38; ER-14–27.)

What If and ActiveProspect filed a joint opposition to Plaintiff's motion to amend.  (1-SER-11–29.)  Defendants explained that the proposed amended complaint's "new" allegations were functionally the same allegations as the original Complaint.  (2-SER-21–24.)  Thus, Defendants argued, Plaintiff's proposed amendment was futile because the only plausible conclusion from the allegations again was that TrustedForm is merely a recorder used by What If to record interactions with its own Website.  (*Id.*)

The parties' briefing on the motion to amend addressed a recent district court decision by District Judge Breyer that had issued on January 5, 2023 in *Javier v. Assurance IQ, LLC* ("*Javier II*").  (*See, e.g.*, 2-SER-22–23 (citing *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023).)  As Defendants explained, while ActiveProspect was involved in that case as well, the allegations before Judge Breyer in the *Javier II* complaint were different (albeit inaccurate).  (*Id.*)  In *Javier II*, the plaintiff alleged that ActiveProspect "monitors, analyzes, and

13

stores information about visits to Assurance's websites, and that ActiveProspect can use that information for other purposes." (*Id.*) But here, Plaintiff made no allegations of any "use for other purposes" of the information she provided to What If. Instead, Plaintiff's Complaint and proposed amended complaint described only a tool used by What If only for its own purposes.

After reviewing the parties' briefing and the *Javier II* decision, the District Court denied Plaintiff's motion to amend by Order entered on February 13, 2023 (the "February 2023 Order"). (ER-5–7.) The District Court recognized that while the substantive amendments provided "additional descriptive content," there was no explanation for how any of the new details related to Plaintiff's own interactions with the Website. (ER-6.) The District Court further found that the proposed new allegations did not plausibly allege that TrustedForm acts as anything other than a recording device used for What If's own purposes. (*Id.*) Moreover, the February 2023 Order distinguished the *Javier II* decision because it "contained different factual allegations which are inapplicable here." (ER-6–7.)

Finally, the District Court clarified its prior order to avoid any doubt as to its finding about whether it believed that "use" of recorded data must be alleged:

> ***Our prior order did not find that use of recorded data must be alleged***, but rather that the lack of any allegations beyond mere recordation—***with use being one such example***—therefore means TrustedForm as described in our complaint functioned as a recorder, not an eavesdropper. ***Plaintiff's proposed amended complaint***

> **_suffers the same flaw_**. This order thus finds the
> amendment futile.

(ER-7 (emphasis added).)  Thus, because Plaintiff's proposed amended complaint

suffered from the same "lack of any allegations beyond mere recordation" that

resulted in dismissal of the original complaint, the District Court denied Plaintiff's

motion for leave to amend and entered final judgment.  (ER-7; ER-4.)  This appeal

followed.  (ER-69–71.)

### SUMMARY OF ARGUMENT

The District Court properly rejected Plaintiff's deficient Complaint and

correctly denied the motion to amend for offering a proposed amended complaint

that contained the same deficiencies that plagued her original pleading.  Plaintiff did

not plausibly allege a CIPA violation or a common law privacy violation: she alleged

only that What If elected to use ActiveProspect's TrustedForm software in aid of its

own compliance practices, and that TrustedForm recorded Plaintiff's voluntary

interactions with What If's Website to that end.

Plaintiff's attempt to stretch CIPA and common law privacy claims to apply

to her experience with the Website is at odds with the plain text of CIPA, as well as

established California and Ninth Circuit precedent interpreting the statute.  Plaintiff

did not state a viable CIPA cause of action when she alleged only that a Website

Owner's chosen software tool functioned no differently than a tape recorder.

Further, allowing a proposed amended complaint that did not offer sufficient factual

15

allegations to make "eavesdropping" plausible would have been futile, and therefore, leave to amend was properly denied.

## STANDARD OF REVIEW

A District Court's grant of a motion to dismiss a complaint for failing to state a claim upon which relief may be granted is reviewed *de novo*. *See Plaskett v. Wormuth*, 18 F.4th 1072, 1083 (9th Cir. 2021). While the Court should "tak[e] all well-pleaded factual allegations as true," the complaint cannot merely consist of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Moreover, this Court "review[s] the denial of leave to amend for an abuse of discretion, but [it] review[s] the question of futility of amendment de novo." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1197 (9th Cir. 2021) (citation omitted); *accord Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002). When a district court dismisses a case and denies leave to amend on the grounds that amendment would be futile, the Ninth Circuit "'will affirm the district court's dismissal on this basis if it is clear, upon *de novo* review, that the complaint could not be saved by any amendment.'" *Curry v. Yelp Inc.*, 875 F.3d 1219, 1228 (9th Cir. 2017) (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009)).

I.  **THE DISTRICT COURT PROPERLY ANALYZED SECTION 631 TO REQUIRE THAT AN ALLEGED "THIRD-PARTY EAVESDROPPER" MUST HAVE ENGAGED IN MORE THAN MERE RECORDATION**

The California Supreme Court has explained that CIPA Section 631(a) contains "three operative clauses covering 'three distinct and mutually independent patterns of conduct': (1) 'intentional wiretapping [with any telegraph or telephone],' (2) 'willfully attempting to learn the *contents* or meaning of a *communication in transit* over a wire,' and (3) 'attempting to use or communicate information obtained as a result of engaging in either of the two previous activities.'" *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021) (quoting *Tavernetti v. Superior Court of San Diego Cnty.*, 22 Cal. 3d 187, 192 (Cal. 1978) (emphasis added). Section 631(a) also includes a fourth basis for liability, for anyone "'who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the' other three bases for liability." *Id.* (quoting Cal. Penal Code § 631(a)).

A.  **THE DIRECT PARTY EXEMPTION UNDER CIPA**

Plaintiff's CIPA claim is predicated entirely upon the theory that ActiveProspect qualified as a "third-party" eavesdropper for purposes of any alleged communications that Plaintiff had with What If, making ActiveProspect liable under the second clause of Section 631(a) and What If liable under the fourth clause of

Section 631(a) for aiding and abetting eavesdropping. Thus, as the District Court below found, "the question boils down to whether ActiveProspect was an independent third party hired to eavesdrop on What If's communications, or whether ActiveProspect's software was merely a tool that What If used to record its own communications with plaintiff." (ER-34.) The reason for this distinction stems from the statute itself as well as the case law developed by California courts interpreting CIPA's requirements.

CIPA Section 631(a) "contain[s] an exemption from liability for a person who is a 'party' to the communication[.]" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020); *see also Warden v. Kahn*, 99 Cal. App. 3d 805 (1979) ("[S]ection 631 . . . has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation."); *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) (finding there can be no liability for a party to a conversation because "it is never a secret to one party to a conversation that the other party is listening to the conversation; only a third party can listen secretly to a private conversation."); *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985) ("Section 631 was aimed at one aspect of the privacy problem—eavesdropping, or the secret monitoring of conversations by third parties." (citation omitted)).

Because a party to a conversation cannot be held directly liable under CIPA Section 631, whether What If may be held liable under the fourth clause depends

entirely on whether it aided and abetted ActiveProspect in "willfully attempting to learn the contents or meaning of a communication in transit over a wire." *Mastel*, 549 F. Supp. 3d at 1134 (quoting *Tavernetti*, 22 Cal. 3d at 192). Thus, to sustain a CIPA claim, Plaintiff was required to plausibly allege that ActiveProspect was a third-party eavesdropper. *Rogers*, 52 Cal. App. 3d at 899. In the absence of such allegations, the software tool provider is exempt from CIPA as an extension of the direct party.

Two California cases have been instructive in courts' decisions on this issue. First, in *Rogers*, the plaintiff had alleged a violation under Section 631 where the defendant, a party to the conversation, had shared with a third party a portion of a telephone conversation that had been recorded using a tape recorder, unbeknownst to the plaintiff. *See* 52 Cal. App. 3d at 896. The *Rogers* Court affirmed the lower court's grant of summary judgment in favor of the defendant, dismissing the plaintiff's CIPA claim. *Id.* at 900. The court held that there can be no violation of Section 631 where the recording at issue is made by a participant to the conversation. The court reasoned that, in regards to "reading, attempting to read, or learning the contents or meaning of a message while the message is in transit," "a recording made by a participant does not intercept the message while it is in transit; the recording rather transcribes the message as it is being received." *Id.* at 898. The *Rogers* Court further determined that, in reviewing the legislative finding and intent of CIPA, the

statute "speaks of preventing eavesdropping and other invasions of privacy, thus suggesting that participant recording was not meant to be included." *Id.* at 899.

On the other hand, in *Ribas*, the California Supreme Court overturned a dismissal of a Section 631 claim where plaintiff and his wife had a telephone conversation, and his wife allowed another person to secretly listen in on the conversation on an extension telephone. 38 Cal. 3d at 358. The Court noted that,

> [w]hile one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device.

*Id.* at 360–61 (citing *Warden*, 99 Cal. App. 3d at 813–14). Notably, "such secret monitoring denies the speaker an important aspect of privacy of communication— the right to *control* the nature and extent of the firsthand dissemination of his statements." *Id.* at 361.

### B. THE DIRECT PARTY EXEMPTION TO CIPA APPLIES HERE

Many federal district courts facing the recent tidal wave of CIPA litigations have analyzed both *Rogers* and *Ribas* to determine that software tool providers, such as session replay providers, are analogous to the tape recorder held by a party to the conversation in *Rogers* because control of the alleged communications remains with the Website Owner. In *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021),

for example, the court granted a motion to dismiss where the third-party software employed by the website "capture[d] its clients' data, host[ed] it on [the software's] servers, and allow[ed] the [website] to analyze [its] data." *Id.* at 832. The court found that the third-party was essentially acting as a "tape recorder" by allowing the website to track and store its own data, and thus the third-party software was an extension of the website and not an independent, third-party eavesdropper. *Id.* at 832–33 (citing *Rogers*, 52 Cal. App. 3d at 898).

In so holding, the court distinguished two cases relied upon by Plaintiff: *Revitch v. New Moosejaw, LLC*, No. 3:18-cv-06827, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) and *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020). The *Graham* court found particularly persuasive that the software vendor in those cases was alleged to have independently data-mined the customer information and sold it to advertisers. *Graham*, 533 F. Supp. at 832. Thus, the alleged third-party eavesdropper in those cases had control over disseminating the communications—similar to the person listening on the phone extension in *Ribas* and unlike the tape recorder in *Rogers*.

*Graham*'s reasoning was sound. Given Plaintiff's allegations here, that reasoning appropriately demanded dismissal of this case. Indeed, several other judges within this circuit have adopted *Graham*'s analysis to hold that use of a third-party's code to record and store data submitted by an individual to a Website Owner

does not constitute third-party eavesdropping within the meaning of CIPA. *See, e.g.*, *Byars v. Hot Topic, Inc.*, -- F. Supp. 3d --, No. 5:22-CV-01652, 2023 WL 2026994, at *8–10 (C.D. Cal. Feb. 14, 2023) (finding the defendant's use of a vendor to "record and analyze [defendant's] own data in aid of [d]efendant's business … makes the [vendor] an 'extension' of [d]efendant's website, not a 'third-party eavesdropper.'"); *Cody v. Boscov's Inc.*, -- F. Supp. 3d. --, No. 8:22-CV-01434, 2023 WL 2338302, at *2 (C.D. Cal. Mar. 2, 2023) (finding the party exemption applied because plaintiff failed to "provide facts suggesting that [the potential vendors] are recording [d]efendant's customers' information for some use or potential future use beyond simply supplying this information back to [d]efendant."); *Licea v. Am. Eagle Outfitters, Inc.*, -- F. Supp. 3d. --, No. 5:22-CV-01702, 2023 WL 2469630, at *7–8 (C.D. Cal. Mar. 7, 2023) ("When a party captures and stores data, courts have found that they operate like an extension of the defendant (i.e. a tape recorder)."); *Licea v. Cinmar, LLC*, -- F. Supp. 3d. --, No. 2:22-CV-06454, 2023 WL 2415592, at *7–9 (C.D. Cal. Mar. 7, 2023) (same); *Martin v. Sephora USA, Inc.*, No. 1:22-cv-01355, 2023 WL 2717636, at *13 (E.D. Cal. Mar. 30, 2023), *report and recommendation adopted in full*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023) (finding the sole allegation that the vendor "harvest[s] data for financial gain" too conclusory to support an allegation of third-party eavesdropping); *Licea v. Old Navy, LLC*, No. 5:22-cv-01413, 2023 WL 3012527, at *3 (C.D. Cal Apr. 19, 2023) (same).

Here, the facts as alleged in Plaintiff's Complaint and proposed amended complaint go to the heart of *Graham*'s analysis. While Plaintiff alleges that ActiveProspect hosts the recordings of TrustedForm entries on its servers, and collects and stores the information provided submitted by Website users, she did not allege any actual (or potential) use of the information **by ActiveProspect** for other purposes than servicing the Website Owner, What If. (*See* ER-62 ¶ 29.) Plaintiff did not allege that ActiveProspect retains any degree of control over the dissemination of the alleged communications, underscoring the conclusion that ActiveProspect's tool is little different than the tape recorder in *Rogers* and entirely different from the person listening on the phone extension in *Ribas*.

The District Court therefore properly found that Plaintiff alleged that ActiveProspect was simply an extension of a party to the alleged communications, exempt from liability under Section 631, and that she did not otherwise allege ActiveProspect acted as an "eavesdropper." Consequently, the District Court's December 2022 Order should be affirmed.

## II. THE COURT SHOULD REJECT PLAINTIFF'S ATTEMPT TO JUDICIALLY EXPAND CIPA LIABILITY THROUGH THE *JAVIER II* CAPABILITY TEST

Notwithstanding the long line of cases discussing why a passive third-party recording tool should be treated as an extension of the Website, Plaintiff argues that this Court should adopt the reasoning set forth by Judge Breyer in *Javier II*, 649 F.

Supp. at 899–901. However, *Javier II* represents an outlier opinion that would expand CIPA liability far beyond what the plain text of the statute provides. Further, even under the *Javier II* court's reasoning, Plaintiff's claims still fail. As such, the Court should reject Plaintiff's argument that *Javier II* supports a different result here.

## A. THE TEST ARTICULATED IN *JAVIER II,* WHICH WAS PREMISED ON DIFFERENT FACTS, WAS INCORRECTLY DECIDED

In *Javier II*, plaintiff sued a different website operator and ActiveProspect for violations of Section 631 in recording keystrokes, mouse movements, etc. *Id.* at 899. Critically, the court found that the plaintiff in that instance "plead[] that ActiveProspect monitors, analyzes, and stores information about visits to [the] websites, and that ActiveProspect can use that information for other purposes, even if [plaintiff] has not alleged that they have done so in this case." *Id.* at 900. Here, in contrast, Plaintiff merely alleged that ActiveProspect, as an extension of What If, collected and stored the information provided by Plaintiff and hosted the records of Plaintiff's interactions with the Website on its servers. (ER-62 ¶ 29.) Plaintiff alleged no use by ActiveProspect of the information for other purposes. (*See generally* ER-57–68.)

To reach its conclusion, the court in *Javier II* analyzed two lines of cases, some finding that the software providers at issue were third parties within the meaning of the statute (such as *Revitch* and *In re Facebook, Inc. Internet Tracking*

*Litigation*), and others finding the software providers were not (such as *Graham* and the District Court's Order). *Id.* at 899–900. The *Javier II* court disagreed with *Graham* and the December 2022 Order because (1) they "interpret[] the second prong . . . based on the *intentions* and *usage* of the prospective third party" where the second prong contains no use requirement and "swallow[s] the third prong in the process" and (2) the California Supreme Court's *Ribas* decision does not consider the eavesdropper's *intentions* or *use* of the communication. *Id.* at \*900 (emphasis added). The *Javier II* court instead found:

> There are only two other grounds upon which to conclude that ActiveProspect is not an "unannounced second auditor" of the interaction between Javier and Assurance: (1) If ActiveProspect does not have the <u>capability</u> to use its record of the interaction for any other purpose (just as a tape recorder has no independent capability to divulge the recording for any other purpose but that of its owner); or (2) the ubiquity of services like ActiveProspect on the internet effectively renders it party to the "firsthand dissemination" of Javier's information to Assurance.

*Id.*

Defendants respectfully submit that to the extent *Javier II* would allow any Complaint alleging a "capability" to share information to survive a 12(b)(6) challenge by invoking a hypothetical harm, then *Javier II* is wrong. Surely a complaint about violations of CIPA's eavesdropping restrictions would need to allege an actual or intended dissemination of recorded information by a third-party to make that party an "eavesdropper" under CIPA. Otherwise, the floodgates to

CIPA litigation would swing wide open and every third-party website tool used by a Website Owner in operating its own website would be argued to be an eavesdropper based on an alleged "capacity" to share recorded information, even if they never actually did so.

Indeed, adopting *Javier II* and basing CIPA liability on the theoretical "capability" of sharing information would have ramifications far beyond TrustedForm or Plaintiff's allegations at issue: it would essentially criminalize any third-party recording device for acts that were never committed. If a person uses his/her iPhone to record a phone conversation and saves it in his/her iCloud account, the fact that Apple may have access to the recorded information—and therefore a theoretical "capability" to use it—does not transform Apple into a third-party eavesdropper under CIPA.[5] Rather, the reasonable conclusion must be that even if the third-party has some hypothetical or theoretical "capability" of using the recorded communications or learning the content thereof, there cannot be any liability unless the third-party actually acts upon that capability in a way that goes beyond providing the recording back to the party who recorded it and harms the

---

[5] The expansive effect of the *Javier II* rule does not even stop there: many court websites, including the Ninth Circuit, utilize embedded third-party YouTube code to livestream and store oral arguments on their websites. But just because YouTube, and therefore Google, have may have theoretical access to and "capability to use" the recorded information cannot reasonably mean that the Ninth Circuit somehow aided and abetted a wiretapping.

party whose communication was recorded; the same result is warranted here.

Plaintiff's attempt to impute liability to a software provider for having the mere theoretical "capability" of either using recorded communications or learning the content thereof is analogous to litigants' repeated attempts to expand the TCPA's autodialer definition to include dialing equipment that might have the "capacity" to use a random or sequential number generator to store or produce telephone numbers to be called without regard to whether the capacity was used—an interpretation the Supreme Court squarely rejected in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021). In *Facebook*, the Supreme Court examined the Automated Telephone Dialing System provision of the TCPA, which was narrowly defined as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* at 1169 (citing 47 U.S.C. § 227(a)(1)). In rejecting the expansive theoretical capacity interpretation, the Court held that "Congress' definition of an autodialer requires that in all cases, whether storing or producing numbers to be called, the equipment ***must use*** a random or sequential number generator." *Id.* at 1170 (emphasis added). The Court was also concerned with the real-world implications of the overexpansive interpretation of capacity, and the absurd results that would follow relative to the narrow harm that the statute was intended to remedy:

> Expanding the definition of an autodialer to encompass any equipment that merely stores and dials telephone

> numbers would take a chainsaw to these nuanced
> problems when Congress meant to use a scalpel. Duguid's
> interpretation of an autodialer would capture virtually all
> modern cell phones, which have the capacity to "store ...
> telephone numbers to be called" and "dial such numbers."
> § 227(a)(1). The TCPA's liability provisions, then, could
> affect ordinary cell phone owners in the course of
> commonplace usage, such as speed dialing or sending
> automated text message responses. *See* § 227(b)(3)
> (authorizing a $500 fine per violation, increased to $1,500
> if the sender acted "willfully" or "knowingly").

*Id.* at 1171.

The exact same problem plagues Plaintiff's proposed "capability" interpretation of Section 631. "Section 631 was aimed at one aspect of the privacy problem—eavesdropping, or the secret monitoring of conversations by third parties." *Ribas*, 38 Cal. 3d at 359; *see also Rogers*, 52 Cal. App. 3d at 899 (comparing CIPA Sections 631 and 632 and noting that while the latter enumerates that it includes "recording," Section 631 only prohibits eavesdropping by third parties). As third-party recording software became more ubiquitous, the District Court—like the majority of courts to consider the issue—properly recognized the nuance that occurs when determining whether a recording tool falls within Section 631. (*See supra* Section I.B). *Javier II* injected a word into CIPA that was not otherwise included by the statute's drafters, and adopting that judicially created doctrine would "take a chainsaw" to the discrete privacy interest intended to be protected by the statute. By premising CIPA liability on whether a recorder has

some amorphous theoretical "capability" of using recorded communications or learning the contents thereof, rather than whether the provider of that recording software actually does so, courts would be "captur[ing] virtually all modern" communication devices within the otherwise narrow scope of the statute's reach, a result that the Legislature could not have intended.  And while Plaintiff repeatedly asserts that any other interpretation would "render the third clause of Section 631 superfluous," (a red herring flatly debunked by the District Court's February 2023 Order), it is *her* proposed reading of the statute that would have the actual effect of swallowing it completely: a complaint would not need to plead that a party "uses, or attempt to use" the data, but would just need to plead that they have the hypothetical or theoretical capability of doing so.  Neither the text of CIPA nor any of the caselaw construing it supports such a strained reading of Section 631.

**B.** **EVEN UNDER THE TEST ARTICULATED IN *JAVIER II*, PLAINTIFF STILL FAILS TO PLEAD THAT ACTIVEPROSPECT IS A THIRD-PARTY EAVESDROPPER**

Even if this Court did agree with *Javier II*'s "capability to use" test in determining whether a service provider could be a third party eavesdropper to the conversation (as Plaintiff urges the Court to do), the District Court's order should still be affirmed.  Plaintiff failed to make adequate allegations in her Complaint and her proposed amended complaint that ActiveProspect had a "capacity" to use the information she provided in any way other than allow What If to document

Plaintiff's interactions with its Website. The District Court indeed clarified in its February 2023 Order that it was focused on the inadequate allegations before it, and was not adopting a standard that would require allegations of data "use:" "[o]ur prior order did not find that use of recorded data *must* be alleged, but rather that the lack of any allegations beyond mere recordation—with use being one such example— therefore means TrustedForm as described in [the] complaint functioned as a recorder, not an eavesdropper." (ER-7)

Courts examining both the *Javier II* decision and the District Court's opinion have recognized the common ground between them. The central inquiry in all of these cases is whether the service provider lacks control of the dissemination of the information consistent with the tape recorder in *Rogers*. If so, the privacy concerns that drove a different result in *Ribas* are absent—just as they are here. In *Williams v. DDR Media*, the lower court reasoned:

> This is a difficult issue, and the *Javier* court's point that use is penalized by the third prong of the statute rather than the second is well-taken. However, the second prong of the statute penalizes anyone who "reads, or attempts to read, or to learn the contents or meaning of" the communication. Cal. Penal Code § 631(a). A person who eavesdrops on a conversation clearly falls under that definition. And a software company that analyzes or uses a recorded communication has read, attempted to read, or learned the contents of that communication. But the Court can think of no sense in which Jornaya has read, attempted to read, or learned the contents or meaning of the communication at issue here. Jornaya has merely recorded the communication for retrieval by a party to the same

> communication.  Thus, the Court finds that Jornaya is more akin to a tape recorder vendor than an eavesdropper.

No. 3:23-cv-03789, 2023 WL 5352896, at *4 (N.D. Cal. Aug. 18, 2023) (dismissing Section 631 claim brought in regards to a session replay tool used on a website because Plaintiff failed to allege "that a third-party read, attempted to read, or learned (or attempted to learn) the contents or meaning of its communication"); *see also Swarts v. Home Depot, Inc.*, No. 4:23-cv-00995, 2023 WL 5615453, at *7-8 (N.D. Cal. Aug. 30, 2023) (dismissing Section 631 claim because "[n]owhere in [plaintiff's] complaint does he allege that [the software provider], or any other third party, can use the information obtained for any other purpose besides relaying it to [the website owner]"); *Yockey v. Salesforce, Inc.*, No. 4:22-cv-09067, 2023 WL 5519323, at *4-5 (N.D. Cal. Aug. 25, 2023) (dismissing Section 631 claim because the allegations that the software provider utilizes its servers to directly receive communications which it analyzes to create transcripts does not "support a reasonable inference that [the software provider] has the capability to use these communications for any purpose other than furnishing them to [the website owner]"); *Balletto v. Am. Honda Motor Co.*, No. 4:23-cv-01017, 2023 WL 7026931, at *2-3 (N.D. Cal. Oct. 24, 2023) (same).

### III. THIS COURT MAY AFFIRM BASED UPON MANY OTHER PLEADING DEFICIENCIES THAT THE PARTIES BRIEFED BELOW AND THAT PLAINTIFF FAILED TO ADDRESS IN HER MOTION TO AMEND

Even assuming, *arguendo*, that the Court finds that Plaintiff plausibly alleged that ActiveProspect acted as a third-party (and not as an extension of What If) in either her original Complaint or proposed amended complaint, this Court should nonetheless affirm the District Court's dismissal on the other grounds that were fully briefed below. While the District Court's decision focused solely on Plaintiff's inability to plausibly allege that the TrustedForm tool engaged in more than mere recordation, the Ninth Circuit "may affirm the district court on any ground supported by the record, even if the ground is not relied on by the district court." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003) (quoting *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1034 n.4 (9th Cir. 2000)). Here, the record supports a number of alternative grounds for dismissing Plaintiff's Complaint with prejudice, each of which was fully briefed by the parties.

First, Plaintiff has not plausibly alleged that the TrustedForm software recorded any information while "in transit." (2-SER-269–72; 2-SER-190–93.) Second, neither the Complaint nor the proposed amended complaint plausibly allege that the session replay software recorded the "contents of any communication," as required by CIPA. (2-SER-272; 2-SER-193–94.) Third, judicially noticeable evidence establishes that Plaintiff consented to the alleged recording on which she

bases her allegations.  (2-SER-274–75; 2-SER-188–90.)  Any of these alternative

grounds alone warranted dismissal and denial of leave to amend and further

demonstrate that the District Court's order should be affirmed.[6]

### A. PLAINTIFF DID NOT PLAUSIBLY ALLEGE THAT ACTIVEPROSPECT RECORDED ANY INFORMATION WHILE "IN TRANSIT"

Plaintiff's attempt to expand CIPA fails because merely recording a

communication is not enough to state a claim under Section 631.  To plausibly assert

a valid CIPA claim, Plaintiff must be able to plausibly allege that TrustedForm

recorded the communication "***while*** the same is ***in transit*** or passing over any wire,

line, or cable, or is being sent from, or received at any place within this state."  Cal.

Penal Code § 631(a) (emphasis added).  Nevertheless, rather than plausibly alleging

facts sufficient to meet that burden, Plaintiff instead offered conclusory allegations

and legal buzzwords that parrot the statutory elements of Section 631(a).  These

allegations fail to meet Plaintiff's pleading obligations.

In the Ninth Circuit, courts interpreting Section 631 "have generally construed

---

[6]     If this Court were to reverse the District Court's orders while declining to address the alternative grounds for dismissal in the first instance, *see Golden Nugget, Inc. v. Am. Stock Exchange, Inc.*, 828 F.2d 586, 590 (9th Cir. 1987), then it would be inappropriate to simply permit Plaintiff to proceed with her claims, as she requests.  (Opening Br. at 27.)  Instead, in such a situation, the Court should remand the case to the District Court to address the alternative grounds for dismissal "in the first instance," including the Motion to Compel Arbitration.  *MacIntyre v. Carroll Coll.*, 48 F.4th 950, 956 (9th Cir. 2022).

[CIPA] as coextensive with the [federal] Wiretap Act." *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1228 n.9 (C.D. Cal. 2017); *see also, e.g.*, *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 954 (N.D. Cal. 2014) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act."); *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1033 (N.D. Cal. 2014) (same); Electronic Commc'ns Privacy Act of 1986, 18 U.S.C. §§ 2510-23 (the "Wiretap Act"). As such, cases analyzing the Wiretap Act's scope are "informative of section 631(a)." *E.g., Cinmar, LLC*, 2023 WL 2415592, at *9; *Am. Eagle Outfitters, Inc.*, 2023 WL 2469630, at *8.

Ninth Circuit precedent applying the Wiretap Act demonstrates that the "in transit" requirement was intended to be narrowly construed. In *Konop v. Hawaiian Airlines, Inc.*, the Ninth Circuit held that for a communication "to be 'intercepted' in violation of the [federal] Wiretap Act, it must be acquired during transmission, not while it is in electronic storage." 302 F.3d 868, 878 (9th Cir. 2002). "Even if the storage phase is transitory and lasts only a few seconds, it is still considered 'electronic storage'" and is not an interception of a communication in transit. *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1152 (C.D. Cal. 2007). *Konop* further explained that "[t]his conclusion is consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival.'" 302 F.3d at 878 (quoting *Webster's Ninth New Collegiate*

*Dictionary* (1985)).  Thus, "the crucial question under § 631(a)'s second clause is whether [Williams] has plausibly alleged that [TrustedForm] read one of [her] communications while it was still in transit, i.e., before it reached its intended recipient."  *Mastel*, 549 F. Supp. 3d at 1137; *see also Rogers*, 52 Cal. App. 3d at 898 ("[A] recording made by a participant does not intercept the message while it is in transit; the recording rather transcribes the message as it is being received.")

Given this narrow construction and "the fact that the [Wiretap Act] was written prior to the advent of the Internet and the World Wide Web," the Ninth Circuit recognizes that "the existing statutory framework is ill-suited to address modern forms of communication," *Konop*, 302 F.3d at 874.  The near-instantaneous speeds at which internet-based communications travel only serve to exacerbate the inapplicability of wiretapping statutes to this case.

In her Complaint, Plaintiff alleges that What If "embedded" the TrustedForm code onto the Website that, when "loaded onto a page," collects and stores the Website's HTML, the users' "event data," and the users' "changes to the [Website] right up to the point where the user leaves the page."  (ER-57–58 ¶¶ 2, 7.)  Plaintiff offers no allegations about the timing of any alleged recording, nor does she allege any facts supporting an inference that a recording was made before her inputs were received by the Website's servers.  Rather, Plaintiff alleges that TrustedForm recorded her interactions and then sprinkles in conclusory buzzwords about how this

recording occurred in "real time."  As one district court in this Circuit properly recognized, conclusory allegations of a contemporaneous interception in transit are not enough to state a claim under CIPA:

> Plaintiffs have not articulated with sufficient clarity when Vizio supposedly intercepted their communications. Besides their conclusory allegation that Vizio intercepted their electronic communications "during transmission," Plaintiffs rely on a rather inscrutable graphic with no textual explanation and vague allegations about how Vizio's data collection occurs "in real time."  While Plaintiffs need not prove their theory of interception on a motion to dismiss, Plaintiffs must provide fair notice to Defendants of when they believe Vizio intercepts their communications.

*In re Vizio*, 238 F. Supp. 3d at 1227–28 (internal citations omitted); *see also Rodriguez v. Google LLC*, No. 3:20-cv-04688, 2022 WL 214552, at *1–2 (N.D. Cal. Jan. 25, 2022) (holding plaintiffs' conclusory statement that "communications are intercepted" and multiple use of the word "simultaneous" was insufficient to allege a Section 631 claim).

In her proposed amended complaint, Plaintiff still failed to allege any facts articulating when this supposed "interception" occurred.  Rather, she alleged the same general facts as before, but increased her use of conclusory buzzwords such as "real time" and "intercept." (*See* ER-18 ¶ 17; 1-SER-31–45.) Courts routinely reject such attempts to conclude one's way out of Rule 8(a)—in other words, "[u]sing the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [defendant] is intercepting their data in transit."

*Rodriguez*, 2022 WL 214552, at *2; *see also, e.g.*, *Hernandez v. Path, Inc.*, No. 3:12-CV-01515, 2012 WL 5194120, at *3 (N.D. Cal. Oct. 19, 2012) (dismissing a CIPA claim because the complaint "fails to allege facts to support an inference that [defendant] 'intercepted' a 'communication' on [the website] contemporaneous with, and not after, the communication was posted"); *Quigley v. Yelp, Inc.*, No. 3:17-CV-03771, 2018 WL 7204066, at *4 (N.D. Cal. Jan. 22, 2018) (dismissing a CIPA claim because conclusory allegations of "surreptitious surveillance" are insufficient to "giv[e] rise to an inference that his communications were intercepted while 'in transit' as required"); *Rosenow v. Facebook, Inc.,* No. 3:19-CV-01297, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (granting a motion to dismiss because the complaint's allegation that the recording occurred "during transit" was "conclusory"); *Valenzuela v. Keurig Green Mountain, Inc.*, -- F. Supp. 3d --, No. 3:22-CV-09042, 2023 WL 3707181, at *5 (N.D. Cal. May 24, 2023) (rejecting an argument that the website implemented "code" to intercept data "in transit" because "[t]he allegations here do not explain—even at a high level—how such code might plausibly work").

Given the narrow scope of CIPA, Plaintiff bears the burden of pleading facts establishing that the content of her purported Internet communications was recorded while it was actually in transit. Her conclusory statements that TrustedForm's recording was conducted in "real-time" were not enough for her original Complaint

to survive a motion to dismiss, and were not enough for her proposed amended complaint to survive. Thus, because Plaintiff failed to plausibly allege that TrustedForm intercepted any communications "in transit", the District Court's order dismissing Plaintiff's CIPA and privacy claims should be affirmed on that alternative ground.

## B. PLAINTIFF DID NOT PLAUSIBLY ALLEGE THAT THE INFORMATION ALLEGEDLY RECORDED IS THE "CONTENT OF COMMUNICATIONS" UNDER CIPA

Plaintiff's attempt to expand the scope of CIPA liability also fails because the information that she alleges was recorded does not constitute "contents" of a communication under the statute. As with other aspects of CIPA, the analysis of whether allegedly recorded information is content "is the same as that under the federal Wiretap Act." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020). Indeed, case law under both statutes limits the term "contents" to the "intended message conveyed by the communication," and have uniformly held that the term "does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) (Wiretap Act); *Graham*, 533 F. Supp. 3d at 833 (applying this standard to CIPA). As such, courts have recognized that CIPA "communications" do not include **record information** "such as the name, address and subscriber number or identity of a subscriber or customer." *Graham*, 533 F.

Supp. 3d at 833. Nor does it include "keystrokes, mouse clicks, pages viewed, and shipping and billing information." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (also holding that passive tracking of keyboard inputs does not constitute "message content in the same way that the words of a text message or an email do.").

Here, Plaintiff's theory of "eavesdropping" is premised on the alleged recording of information found to be record information by the *Graham* and *Yoon* courts, not contents of a communication. Plaintiff alleges that the TrustedForm tool recorded "the date and time of the visit, the browser and operating system used by Williams during the visit," and the "geographic location," as well as taking video recordings of her "keystrokes and mouse movement and clicks." (ER-60–62 ¶¶ 22–27.) But even if these allegations are taken as true, none of that which was allegedly recorded can be considered content under CIPA because neither the Complaint nor the proposed amended complaint allege that TrustedForm read or learned the intended message conveyed by the communication by recording these portions of her interactions with the What If website. *Graham*, 533 F. Supp. at 833; *Yoon*, 549 F. Supp. at 1082–83.

Indeed, other courts analyzing session replay software have also rejected similar attempts to apply wiretapping laws to such activity. *E.g.*, *Cook v. GameStop, Inc.*, No. 2:22-CV-01292, 2023 WL 5529772, at *9 (W.D. Pa. Aug. 28, 2023)

(finding that "keystrokes" are not content under Pennsylvania's wiretap law because holding otherwise "would impermissibly render the distinction between content and non-content in the statute superfluous"); *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321 (S.D. Fla. 2021) (finding that "movements on the websites" and "information voluntarily input" by the user are not content under Florida's wiretap law because "this mere tracking of Plaintiff's movements on Defendant's website is the cyber analog to record information Defendant could have obtained through a security camera at a brick-and-mortar store").

Plaintiff's proposed amended complaint similarly fails to allege that any of the information allegedly recorded constitutes the "content of a communication". As in the original Complaint, the gravamen of her proposed amended complaint is that the TrustedForm software used by What If created a passive recording of her keyboard inputs and mouse-clicks on its Website. (ER-19–21 ¶¶ 25–31.) These allegations are not just similar to those found lacking by the District Court—they are the exact same deficient allegations, verbatim. (*Compare, e.g.*, ER-60–62 ¶¶ 21–27, *with* ER-19–21 ¶¶ 25–31; 1-SER-36–37.) Thus, because Plaintiff cannot plausibly allege that the TrustedForm software recorded the content of any communication, the District Court's decision should be affirmed on this alternative ground.

## C. JUDICIALLY NOTICEABLE EVIDENCE ESTABLISHES THAT PLAINTIFF AFFIRMATIVELY CONSENTED TO ANY ALLEGED RECORDATION

Finally, even if Plaintiff could overcome all the above obstacles (she cannot), she would remain unable to state a plausible claim under CIPA because she did not plead a lack of consent for the capture of her personally identifiable information ("PII").  Plaintiff pled that she did not provide "express consent" for the recording (*e.g.,* ER-59 ¶ 13; ER-62 ¶ 28; ER-65–66 ¶ 46), apparently trying to fit within Section 631's requirement that a CIPA plaintiff must not have consented to the recording:

> Any person . . . who willfully and *without the consent* of all parties to the communication, or in any *unauthorized* manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state [is subject to liability under this statute].

Cal. Pen. Code § 631(a) (emphasis added). Because lack of consent is required for a valid CIPA claim, Plaintiff should have alleged facts showing her purported lack of consent. "Where lack of consent is an express element of a claim, as is the case here, it must be alleged in the complaint." *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (holding that the statute's term "without the prior written consent" establishes an express element of the claim).  Moreover, she should have supported any allegations of lack of consent with plausibly pled facts—not

conclusory statements that are directly contradicted. *See id.* ("[T]he Court need not accept as true any allegations contradicted by matters properly subject to judicial notice or that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." (internal quotations removed)).

Plaintiff incorporates What If's Website into her Complaint, by featuring pages in multiple screenshots, and extensively relying on this Website as a basis for her Complaint. (*E.g.,* ER-57 ¶ 1; ER-59 ¶¶ 10, 12; ER-60–62 ¶¶ 21–26; ER-62 ¶ 32.)[7] Accordingly, the Complaint and judicially noticeable documents illustrate that Plaintiff (1) agreed to the Website's Privacy Policy and (2) consented to the

---

[7] While the District Court did not reach the consent argument and did not rule on Plaintiffs' request for judicial notice, a court may take judicial notice at any point during a case—including for the first time on appeal. *See, e.g.*, *Dawson v. Mahoney*, 451 F. 3d 550, 551 n.1 (9th Cir. 2006). The incorporation by reference "doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom— their claims." *Khoja v. Orexigan Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019).

Here, Plaintiff cited directly to the web address "claim.foundmoneyguide.com/api/offer" and extensively relied on a portion of that Website, which is only reachable through the first landing page the link points to— wherein the Plaintiff was required to agree to the Website's Privacy Policy. Judicial notice is appropriate here because the Plaintiff has "select[ed] only portions of [the website] that support their claims, while omitting portions of [that] very [website] that . . . doom . . . their claim[]." *Id.* Plaintiff has incorporated the entire Website and the Court should consider all relevant parts of this incorporated document. This Court should take notice of (1) the fact that the cited link (ER-60 ¶ 21) led to **a landing page** (not the subsequent data entry page featured in ER-60–61 ¶¶ 24–26), (2) the fact that the landing page includes a Privacy Policy, and (3) the contents of the Privacy Policy itself.

recording of her PII.

### 1. Plaintiff Agreed to the Website's Privacy Policy

The URL cited to in the Complaint leads to a page (the "Landing Page") that necessarily *precedes* the data entry page on which a consumer would enter information such as name, address, and phone number. (ER-60–61 ¶¶ 24–26) (the "Data Entry Page"). The Complaint relies heavily on the Data Entry Page to allege that Plaintiff typed in information on the Data Entry Page of the Website, which was data captured before she consented. (*Id.*) Notably, Plaintiff failed to state *how* she arrived at the Data Entry Page. It is, however, no mystery why Plaintiff omitted this portion of the Website from her pleading: as judicially noticeable documents show, the Landing Page required Plaintiff to agree to the Website's Privacy Policy ***before*** reaching the Data Entry Page—and this sequence of events proves independently fatal to her claims.

By using the Website in the manner she alleged in her Complaint, Plaintiff consented to the Website's Privacy Policy. The Website's Privacy Policy was conspicuously hyperlinked on the Landing Page. (*See* 2-SER-213.) Plainly, the only way for the Plaintiff to reach the Data Entry Page was to enter her email address and click the button "SEARCH FOR YOUR CASH" with clear language above the button laying out the impact of such action: "By clicking the button below, I agree

to the Terms and Conditions and Privacy Policy . . . ."[8] (*See* 2-SER-213.)  In order to have advanced to the page Plaintiff alleges she entered her information on, she must have clicked "SEARCH FOR YOUR CASH." (ER-60–61 ¶¶ 24–26.) Clicking the button manifested agreement to the terms available at the hyperlink, including the Privacy Policy. *See, e.g.*, *Greenberg v. Amazon.com, Inc.*, No. 4:20-CV-02782, 2021 WL 7448530, at *4 (N.D. Cal. May 7, 2021).

These are the facts apparent from judicially noticeable documents, and Plaintiff alleged no facts to the contrary.

### 2. Plaintiff Consented to the Capture of Her Personally Identifiable Information

Plaintiff's agreement to the Privacy Policy included consent to have her PII recorded, and that vitiates her claims here.  The Website's Privacy Policy put Plaintiff on notice that her PII could be captured even if she did "not complete the applicable registration process in full." (2-SER-224.)  Plaintiff was further on specific notice that the Website used third-party technologies, such as TrustedForm. (2-SER-224–25.) Courts routinely dismiss similar claims when a plaintiff was found to agree to such a privacy policy. *See, e.g.*, *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1030 (N.D. Cal. 2014) (granting Yahoo's motion to dismiss claim under Wiretap Act because email users agreed to terms of use and privacy policy).

---

[8] The Privacy Policy is linked twice on this landing page, once in the disclaimer above the submit button, and again at the bottom of the page.

Plaintiff cannot rely upon the Ninth Circuit's decision in *Javier I* to avoid dismissal based upon her own provision of consent. *Javier v. Assurance IQ*, No. 21-16351, 2022 WL 1744107, at *5 (9th Cir. May 31, 2022) ("*Javier I*"). In *Javier I*, the Ninth Circuit held that a party cannot *retroactively* consent under CIPA, and required a defendant to secure express consent prior to recording of communications to use that privacy policy as a defense to CIPA claims. *Id.*[9] But *Javier I* offers Plaintiff no refuge when the Privacy Policy was accepted before she moved on to the Data Entry Form where ActiveProspect's tool was employed to record her session.

Here, all facts within the pleading and the judicially noticeable documents discussed above indicate that Plaintiff's consent was obtained on the **landing page** of the Website prior to her entering any information alleged and depicted in the Complaint, and therefore her consent was not retroactive. (ER-60–61 ¶¶ 24–26; *see* 2-SER-213.) Only Plaintiff's e-mail address could have been entered prior to securing consent, but Plaintiff does not allege that her e-mail address was captured by ActiveProspect or that any "wiretapping" of her email address took place. (*See generally* ER-57–68.) Plaintiff's allegations focus solely on the alleged

---

[9] "The Ninth Circuit's unpublished decision in *Javier v. Assurance IQ*, 2022 WL 1744107 (9th Cir. May 31, 2022) appears to have opened the floodgates for these cases, an unfortunate unintended consequence of a brief, narrow ruling limited to the issue of prior consent." *Byars*, 2023 WL 2026994, at *4 n.6.

eavesdropping of the information she provided in the data entry fields accessed by Plaintiff after she had agreed to the Website's Privacy Policy allowing the recording of her interactions in the Data Entry Form. Thus, dismissal of the CIPA claim because of Plaintiff's clear acceptance of the Privacy Policy is also appropriate.

Not only has Plaintiff failed to plausibly assert her lack of consent, but also the documents she incorporated into her Complaint demonstrate that she cannot make such allegations. This is another independent, alternative basis to affirm the District Court's decisions below dismissing Plaintiff's claims and finding that her proposed amendment would be futile.

## IV. PLAINTIFF'S PROPOSED AMENDMENTS FAILED TO ADDRESS THE DEFICIENCIES IN HER COMPLAINT, RENDERING HER MOTION TO AMEND FUTILE.

The District Court did not abuse its discretion by denying Plaintiff's futile motion for leave to amend in its February 2023 Order because Plaintiff did not—and cannot—remedy the fundamental flaws that doomed her initial complaint, given the facts she already alleged. In its December 2022 Order, the District Court found that, even if all of the allegations in her Complaint were taken as true, Plaintiff's allegations merely established that TrustedForm "functioned as a recorder, and not as an eavesdropper." (ER-36.) The District Court still permitted Plaintiff to seek leave to amend her Complaint, however, allowing her to submit a proposed amended complaint and a motion explaining "how the amendments to the complaint cure[d]

the deficiencies identified [in the order], as well as any others raised in the [Appellees'] briefs." (ER-38.)

Notwithstanding this clear directive from the District Court, Plaintiff's proposed amended complaint failed to allege any facts that addressed these deficiencies, so the District Court "properly denied the proposed amendments which did not cure these deficiencies." *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981). Rather than addressing the failures noted by the Court, the amendments served to provide "additional descriptive context" for how TrustedForm operates, solidifying the District Court's earlier finding that the tool merely operates as a recording device. (ER-6–7.)

Where deficiencies are identified in a dismissal order but not remedied in a proposed amendment, the Ninth Circuit has frequently upheld dismissals without leave to amend "where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011); *accord Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013); *see also, e.g.*, *Shields v. Jones*, 719 F. App'x 545, 547 (9th Cir. 2017); *Ogden v. Wells Fargo Bank, NA*, 674 F. App'x 650, 651–52 (9th Cir. 2017). As discussed throughout, Plaintiff's position is that an outlier decision interpreting Section 631 pleading requirements should have influenced the District Court; as a result, she does not even attempt to

explain how the proposed amended complaint cured the many fundamental pleading deficiencies that the District Court identified below.

To be clear, despite Plaintiff's contention that her proposed amendments remedied the identified deficiencies and that it was purportedly "unclear" what the District Court "would accept as factual allegations," (Opening Br. at 26), the District Court already explained in its February 2023 Order why her proposed amendments "do not move the needle":

> What is not explained in plaintiff's proposed amendments is how these details connect to plaintiff's interaction with the What If website, the basis for our action.
>
> - The quoted patent language describes in technical terms how interactions are recorded and how those recordings are retrieved. That comports with our prior order's finding that TrustedForm, as it was deployed here, functions as a recording device.
>
> - The CEO's statements describe ActiveProspect as "an independent third party," but this has no bearing on our prior order's conclusion that ActiveProspect is not acting as a third party for purposes of a CIPA wiretapping claim under Section 631(a), given the facts alleged here.
>
> - Likewise, the article warning against threats to privacy is irrelevant unless it contains factual averments manifesting the violations claimed in the complaint.
>
> Critically, the proposed amendments add no additional facts regarding the actual alleged violations.

(ER-6 (formatting added).)

Notably, while Plaintiff concludes that her "additional factual allegations would more than support a finding that ActiveProspect was a third-party eavesdropper," she provides no factual explanation or legal authority for why the District Court was incorrect or abused its discretion in finding that her CIPA and privacy claims were not plausible under federal pleading standards. (*See* Opening Br. at 25–26.) Nor did Plaintiff's proposed amended complaint, motion to amend, or opening appellate brief address any of the other deficiencies in the original Complaint that Defendants identified in their briefs, as explained above. (*See supra* Section III.) Plaintiff's failure to address the other deficiencies is particularly notable because the District Court's order unambiguously required her to "explain how the amendments to the complaint cure the deficiencies identified herein, **as well as any others raised in defendants' briefs**." (ER-38 (emphasis added).)

Therefore, because (i) the District Court identified specific deficiencies in Plaintiff's Complaint, (ii) Plaintiff failed to cure any of the deficiencies identified, and (ii) Plaintiff failed to offer any explanation explaining why the District Court abused its discretion in denying leave to amend, the District Court properly denied Plaintiff's futile motion to amend.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Orders of the District Court granting the Motions to Dismiss and denying Plaintiff's futile motion for leave to amend be **AFFIRMED**.

Dated:        November 2, 2023          Respectfully Submitted,

KELLEY DRYE & WARREN LLP
Lauri A. Mazzuchetti
Becca J. Wahlquist

By   */s/* Lauri A. Mazzuchetti
        Lauri A. Mazzuchetti, Esq.

By   */s/* Becca J. Wahlquist
        Becca J. Wahlquist, Esq.

*Attorneys for Defendant-Appellee*
*ActiveProspect, Inc.*

SHEPPARD MULLIN RICHTER &
HAMPTON LLP
Jay T. Ramsey

By   */s/* Jay T. Ramsey
        Jay T. Ramsey, Esq.

KLEIN MOYNIHAN TURCO LLP
Neil Asnen

By   */s/* Neil E. Asnen
        Neil E. Asnen, Esq.

*Attorneys for Defendant-Appellee*
*What If Holdings, LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**   23-15337

I am the attorney or self-represented party.

**This brief contains**   11,969   **words,** including   0   words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated ⬚.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**   /s/ Lauri A. Mazzuchetti   **Date**   November 2, 2023
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Defendants-Appellees state that they are unaware of any related case(s) that is currently pending before this Court.

Dated:  November 2, 2023 Respectfully Submitted,

KELLEY DRYE & WARREN LLP

By /s/ Lauri A. Mazzuchetti
     Lauri A. Mazzuchetti, Esq.

*Attorneys for Defendant-Appellee
ActiveProspect, Inc.*

SHEPPARD MULLIN RICHTER &
HAMPTON LLP

By /s/ Jay T. Ramsey
     Jay T. Ramsey, Esq.

*Attorneys for Defendant-Appellee
What If Holdings, LLC*

# APPENDIX A

1.    Abad v. Apple, Inc., No. 5:23-cv-00505 (N.D. Cal.)

2.    Augustine v. Great Wolf Resorts, Inc., No. 3:23-cv-00281 (S.D. Cal.)

3.    Augustine v. Lenovo (United States), Inc., No. 3:22-cv-02027 (S.D. Cal.)

4.    Augustine v. Quest Diagnostics, Inc., No. 3:22-cv-01980 (S.D. Cal.)

5.    Bailey v. Meta Platforms, Inc., No. 3:22-cv-05422 (N.D. Cal.)

6.    Balanzar v. HP Inc., No. 3:22-cv-02030 (S.D. Cal.)

7.    Balletto v. American Honda Motor Co., Inc., No. 1:23-cv-01017 (N.D. Cal.)

8.    Barbat v. Sharp Healthcare, No. 3:23-cv-00330 (S.D. Cal.)

9.    Barrott v. Apple, Inc., No. 5:23-cv-00618 (N.D. Cal.)

10.   Bate v. Securly, Inc., No. 3:23-cv-01304 (S.D. Cal.)

11.   Beltran v. Doctors Medical Center of Modesto, No. 2:23-at-00774 (E.D. Cal.)

12.   Burgess v. Meta Platforms, Inc., No. 3:22-cv-05500 (N.D. Cal.)

13.   Byars v. Wal-Mart.com USA, No. 3:23-cv-04315 (N.D. Cal.) and 23-CIV-03331 (San Mateo Cty.)

14.   Byars v. Ascena Retail Group, No. CIVSB2315039 (San Bernardino Cty.)

15.   Byars v. Arzz International, Inc., No. 23STCV10924 (Los Angeles Cty.)

16.   Byars v. Casper Sleep Inc., No. CIVSB2215902 (Cal. Super. Ct., San Bernadino Cty.)

17.   Byars v. Cole Haan, LLC d/b/a www.colehaan.com, No. 23STCV12292 (Los Angeles Cty.)

18.   Byars v. Epicor Software Corporation, No. 23STCV14418 (Los Angeles Cty.)

19.   Byars v. Goodyear Tire and Rubber Co., No. 5:22-cv-01358 (C.D. Cal.)

20.   Byars v. Hot Topic Inc., No. 5:22-cv-01652 (C.D. Cal.)

21. Byars v. Macy's Inc., et al., No. 5:23-cv-00456 (C.D. Cal.) and CIV SB 2217010 (Cal. Super. Ct., San Bernardino Cty.)

22. Byars v. Rite Aid Corp., No. 5:22-cv-01377 (C.D. Cal.)

23. Byars v. Sephora USA Inc., No. 5:23-cv-00883 (C.D. Cal.)

24. Byars v. Sterling Jewelers, Inc. (Zale Delaware), No. 5:22-cv-01456 (C.D. Cal.)

25. Byars v. Whirlpool Corp., No. CIVSB2215944 (Cal. Super. Ct., San Bernadino Cty.)

26. C.M. v. Betterhelp, Inc., No. 3:23-cv-01033 (N.D. Cal.)

27. C.M. v. Marinhealth Medical Group, Inc., No. 23CV04179 (N.D. Cal.)

28. C.P. v. Meta Platforms, Inc., No. 3:23-cv-00735 (N.D. Cal.)

29. Calderon v. Meta Platforms, No. 5:22-cv-09149 (N.D. Cal.),

30. Calderon v. Target Corp., No. 3:23-cv-00692 (N.D. Cal.)

31. Camus v. Sharp Healthcare, No. 3:23-cv-00033 (S.D. Cal.)

32. Cantu v. Accuride International Inc., No. 23STCV16434 (Los Angeles Cty.)

33. Cantu v. Advent International, L.P., No. 30-2023-01335292 (Cal. Super. Ct., Orange Cty.)

34. Cantu v. Adventive, Inc., No. 30-2023-01333047 (Cal. Super. Ct., Orange Cty.)

35. Cantu v. Alimed Inc., No. 23STCV15787 (Los Angeles Cty.)

36. Cantu v. Belcan, LLC, No. 23STCV14224 (Los Angeles Cty.)

37. Cantu v. EHOB, Inc., No. 30-2023-01335288 (Cal. Super. Ct., Orange Cty.)

38. Cantu v. Findit, Inc., No. 23STCV15148 (Los Angeles Cty.)

39. Cantu v. Gordon Brothers Group, LLC, No. 30-2023-01335009

40. Cantu v. Jamestown Container Corporation, No. 23STCV16254 (Los Angeles Cty.)

41. Cantu v. Liveworld, Inc., No. 30-2023-01336517 (Cal. Super. Ct., Orange Cty.)

42. Cantu v. Navisite LLC, No. 23STCV24019 (Los Angeles Cty.)

43. Cantu v. Price Indus. Inc., No. 23STCV16163 (Los Angeles Cty.)

44. Cantu v. Radware Inc., No. 23STCV15147 (Los Angeles Cty.)

45. Cantu v. Sensus USA Inc., No. 23STCV16173 (Los Angeles Cty.)

46. Cantu v. Subex, Inc., No. 23STCV16463 (Los Angeles Cty.)

47. Chan v. Allego, Inc., No. 1:23-cv-11781 (D. Mass.)

48. Cima v. Apple, Inc., 5:23-cv-00397 (N.D. Cal.)

49. Clavecilla v. Cottage Health et al., No. 2:23-cv-7173 (C.D. Cal.)

50. Cody v. ABT Electronics, Inc., No. 2:23-cv-05222 and 23STCV06834 (Los Angeles Cty.)

51. Cody v. Ashley Furniture Industries, LLC, No. 3:23-cv-00065 (S.D. Cal.) and 07-02022-00048182 (Cal. Super. Ct., San Diego Cty.)

52. Cody v. Athletic Propulsion Labs LLC, No. 8:22-cv-01627 (C.D. Cal.)

53. Cody v. Boscov's, Inc., No. 8:22-cv-01434 (C.D. Cal.)

54. Cody v. Columbia Sportswear Co., No. 8:22-cv-01654 (C.D. Cal.) and 30-2022-01273036 (Cal. Sup. Ct., Orange Cty.)

55. Cody v. Dollar Shave Club Inc., No. 30-2022-01272145 (Cal. Sup. Ct., Orange Cty.)

56. Cody v. E. Gluck Corp., d/b/a www.armitron.com, No. 3:23-cv-02286 (N.D. Cal.)

57. Cody v. Glasses USA, Inc., No. 8:23-cv-01545 (C.D. Cal.)

58. Cody v. Lacoste USA, Inc., No. 8:23-cv-00235 (C.D. Cal.)

59. Cody v. Movado Grp., Inc., No. 3:23-cv-00015 (S.D. Cal.) and 37-2022-0004795 (Cal. Sup. Ct., San Diego Cty.)

60. Cody v. P.C. Richard & Son Service Company, Inc. d/b/a Pcrichard.com, No. 23STCV07578 (Los Angeles Cty.) and 2:23-cv-03438 (C.D. Cal.)

61. Cody v. Paula's Choice, LLC, No. 8:23-cv-00182 (C.D. Cal.) and 30-2022-01298397 (Cal. Super. Ct., Orange Cty.)

62. Cody v. Promises Behavioral Health, LLC, et al., No. 8:22-cv-01529 (C.D. Cal.)

63. Cody v. Ring LLC, No. 3:23-cv-00562 (N.D. Cal.)

64. Cody v. Skullcandy, Inc., No. 2:23-cv-03356 (C.D. Cal.) and 23STCV06828 (Los Angeles Cty.)

65. Cody v. Tiffany & Co., No. 8:22-cv-01648 (C.D. Cal) and 30-2022-01272211 (Cal. Sup. Ct., Orange Cty.) and 30-2022-01272732 (Cal. Sup. Ct., Orange Cty.)

66. Cody v. Visually, Inc., No. 23STCV07556 (Los Angeles Cty.)

67. Cody v. Warby Parker, Inc., No. 8:22-cv-01653 (C.D. Cal.) and 30-2022-01273354 (Cal. Sup. Ct., Orange Cty.)

68. Cousin v. Sharp HealthCare, No. 3:22-cv-02040 (S.D. Cal.)

69. Craig v. Meta Platforms, Inc., No. 3:23-cv-00315 (N.D. Cal.)

70. Curd v. Spirit Airlines, Inc., No. 22-cv-03174-GLR (D. Md. Dec. 8, No. 2022)

71. D'Angelo et al. v. The General Motors Co., No. 3:23-cv-00985 (S.D. Cal.)

72. D'Angelo v. FCA US, LLC, No. 3:23-cv-00982 (S.D. Cal.)

73. D'Angelo v. Nissan North America Inc., No. 3:23-cv-00980 (S.D. Cal.)

74. D'Angelo v. Penney Opco, LLC, No. 3:23-cv-00981 (S.D. Cal.)

75. D'Angelo v. Sears, Roebuck, and Co., No. 3:23-cv-00977 (S.D. Cal.)

76. Daghaly v. Bloomingdales.com LLC, No. 3:23-cv-00129 (C.D. Cal.)

77. Danforth v. Placentia-Linda Hospital, Inc., Tenant Helthcare Corp., No. 30-2023-01321351 (Cal. Super. Ct., Orange Cty.)

78. Davis v. Hoag Memorial Hospital Presbyterian, No. 8:23-cv-00772 (C.D. Cal.) and 30-2023-01312941 (Cal. Super. Ct., Orange Cty.)

79. Dhruva v. Curiosity Inc., No. 3:23-cv-03863 (N.D. Cal.) (formerly 5:23cv3863 (N.D. Cal.))

80. Diaz v. Anaplan, Inc., No. 23STCV23428 (Los Angeles Cty.)

81. Diaz v. Clarivoy Inc. d/b/a www.clarivoy.com, No. 23STCV14266 (Los Angeles Cty.)

82. Diaz v. Life is Good Co, No. 30-2023-01337168 (Los Angeles Cty.)

83. Diaz v. Moody's Analytics, Inc., No. 23STCV22729 (Los Angeles Cty.)

84. Diaz v. Pacific Office Automation, Inc., No. 23STCV23260 (Los Angeles Cty.)

85. Diaz v. Rapid7, Inc., No. 23STCV24164 (Los Angeles Cty.)

86. Diaz v. Ringlogix, LLC, No. 23STCV14805 (Los Angeles Cty.)

87. Diaz v. Sonicwall, Inc., No. 23CV423495 (Santa Clara Cty.)

88. Dluzak v. Apple, Inc., No. 5:23-cv-00426 (N.D. Cal.)

89. Doe v. Family Planning Associated Medical Group, Inc, No. 23CV037304 (Alameda Cty.)

90. Doe v. Betterhelp, Inc., No. 3:23-cv-01096 (N.D. Cal.)

91. Doe v. County of Santa Clara d/b/a Santa Clara Valley Medical Center, No. 5:23-cv-04411 (N.D. Cal.)

92. Doe v. Goodrx Holdings, Inc., Criteo Corp., Meta Platforms, Inc., and Google LLC, No. 3:23-cv-00501 (N.D. Cal.)

93. Doe v. Google LLC, No. 5:23-cv-02343 (N.D. Cal.)

94. Doe v. Google LLC, No. 5:23-cv-02431 (N.D. Cal.)

95. Doe v. Hey Favor, Inc., FullStory Inc., Meta Platforms, Inc., TikTok, Inc., and ByteDance Inc., No. 3:23-cv-00059 (N.D. Cal.)

96. Doe v. Hoag Memorial Presbyterian Hospital, No. 30-2023-0132765 (Cal. Super. Ct., Orange Cty.) and 8:23-cv-00444 (C.D. Cal.)

97. Doe v. Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and The Permanente Medical Grp., Inc., No. 4:23-cv-02207 (N.D. Cal.)

98. Doe v. Meta Platforms, Inc., No. 3:22-cv-04293-WHO (N.D. Cal.)

99. Doe v. Meta Platforms, Inc., No. 3:22-cv-04680 (N.D. Cal.)

100. Doe v. Meta Platforms, Inc., No. 3:22-cv-04963 (N.D. Cal.)

101. Doe v. Meta Platforms, Inc., No. 3:22-cv-06665 (N.D. Cal.)

102. Doe v. Meta Platforms, Inc., No. 3:22-cv-07557 (N.D. Cal.)

103. Doe v. Phe, Inc., No. 2:23-cv-08021 (C.D. Cal)

104. Doe v. Tenet Healthcare Corp, No. 1:23AT620 (E.D. Cal.)

105. Doe v. Washington Township Health Care District, No. 3:23-cv-05016 (N.D. Cal) and 23CV041046 (Alameda Cty.)

106. E.H. v. Meta Platforms, Inc., No. 3:23-cv-04784 (N.D. Cal)

107. Esparza v. 23andMe Inc., No. 37-2022-00051047 (Cal. Super. Ct., San Diego Cty.)

108. Esparza v. Camelot Venture Group, LLC d/b/a Sharperimage.com, No. 23STCV09814 (Los Angeles Cty.)

109. Esparza v. Concentrix Corp., No. 3:22-cv-01994 (S.D. Cal.) and 37-2022-00042499 (Cal. Sup. Ct., San Diego Cty.)

110. Esparza v. Crocs, Inc., No. 3:22-cv-01842 (S.D. Cal.) and 37-2022-00042517 (Cal. Sup. Ct., San Diego Cty.)

111. Esparza v. Dickeys BBQ Pit Inc., No. 3:22-cv-01502 (S.D. Cal.)

112. Esparza v. Docusign, Inc., No. 37-2023-00016676 (Cal. Super. Ct., San Diego Cty.)

113. Esparza v. Ecco USA, Inc., No. 37-2023-00009235 (Cal. Super. Ct., San Diego)

114. Esparza v. ECI Software Solutions, Inc., No. 37-2023-00025427 (Cal. Super. Ct., San Diego Cty.)

115. Esparza v. Expedia, Inc., No. 37-2023-00003062 (Cal. Super. Ct., San Diego Cty)

116. Esparza v. Fanduel Inc., No. 3:22-cv-01853 (S.D. Cal.) and 37-2022-00042370 (Cal. Sup. Ct., San Diego Cty.)

117. Esparza v. JP Outfitters, Inc., No. 37-2023-00006099 (Cal. Super. Ct., San Diego Cty.)

118. Esparza v. Kohls Inc., (Kohl's) 37-2022-00051963 (Cal. Super. Ct., San Diego Cty.)

119. Esparza v. Lego Sys., Inc. d/b/a Lego.com, No. 2:23-cv-01278 (C.D. Cal.) and 23STCV00833 (Los Angeles Cty.)

120. Esparza v. Lenox Corp., d/b/a lenox.com, No. 3:22-cv-09004 (N.D. Cal.)

121. Esparza v. Lulu's Fashion Lounge, LLC, No. 2:23-cv-08083 (C.D. Cal) and 23STCV19903 (Los Angeles Cty.)

122. Esparza v. Minted, LLC, No. 3:22-cv-01569 (S.D. Cal.)

123. Esparza v. National Automative Parts Association LLC, No. 23STCV22438 (Los Angeles Cty.)

124. Esparza v. Pacific Sunwear of California LLC, No. 37-2023-00006127 (Cal. Super. Ct., San Diego Cty.)

125. Esparza v. Sally Beauty Supply LLC, No. 30-2022-01294734 (Orange Cty.)

126. Esparza v. Simplehuman, LLC 37-2023-00009247 (Cal. Super. Ct., San Diego Cty.)

127. Esparza v. Tracfone Wireless, Inc., No. 2:23-cv-4863(C.D. Cal.) and 23STCV10908 (Los Angeles Cty.)

128. Esparza v. UAG Escondido A1 Inc. d/b/a AcuraofEscondido.com, No. 3:23-cv-00102 (S.D. Cal.) and 37-2022-00047997 (Cal. Sup. Ct., San Diego Cty.)

129. Esparza v. Wellness Coaches USA LLC, No. 37-2023-00003078 (Cal. Super. Ct., San Diego Cty)

130. Ewing v. 360 Tax Strategy Corp., No. 3:23-cv-01427 (S.D. Cal.)

131. Ewing v. Alleviate Tax, No. 3:23-cv-01231 (S.D. Cal)

132. Ewing v. Freedom Forever, LLC, No. 3:23-cv-01240 (S.D. Cal.)

133. Ewing v. Palmetto Solar, LLC, No. 3:23-cv-01292 (S.D. Cal.)

134. Ewing v. Rogers, No. 3:23-cv-01379 (S.D. Cal)

135. Farley v. Apple, Inc., No. 4:23-cv-00524 (N.D. Cal.)

136. Federman v. Cerebral Inc., No. 2:23-cv-01803 (C.D. Cal.)

137. G. v. TherapyMatch, Inc. d/b/a Headway, No. 4:23-cv-04422 (N.D. Cal) and 23CV037579 (Alameda Cty.)

138. Garcia v. Asana Inc., d/b/a asana.com, No. 30-2023-01332991 (Cal. Super. Ct., Orange Cty.)

139. Garcia v. BPS Direct, LLC, No. 23STCV01281 (Cal. Sup. Ct., Los Angeles Cty.)

140. Garcia v. Build.com, Inc., No. 3:22-cv-01985 (S.D. Cal.) and 37-2022-00046686 (Cal. Super. Ct., San Diego Cty.)

141. Garcia v. Coulter Ventures LLC, d/b/a roguefitness.com, No. 23STCV08872 (Los Angeles Cty.)

142. Garcia v. Cybercartel Int'l Inc., No. 23STCV16506 (Los Angeles Cty.)

143. Garcia v. Doximity, Inc., d/b/a Doximity.com, No. 23STCV09965 (Los Angeles Cty.)

144. Garcia v. First Factory, Inc. d/b/a www.firstfactory.com, No. 23STCV14715 (Los Angeles Cty.)

145. Garcia v. Global Uprising, PBC, No. 2023-01336364 (Orange Cty.)

146. Garcia v. IFit Inc., No. 23STCV01286 (Cal. Sup. Ct., Los Angeles Cty.)

147. Garcia v. Infiniscene, Inc., No. 2023-01336952 (Orange Cty.)

148. Garcia v. International Consulting Group, No. 30-2023-01337111 (Los Angeles Cty.)

149. Garcia v. L.L. Bean, Inc., No. 37-2022-00046730 (Cal. Super. Ct., San Diego Cty.)

150. Garcia v. No Borders Dental Resources, Inc., No. 22STCV40517 (Los Angeles Cty.)

151. Garcia v. Nuvei Technologies Inc., No. 23STCV14840 (Los Angeles Cty.)

152. Garcia v. Peter Millar, LLC, No. 23STCV01278 (Cal. Sup. Ct., Los Angeles Cty.)

153. Garcia v. Presidio, Inc. d/b/a www.presidio.com, No. 23STCV14712 (Los Angeles Cty.)

154. Garcia v. Rachas, Inc., d/b/a www.chuzefitness.com, No. 37-2023-00026081 (San Diego Cty.)

155. Garcia v. Sampler Stores, Inc., No. 23STCV17320 (Los Angeles Cty.)

156. Garcia v. Samsung Electronics America, Inc., No. 37-2023-00005775 (Cal. Super. Ct., San Diego Cty.)

157. Garcia v. Shopperschoice.com, LLC, d/b/a BBQGuys.com, No. 23STCV08866 (Los Angeles Cty.)

158. Garcia v. Shutterfly, LLC, No. 37-2023-00005766 (Cal. Super. Ct., San Diego Cty.)

159. Garcia v. Smartsheet, Inc., No. 30-2023-01332982 (Cal. Super. Ct., Orange Cty.)

160. Garcia v. Sportsman's Guide, LLC, No. 3:22-cv-09005 (N.D. Cal.)

161. Garcia v. THGPP LLC, No. 23STCV08863 (Los Angeles Cty.)

162. Garcia v. Untuckit LLC, No. 2023-01335784 (Orange Cty.)

163. Garcia v. Workday Inc., No. 23STCV09372 (Los Angeles Cty.)

164. Garcia v. Yeti Coolers LLC, No. 2:23-cv-02643 (C.D. Cal.) and 23STCV04680 (Los Angeles Cty.)

165. Garland v. 7 Cups of Tea, Co., No. 3:23-cv-04492 (N.D. Cal.)

166. Gibson v. Planned Parenthood Federation of America, Inc., No. 4:23-cv-04529 (N.D. Cal.)

167. Gibson v. Stanford Health Care, No. 23CV41 3522 (Cal. Super. Ct., Santa Clara Cty.)

168. Givan v. Loanme, Inc. d/b/a Redo Lending, No. 30-2023-01314865 (Cal. Super. Ct., Orange Cty.)

169. Gorey v. Scripps Health, No. 3:23-cv-00519 (S.D. Cal.) and 37-2023-00004850 (Cal. Super Ct., San Diego Cty.)

170. Greenley v. Kochava, Inc., No. 3:22-cv-01327 (S.D. Cal.)

171. Guitierrez v. Leesa Sleep, LLC, No. 23STCV17756 (Los Angeles Cty.)

172. Gutierrez v. Converse, Inc., No. 23-CV-06547 (C.D. Cal) and 23STCV15583 (Los Angeles Cty.)

173. Gutierrez v. Dave and Matt Vans, LLC, No. 23STCV00987 (Los Angeles Cty.) and 2:23-cv-02012 (C.D. Cal.) and 23STCV00987 (Los Angeles Cty.)

174. Gutierrez v. Digital Assets Inc., No. 23STCV04469 (Cal. Super Ct., Los Angeles Cty.)

175. Gutierrez v. Fibre Glass Developments Corp., LLC, No. 23STCV04470 (Cal. Super Ct., Los Angeles Cty.)

176. Gutierrez v. Four Sigma Foods, Inc., No. 2:23-cv-01421 (C.D. Cal.) and 23STCV01486 (Cal. Super Ct., Los Angeles Cty.)

177. Gutierrez v. Nano Net Technologies Inc., No. 23STCV20256 (Los Angeles Cty.)

178. H. v. Medtronic Mimimed, Inc., No. 2:23-cv-007154 (C.D. Cal.)

179. Hamilton v. Infomedia Grp. d/b/a Carenet, No. 30-2022-01296978 (Cal. Super. Ct., Orange Cty.)

180. Harrill v. Emanuel Medical Center, No. 2:23-at-00777 (E.D. Cal.)

181. Hazel v. Prudential Financial, Inc. and ActiveProspect, Inc., No. 3:22-cv-07465 (N.D. Cal.) and 4:22-cv-07465 (N.D. Cal.)

182. Heiting v. Arlo Technologies, Inc., No. 23STCV13511 (Los Angeles Cty.)

183. Heiting v. Arzz International, Inc., No. 23STCV21816 (Los Angeles Cty.)

184. Heiting v. Aviator Nation, Inc., No. 23STCV17652 (Los Angeles Cty.)

185. Heiting v. Bokksu, Inc., No. 23STCV19987 (Los Angeles Cty.)

186. Heiting v. Bose Corp., No. 23STCV15897 (Los Angeles Cty.)

187. Heiting v. Brilliant Earth, LLC, No. 23STCV15840 (Los Angeles Cty.)

188. Heiting v. Char-Broil, LLC, No. 23STCV15960 (Los Angeles Cty.)

189. Heiting v. HarperCollins Publishers LLC, No. 23STCV10382 (Los Angeles Cty.)

190. Heiting v. Iron Mountain, Inc., a Massachusetts Corp., No. 23STCV19708 (Los Angeles Cty.)

191. Heiting v. Iron Mountain, Inc., an Alabama Corp., No. 23STCV19701 (Los Angeles Cty.)

192. Heiting v. Kantata, Inc., No. 23STCV15827 (Los Angeles Cty.)

193. Heiting v. Lulu's Fashion Lounge, LLC, No. 2:23-cv-08083 (C.D. Cal) and 23CV01867 (Butte Cty.)

194. Heiting v. Nutanix, Inc., No. 23CV423607 (Santa Clara Cty.)

195. Heiting v. Printful, Inc, No. 23STCV16685 (Los Angeles Cty.)

196. Heiting v. Ringcentral, Inc., No. 2:23-cv-02649 (C.D. Cal.) and 23STCV05116 (Los Angeles Cty.)

197. Heiting v. SafetyCulture, Inc., No. 23STCV13598 (Los Angeles Cty.)

198. Heiting v. Shipt, Inc., No. 23STCV19688 (Los Angeles Cty.)

199. Heiting v. Sleep Number Co., No. 23STCV15963 (Los Angeles Cty.)

200. Heiting v. Smart & Final Stores, LLC, No. 23STCV24168 (Los Angeles Cty.)

201. Heiting v. Taro Pharmaceuticals USA Inc., No. 23STCV19790 (Los Angeles Cty.)

202. Heiting v. The Children's Place, Inc., CIVSB2317853 (San Bernardino Cty.)

203. Heiting v. The Container Store, Inc., No. 2:23-cv-08073 (C.D. Cal) and 23STCV20250 (Los Angeles Cty.)

204. Heiting v. Uline, Inc, No. 2:23-cv-7288 (C.D. Cal) and 23STCV18117(Los Angeles Cty.)

205. Heiting v. United Telecom, LLC, No. 23STCV09953 (Los Angeles Cty.)

206. Heiting v. Valvoline, Inc., No. 23STCV22583 (Los Angeles Cty.)

207. Heiting v. Vitamind Shoppe Industries, LLC, No. 23STCV16758 (Los Angeles Cty.)

208. Hernandez v. Afresh Technologies Inc., No. 23STCV175429 (Cal. Super. Ct. Los Angeles)

209. Hernandez v. Carnival Corp., No. 3:23-cv-01036 (S.D. Cal.) (formerly Oliver v. Carnival Corp., No. 2:22-cv-01855 (W.D. Pa.))

210. Hernandez v. Datatracks, Inc., No. 23STCV16470 (Cal. Super. Ct., Los Angeles)

211. Hernandez v. Hyperverge, Inc., No. 23STCV16432 (Los Angeles Cty.)

212. Hernandez v. Lumaverse Technologies Inc. d/b/a Fundly.com, No. 202300025527 (Cal. Super. Ct., San Diego Cty.)

213. Hernandez v. Meshpay US, Inc., No. 23STCV17552 (Los Angeles Cty.)

214. Hernandez v. MRI Software LLC, No. 23STCV14389 (Los Angeles Cty.)

215. Hernandez v. Northland Telephone Systems, No. 23STCV15163 (Los Angeles Cty.)

216. Hernandez v. Paralleldots, Inc., No. 23STCV17529 (Los Angeles Cty.)

217. Hernandez v. Simplify Compliance, LLC, No. 23STCV15142 (Los Angeles Cty.)

218. Howard v. Laboratory Corp. of America (Labcorp), Laboratory Corp. of America Holdings and Meta Platforms, Inc., No. 3:23-cv-02773 (N.D. Cal.)

219. Hughes v. Baby Trend, No. 23STCV16366 (Los Angeles Cty.)

220. Hughes v. Inovalon Holdings, Inc., No. 23STCV21810 (Los Angeles Cty.)

221. Hughes v. Institute of Business & Finance, No. 23STCV23284 (Los Angeles Cty.)

222. Hughes v. Jane Marketplace LLC, No. 23STCV04976 (Los Angeles Cty.)

223. Hughes v. Meta Platforms, Inc., No. 3:22-cv-05747 (N.D. Cal.)

224. Hunt v. Meta Platforms, Inc., No. 3:23-cv-04953 (N.D. Cal)

225. Hunthausen v. Books-A-Million, Inc., No. 23STCV20314 (Los Angeles Cty.)

226. Hunthausen v. Costway.com, Inc., CIVSB2317309 (San Bernardino Cty.)

227. Hunthausen v. Docusign Inc., No. 23STCV18224 (Los Angeles Cty.)

228. In re Meta Browser Tracking Litig., No. 4:22-cv-05267 (N.D. Cal.)

229. In re Meta Pixel Healthcare Litig., No. 3:22-cv-03580-WHO (N.D. Cal.)

230. Ingram v. Real Estate Skills, Inc., No. 22-cv-400203 (Cal. Super. Ct., Santa Clara)

231. James and Sevesind v. The Walt Disney Co., No. 3:23-cv-02500 (N.D. Cal.)

232. James v. Allstate Insurance Company, No. 3:23-cv-01931 (N.D. Cal)

233. James v. Sentai Filmworks, LLC, No. 5:23-cv-03928 (N.D. Cal.)

234. Jersey Mike's Franchise Systems, Inc. v. American Arbitration Association, Inc. (AAA), Augustine, and Lahr, No. 3:23-cv-03444 (D.N.J.)

235. Jones v. Arhaus, LLC, No. 3:23-cv-00984 (S.D. Cal.)

236. Jones v. Ergatta, Inc., No. 3:23-cv-00983 (S.D. Cal.)

237. Jones v. iFit, Inc. d/b/a www.NordicTrack.com, No. 3:23-cv-00983 (S.D. Cal.)

238. Jones v. Peloton Interactive, Inc., No. 3:23-cv-01082 (S.D. Cal.) and 37-2023-00023416 (Cal. Super. Ct., San Diego Cty.)

239. Jones v. Tonal Sys., Inc., No. 3:23-cv-01267 (S.D. Cal.) and 37-2023-00023025 (Cal. Super. Ct., San Diego)

240. K. v. Eisenhower Medical Center, No. 5:23-cv-02092 (C.D. Cal)

241. Katz-Lacabe v. Oracle America, Inc., No. 3:22-cv-04792 (N.D. Cal.)

242. Kauffman v. Alaska Airlines, Inc., No. 3:22-cv-01525 (S.D. Cal.)

243. Kauffman v. American Airlines, Inc., No. 4:22-cv-01123 (N.D. Tex.) and 3:22-cv-01524 (S.D. Cal.)

244. Kauffman v. Meta Platforms, Inc., No. 4:22-cv-06658 (N.D. Cal.)

245. Kauffman v. Papa John's Int'l, Inc., No. 3:22-cv-01492 (S.D. Cal.)

246. Kauffman v. The Home Depot, Inc., No. 3:23-cv-00259 (S.D. Cal.)

247. Kauffman v. Zillow Grp., No. 2:22-cv-1694 (W.D. Wa.) and 3:22-cv-01398 (S.D. Cal.)

248. Kendrick v. Bissell, Inc., No. 4:23-cv-01016 (N.D. Cal.)

249. Kis v. Cognism Inc., No. 3:22-cv-05322 (N.D. Cal.) (formerly 4:22-cv-05322 (N.D. Cal.))

250. Kolesnikow v. Meta Platforms, Inc., No. 3:22-cv-05421 (N.D. Cal.)

251. L.M. v. BetterHelp, Inc., No. 3:23-cv-01382 (N.D. Cal.)

252. Larch-Miller v. Meta Platforms, Inc., No. 3:22-cv-05426 (N.D. Cal.)

253. Lau v. Gen Digital Inc. and Jumpshot Inc., No. 4:22-cv-08981 (N.D. Cal.)

254. Leija v. Rite Aid Corp., No. 23at608 (E.D. Cal.)

255. Libman v. Apple, Inc., No. 5:22-cv-07069 (N.D. Cal.) and

256. Licea v. A.P.P Group Inc., No. 23STCV16533 (Los Angeles Cty.)

257. *Licea v. Adidas America, Inc.*, No. CIVSB2216418 (Cal. Super. Ct., San Bernadino Cty.)

258. *Licea v. American Eagle Outfitters, Inc.*, No. 5:22-cv-01702 (C.D. Cal.)

259. *Licea v. Autozone Inc.*, No. CIVSB2216467 (Cal. Super. Ct., San Bernadino Cty.)

260. *Licea v. Bath & Body Works Direct, Inc.*, No. 3:22-cv-01528 (S.D. Cal.)

261. *Licea v. BJ Acquisition LLC*, No. 3:22-cv-01579 (S.D. Cal.)

262. *Licea v. Bob's Discount Furniture LLC*, No. CIVSB2319459 (San Bernardino Cty.)

263. *Licea v. Books-A-Million Inc.*, No. 37-2023-00013708 (Cal. Super. Ct., San Diego Cty.)

264. *Licea v. Brainpop LLC*, No. CIVSB2319420 (San Bernardino Cty.)

265. *Licea v. Brentwood Home, LLC*, No. 37-2023-00016717 (Cal. Super. Ct., San Diego Cty.)

266. *Licea v. Brooklyn Bedding*, No. 23STCV04925 (Los Angeles Cty.)

267. *Licea v. Caraway Home Inc.*, No. 5:22-cv-01791 (C.D. Cal.)

268. *Licea v. Caspio, Inc.*, No. 23STCV14839 (Los Angeles Cty.)

269. *Licea v. Chewy, Inc.*, No. 3:22-cv-01852 (S.D. Cal.) and 37-2022-00042310 (Cal. Sup. Ct., San Diego Cty.)

270. *Licea v. Chipotle Mexican Grill, Inc.*, No. 37-2023-00013692 (Cal. Super. Ct., San Diego Cty.)

271. *Licea v. Cinmar, LLC*, No. 2:22-cv-06454 (C.D. Cal.)

272. *Licea v. Converse, Inc.*, No. 23STCV22389 (Los Angeles Cty.)

273. *Licea v. DAC Group/New York, Inc.*, No. 23STCV15816 (Los Angeles Cty.)

274. *Licea v. Doximity, Inc.*, No. 37-2023-00003125 (Cal. Super. Ct., San Diego Cty)

275. Licea v. Estee Lauder Inc., ELC Online Inc., No. 3:23-cv-00726 (S.D. Cal.)

276. Licea v. Everly Well, Inc., No. 37-2023-00003035 (Cal. Super. Ct., San Diego Cty.)

277. Licea v. Fossil Group Inc., d/b/a Fossil.com, No. 23STCV00831 (Los Angeles Cty.)

278. Licea v. Gamestop, Inc., No. 5:22-cv-01562 (C.D. Cal.)

279. Licea v. Genesco, Inc., No. 3:22-cv-01567 (S.D. Cal.)

280. Licea v. Glassparency Products, Inc., No. 22STCV40411 (Los Angeles Cty.)

281. Licea v. Globecast America Incorporated, No. 23STCV16165 (Los Angeles Cty.)

282. Licea v. Globema US, LLC, No. 2023-01334975 (Cal. Super. Ct., Orange Cty.)

283. Licea v. Igloo Prods., Corp., No. 37-2022-00042507 (Cal. Sup. Ct., San Diego Cty.)

284. Licea v. Jabian LLC, No. 2023-01335063 (Cal. Super. Ct., Orange Cty.)

285. Licea v. Jackson Motorsports Grp., Inc., No. 30-2023-01336540 (Orange Cty.)

286. Licea v. Jerome's Furniture Warehouse, No. CIVSB2319450 (San Bernardino Cty.)

287. Licea v. JNT Company, LLC, No. 23STV16244 (Los Angeles Cty.)

288. Licea v. Jockey Int'l, Inc., No. 23STCV02906 (Los Angeles Cty.)

289. Licea v. KEH, Inc., No. 23STCV19000 (Los Angeles Cty.)

290. Licea v. Kontoor Brands, Inc., No. 2:23-cv-05903 (C.D. Cal.)

291. Licea v. Lasko Products, No. 2023-01336361 (Orange Cty.)

292. Licea v. Levi Strauss, Co., No. 23STCV17313 (Los Angeles Cty.)

293. *Licea v. Lightedge Solutions LLC*, No. 37-2023-00025419 (Cal. Super. Ct., San Diego Cty.)

294. *Licea v. Logitech Inc.*, No. 3:22-cv-01490 (S.D. Cal.)

295. *Licea v. Lumeris Healthcare Outcomes, LLC*, No. 23STCV14680 (Los Angeles Cty.)

296. *Licea v. Luxottica of America, Inc.*, No. 5:22-cv-01826 (C.D. Cal.)

297. *Licea v. Malwarebytes Inc.*, CIVSB2224245 (Cal. Super. Ct., San Bernardino Cty.)

298. *Licea v. Mattress Firm, Inc.*, No. 3:22-cv-09002 (N.D. Cal.)

299. *Licea v. McGraw Hill, LLC, d/b/a www.mheducation.com*, No. 23STCV12283 (Los Angeles Cty.)

300. *Licea v. Men's Warehouse LLC*, No. 23STCV02964 (Los Angeles Cty.)

301. *Licea v. Old Navy, LLC*, No. 5:22-cv-01413 (C.D. Cal.) (related 5:22-cv-01358)

302. *Licea v. Overstock.com, Inc.*, No. 3:22-cv-01594 (S.D. Cal.)

303. *Licea v. Payless Shoesource Worldwide, LLC*, No. 3:22-cv-01586 (S.D. Cal.)

304. *Licea v. Puma North America, Inc.*, No. 5:22-cv-01939 (C.D. Cal.) and CIVSB2216492 (Cal. Super. Ct., San Bernadino Cty.)

305. *Licea v. Rack Room Shoes, Inc.*, No. 23STCV22458 (Los Angeles Cty.)

306. *Licea v. St. John's Knits, Inc.*, No. 23STCV22474 (Los Angeles Cty.)

307. *Licea v. Sunroad Auto Holding Corp., d/b/a BMW of El Cajon*, No. 37-2022-00046821 (Cal. Super. Ct., San Diego Cty.)

308. *Licea v. Talbots, Inc.*, No. CIVSB2216443 (Cal. Super. Ct., San Bernadino Cty.)

309. *Licea v. Talkspace, Inc.*, No. 37-2023-00003186 (Cal. Super. Ct., San Diego Cty)

310. Licea v. The Finish Line, Inc., No. 23STCV22390 (Los Angeles Cty.)

311. Licea v. The Howard Hughes Corp., No. 23STCV14667 (Los Angeles Cty.)

312. Licea v. The McClatchy Co., No. 23STCV14444 (Los Angeles Cty.)

313. Licea v. Timex.com, Inc., et al., No. 5:23-cv-00691 (C.D. Cal.) and CIVSB222412 (Cal. Super. Ct., San Bernardino Cty.)

314. Licea v. Tommy Hilfiger USA, Inc., No. 3:22-cv-01851 (S.D. Cal.) and 37-2022-00042365 (Cal. Sup. Ct., San Diego Cty.)

315. Licea v. Tumi, Inc., No. 37-2023-00013705 (Cal. Super. Ct., San Diego Cty.)

316. Licea v. Ulta Salon, Cosmetics & Fragrance, Inc., No. 5:23-cv-00201 (C.D. Cal.)

317. Licea v. Uniqlo USA LLC, No. 3:22-cv-01489 (S.D. Cal.)

318. Licea v. Vitacost.com, No. 3:22-cv-01854 (S.D. Cal.) and 37-2022-00042326 (Cal. Sup. Ct., San Diego Cty.)

319. Licea v. Wolverine World Wide, Inc., No. 3:22-cv-01564 (S.D. Cal.)

320. Licea v. X-Chair, LLC, No. 22STCV40421 (Los Angeles Cty.)

321. Lieca v. Global Comunications Group, Inc., No. 23STCV16259 (Los Angeles Cty.)

322. Lightoller v. Jetblue Airways Corp., No. 3:23-cv-00361 (S.D. Cal.)

323. Lightoller v. TCF Co. LLC, d/b/a The Cheesecake Factory, No. 3:23-cv-00272 (S.D. Cal.)

324. Love v. Ladder Financial, Inc. et al., No. 3:23-cv-04234 (N.D. Cal.)

325. Lucero v. Apple, Inc., No. 5:23-cv-00901 (N.D. Cal.)

326. Magadan v. Palomar Health, No. 37-2023-00012347 (Cal. Super. Ct., San Diego Cty.)

327. Mandeng v. Spirit Airlines, Inc., No. 3:23-cv-00233 (S.D. Cal.) and No. 2:23-cv-00784 (W.D. Pa.)

328. Marden v. Lmnd Medical Group, Inc. 3:23-cv-03288 (N.D. Cal)

329. Marquez v. Millerknoll, Inc., No. 4:23-cv-03861 (N.D. Cal.)

330. Marquez v. Rack Room Shoes, Inc., No. 4:23-cv-03859 (N.D. Cal.)

331. Martin v. Foot Locker Retail, Inc., No. 3:23-cv-00319 (ND Cal)

332. Martin v. Lovisa America, LLC, No. 1:22-cv-01356 (E.D. Cal.)

333. Martin v. Sephora USA, Inc., No. 1:22-cv-01355 (E.D. Cal.) and 1:22-at-00837 (E.D. Cal.)

334. Mavis v. JC USA, Inc. d/b/a Jenny Craig, No. 37-2023-00003705 (Cal. Super. Ct., San Diego Cty.)

335. McGinnis v. Community.com, Inc., No. 2:23-cv-2426 (C.D. Cal.)

336. McKay v. Nugs.net Enterprises, Inc., No. 23CV1900 (N.D. Cal)

337. Mendez v. Best Western International, Inc., No. 5:23-cv-03860 (N.D. Cal.)

338. Mikulsky v. Bloomingdales, LLC and Bloomingdales.com, LLC, No. 3:23-cv-00425 (S.D. Cal.)

339. Mikulsky v. Carnival Corp., No. 3:23-cv-1034 (S.D. Cal.)

340. Mikulsky v. Noom, Inc., No. 3:23-cv-00285 (S.D. Cal.)

341. Miller v. Pentagon Federal Credit Union, Verisk Analytics, Inc., and Lead Intelligence, Inc., No. 2:23-cv-04785 (C.D. Cal.)

342. Mitchell v. Meta Platforms, No. 3:22-cv-05267 (N.D. Cal.)

343. Moore v. BPS Direct, LLC, No. 3:22-cv-01951 (S.D. Cal.)

344. Moore v. Carhartt, Inc., No. 3:23-cv-00145 (S.D. Cal.)

345. Moton v. Apple Inc., No. 5:23-cv-00709 (N.D. Cal.)

346. Munoz v. Alianza, Inc., No. 30-2023-01333071 (Cal. Super. Ct., Orange Cty.)

347. Munoz v. I.P.S. Group, No. 30-2023-01337861 (Orange Cty.)

348. Munoz v. Qumpus, Inc., No. 23STCV16469 (Los Angeles Cty.)

349. Munoz v. Sharpspring Inc., d/b/a sharpspring.com, No. 3:23-cv-01130 (S.D. Cal.)

350. Murphy v. Meta Platforms, Inc., No. 23-cv-00899 (N.D. Cal.)

351. Naugle v. Meta Platforms Inc., No. 3:22-cv-09200 (N.D. Cal.)

352. Pena v. Gamestop, Inc., No. 3:22-cv-01635 (S.D. Cal.)

353. Popa v. Apple, Inc., No. 3:23-cv-00548 (N.D. Cal.)

354. Porter v. The Regents of the University of California, No. 37-2023-00011636 (Cal. Super. Ct., Orange Cty.)

355. Posadas v. Goodyear Tire & Rubber Co., No. 3:23-cv-00402 (S.D. Cal.)

356. Price v. Carnival Corp., No. 3:23-cv-00236 (S.D. Cal.) and 3:23-cv-00404 (S.D. Cal.)

357. Przywara v. Five9, Inc., No. 3:23-cv-01757 (N.D. Cal.)

358. Purscelley v. Cengage Learning, Inc., No. 23STCV14225 (Los Angeles Cty.)

359. R.C. v. Walgreen Co., No. 5:23-cv-01933 (C.D. Cal)

360. R.S. v. Betterhelp, Inc., No. 3:23-cv-1839 (N.D. Cal.)

361. Radonsky v. Meta Platforms, Inc., No. 3:22-cv-06111 (N.D. Cal.)

362. Ramirez v. Deckers Outdoor Corp., No. 23STCV15919 (Los Angeles Cty.)

363. Ramirez v. Herschel Supply Company, Ltd., No. 23CV7278 (C.D. Cal.) and 23STCV17910 (Los Angeles Cty.)

364. Ramirez v. Impreva, Inc., No. 23STCV19983 (Los Angeles Cty.)

365. Ramirez v. Indochino Apparel, Inc., No. 23STCV22093 (Los Angeles Cty.)

366. Ramirez v. Jack Riley Investments, LLC d/b/a Pink Lily Boutique, No. 23STCV13154 (Los Angeles Cty.)

367. Ramirez v. The Neiman Marcus Grp., LLC, No. 23STCV10451 (Los Angeles Cty.)

368. Ramirez v. Toast, Inc., No. 23STCV22582 (Los Angeles Cty.)

369. Ramirez v. Viking Range, LLC 23STCV16877 (Los Angeles Cty.)

370. Ramos v. The Gap, Inc., No. 4:23-cv-04715 (N.D. Cal.)

371. Rocha v. Urban Outfitters, Inc., No. 4:23-cv-00542 (N.D. Cal.)

372. Rodriguez v. Arotech Corp., No. 23STCV15751 (Los Angeles Cty.)

373. Rodriguez v. Bissel, Inc., No. 2023-01335888 (Orange Cty.)

374. Rodriguez v. Ford Motor Co., No. 3:23-cv-00598 (S.D. Cal.) and 37-2023-00008717 (Cal. Super Ct., San Diego Cty.)

375. Rodriguez v. General Mills, Inc., No. 3:23-cv-00828 (S.D. Cal.) and 37-2023-00013709 (Cal. Super. Ct., San Diego Cty.)

376. Rodriguez v. GNC Holdings LLC, No. 37-2023-00008920 (Cal. Super Ct., San Diego Cty.)

377. Rodriguez v. Hilton Worldwide Holdings, Inc., No. 37-2023-00016876 (Cal. Super. Ct., San Diego Cty.)

378. Rodriguez v. Ingenious Med, Inc., No. 30-2023-01334980 (Orange Cty.)

379. Rodriguez v. Level Wing Media LLC, No. 23STCV16192 (Los Angeles Cty.)

380. Rodriguez v. Simpleview LLC, No. 23STCV14432 (Los Angeles Cty.)

381. Rodriguez v. Supplyframe, Inc., No. 23STCV15226 (Los Angeles Cty.)

382. Rodriguez v. The Bay Clubs Co., No. 23STCV14449 (Los Angeles Cty.)

383. Rodriguez v. Vicci Eyewear, LLC, No. 37-2023-00009720 (Cal. Super. Ct., San Diego Cty.)

384. Rodriguez v. Xpressmyself.com LLC, No. 23STCV16193 (Los Angeles Cty.)

385. Rodriguez v. Zenni Optical, Inc., No. 3:23-cv-00821 (S.D. Cal.) and 37-2023-00012709 (Cal. Super. Ct., San Diego Cty.)

386. Rose v. Sansum Clinic, No. 2:23-cv-08180 (W.D. Cal) and 2:23-cv-06538 (C. D. Cal.)

387. Santiago v. Petco Animal Supplies Stores, Inc., No. 3:23-cv-00227 (S.D. Cal.) (Formerly Pl. Meehan)

388. Serrano v. Apple, Inc., No. 3:23-cv-00487 (N.D. Cal.)

389. Sijelmassi v. Meta Platforms, Inc., No. 3:22-cv-06619 (N.D. Cal.)

390. Slaten v. Dick's Sporting Goods, Inc., No. 2:23-cv-04861 (C.D. Cal.)

391. Smidga v. Spirit Airlines, Inc., Case No. 22-cv-01578-MJH (W.D. Pa. Nov. 7, No. 2022)

392. Smith v. Google LLC, No. 5:23-cv-03527 (N.D. Cal.)

393. Smith v. Volvo Car USA, LLC, No. 3:22-cv-01965 (S.D. Cal.)

394. Spalinger v. El Camino Hospital, No. 23CV412292 (Santa Clara Cty.) and 5:23-cv-02350 (C.D. Cal.)

395. Stewart v. Advocate Aurora Health, Inc., et al., No. 23-cv-00900 (N.D. Cal.)

396. Strehl v. Guitar Center, Inc., No. 2:23-cv-02603 (C.D. Cal.) and 23STCV03275 (Los Angeles Cty.)

397. Subbaiah v. Tax Defender USA LLC, No. 8:23-cv-01287 (C.D. Cal.)

398. Swarts v. The Home Depot, Inc., No. 4:23-cv-00995 (N.D. Cal.) and 23CV410599 (Cal. Super. Ct., Santa Clara Cty.)

399. T. v. Openai et al, No. 3:23-cv-04557 (N.D. Cal.)

400. Teixeira v. Apple, Inc., No. 5:23-cv-00617 (N.D. Cal.)

401. Thomas v. Papa Johns Int'l, Inc., d/b/a Papa Johns, No. 3:22-cv-02012 (S.D. Cal.)

402. Toston v. JetBlue Airways Corp., No. 23CV01156 (C.D. Cal.)

403. *V.K. v. Betterhelp, Inc.*, No. 3:23-cv-01653 (N.D. Cal.)

404. *Valdez v. Emanate Health*, No. 2:23-cv-07828 (C.D. Cal)

405. *Valenzuela v Amica Mutual Insurance Company*, No. 23STCV04849 (Los Angeles Cty.)

406. *Valenzuela v. Aflac Inc.*, No. 2:22-cv-06348 (C.D. Cal.) and 22STCV23742 (Cal. Sup. Ct., Los Angeles)

407. *Valenzuela v. AIG Direct Ins. Servs. Inc.*, No. 5:22-cv-01561 (C.D. Cal.)

408. *Valenzuela v. Air Hydro Power LLC*, No. 23STCV17590 (Los Angeles Cty.)

409. *Valenzuela v. Alexander Wang LLC*, No. 23STCV12422 (Los Angeles Cty.)

410. *Valenzuela v. Alixpartners, LLP, d/b/a alixpartners.com*, No. 23STCV15686 (Los Angeles Cty.)

411. *Valenzuela v. As Beauty LLC dba Lauragellar.com*, No. 23STCV10403 (Los Angeles Cty.)

412. *Valenzuela v. Asteelflash USA Corp.*, No. 2023-01335341 (Orange Cty.)

413. *Valenzuela v. Bedding Pros, LLC*, No. 23STCV02945 (Cal. Super. Ct. LA Cnty.)

414. *Valenzuela v. BJ's Wholesale Club, Inc.*, No. 2:22-cv-06378 (C.D. Cal.) and 22STCV25022 (Cal. Sup. Ct., Los Angeles)

415. *Valenzuela v. Bootbarn, Inc.*, No. 22STCV40497 (Los Angeles Cty.)

416. *Valenzuela v. Boxcom, Inc.*, No. 37-2023-00016674 (Cal. Super. Ct., San Diego Cty.)

417. *Valenzuela v. Brand*, No. 30-2023-01337235 (Los Angeles Cty.)

418. *Valenzuela v. Build-A-Bear Workshop, Inc.*, No. 23STCV04542 (Cal. Super Ct., Los Angeles Cty.)

419. *Valenzuela v. C.C. Filson Co.*, No. 2:23-cv-03387 (C.D. Cal.) and 23STCV06952 (Los Angeles Cty.)

420. Valenzuela v. Carvana, LLC, No. CVRI2204530 (Cal. Sup. Ct., Riverside Cty.)

421. Valenzuela v. CNO Services, LLC, No. 5:22-cv-02084 (C.D. Cal.) and CVRI2204525 (Cal. Sup. Ct., Riverside Cty.)

422. Valenzuela v. Delivery.com LLC 30-2023-01336839 (Orange Cty.)

423. Valenzuela v. Dermacare LLC, d/b/a Bluechew.com, No. 37-2022-00047405 (Cal. Sup. Ct., San Diego Cty.)

424. Valenzuela v. Direct Digital LLC, No. 23STCV23963 (Los Angeles Cty.)

425. Valenzuela v. Electronic Commodities Exchange, L.P., dba www. Ritani.com, No. 23STCV10477 (Los Angeles Cty.)

426. Valenzuela v. Engage3, Inc., d/b/a Engage3.com, No. 30-2022-01297903 (Cal. Super. Ct., Orange Cty.)

427. Valenzuela v. Ensinger, Inc., No. 23STCV16268 (Los Angeles Cty.)

428. Valenzuela v. Faherty Brand, LLC, No. 8:23-cv-01574 (C.D. Cal.) and 30-2023-01997235 (Orange Cty.)

429. Valenzuela v. Farfetch.com US, LLC, No. 23STCV00831 (Los Angeles Cty.)

430. Valenzuela v. Fathead, LLC 2:23-cv-01960 (C.D. Cal.) and 23STCV02969 (Cal. Super. Ct. LA Cnty.)

431. Valenzuela v. Givenchy Corp., No. 23STCV01298 (Cal. Sup. Ct., Los Angeles Cty.)

432. Valenzuela v. Healthy Directions, LLC, No. 23STCV23968 (Los Angeles Cty.)

433. Valenzuela v. Hims & Hers Health, Inc., No. 3:23-cv-00011 (S.D. Cal.) and 37-2022-00047422 (Cal. Sup. Ct., San Diego Cty.)

434. Valenzuela v. Homage, LLC, No. 8:23-cv-01601 (C.D. Cal.) and 30-2023-01336826 (Orange Cty.)

435. Valenzuela v. Intersystems Corporation, No. 2023-01335008 (Cal. Super. Ct., Orange Cty.)

436. Valenzuela v. Jane Marketplace, LLC, No. 4:23-cv-02543 (N.D. Cal.)

437. Valenzuela v. Jivox Corporation, No. 23STCV17589 (Los Angeles Cty.)

438. Valenzuela v. Kaspersky Lab, Inc., No. 2:22-cv-09157 (C.D. Cal.) and 22STCV26119 (Cal. Sup. Ct., Los Angeles)

439. Valenzuela v. Keurig Green Mountain, Inc., d/b/a Keurig.com, No. 3:22-cv-09042 (N.D. Cal.)

440. Valenzuela v. Kroger Co., No. 2:22-cv-06382 (C.D. Cal.) and 22STCV25119 (Cal. Sup. Ct., Los Angeles)

441. Valenzuela v. Lamar Media, Corp., No. 30-2023-01336536 (Cal. Super. Ct., Orange Cty.)

442. Valenzuela v. Livechat, Inc., No. 2023-01333056 (Cal. Super. Ct., Orange Cty.)

443. Valenzuela v. Loews Hotels, LLC d/b/a Loewshotels.com, No. 23STCV07546 (Los Angeles Cty.)

444. Valenzuela v. M.A.C. Cosmetics Inc., No. 5:22-cv-01360 (C.D. Cal.)

445. Valenzuela v. Massage Envy Franchising LLC, No. 2:22-cv-05817 (C.D. Cal.) and 22STCV23456 (Cal. Sup. Ct., Los Angeles)

446. Valenzuela v. Medtronic, Inc., No. 23STCV24138 (Los Angeles Cty.)

447. Valenzuela v. Michael Kors (USA), Inc., No. 2:22-cv-05902 (C.D. Cal.) and 22SCTV23635 (Cal. Sup. Ct., Los Angeles)

448. Valenzuela v. Micron Technology, Inc., No. 2:23-cv-07058 (C.D. Cal.) and 23STCV17448 (Los Angeles Cty.)

449. Valenzuela v. Nationwide Mutual Ins. Co., No. 2:22-cv-06177 (C.D. Cal.) and 22STCV24136 (Cal. Sup. Ct., Los Angeles)

450. Valenzuela v. Noble House Hotels & Resorts, LP d/b/a Laubergedelmar.com, No. 23STCV07524 (Los Angeles Cty.)

451. Valenzuela v. Nuts.com, Inc., No. 23STCV24003 (Los Angeles Cty.)

452. Valenzuela v. Outdoor Voices, Inc., No. 23STCV19526 (Los Angeles Cty.)

453. Valenzuela v. Papa Murphy's Int'l, LLC, No. 5:22-cv-01789 (C.D. Cal.)

454. Valenzuela v. Pear Sports, LLC, No. CVRI2204529 (Cal. Sup. Ct., Riverside Cty.)

455. Valenzuela v. Pierre Fabre USA, Inc., No. 3:22-cv-02079 (S.D. Cal.) and 37-2022-00047487 (Cal. Sup. Ct., San Diego Cty.)

456. Valenzuela v. Rugs USA LLC, No. 30-2022-01294507 (Cal. Sup. Ct., Orange Cty.)

457. Valenzuela v. Sia International Trading Limited, No. 23STCV07626 (Los Angeles Cty.)

458. Valenzuela v. Stonex Group, Inc., No. 23STCV16084 (Los Angeles Cty.)

459. Valenzuela v. Super Bright LEDS Inc. dba SuperBrightLEDS.com, No. 5:23-cv-01148 (C.D. Cal.)

460. Valenzuela v. Tecovas, Inc., No. 23STCV17318 (Los Angeles Cty.)

461. Valenzuela v. Telesign Corporation, No. 23STCV17434 (Cal. Super. Ct., Los Angeles Cty.)

462. Valenzuela v. Under Armour, Inc., No. 22STCV24206 (Cal. Super. Ct., LA Cty.)

463. Valenzuela v. VF Outdoor LLC, d/b/a Smartwool.com, No. 37-2022-00046954 (Cal. Super. Ct., San Diego Cty.)

464. Valenzuela v. Wakefern Food Corp., No. 23STCV15220 (Los Angeles Cty.)

465. Valenzuela v. West Marine Products Inc., No. 5:22-cv-02082 (C.D. Cal.) and CVRI2204524 (Cal. Sup. Ct., Riverside Cty.)

466. Valenzuela v. World Wildlife Fund, Inc., No. 2:23-cv-06112 (C.D. Cal.) and 23STCV14554 (Los Angeles Cty.)

467. Williams v. DDR Media, LLC, and Lead Intelligence, Inc. d/b/a Jornaya, No. 3:22-cv-03789 (N.D. Cal.)

468. Williams v. Meta Platforms, Inc., No. 3:22-cv-05627 (N.D. Cal.)

469. Williams v. What If Holding, LLC d/b/a C4R Media Corp., and Active Prospect, Inc., No. 3:22-cv-03780 (N.D. Cal.) and No. 23-15337 (9th Cir.)

470. Willis v. Meta Platforms, Inc., No. 3:22-cv-05376 (N.D. Cal.)

471. Wilson v. The Regents of the University of California, 37-2023-00012463 (Cal. Super. Ct., San Diego Cty.)

472. Wright v. Greenlight Financial Tech., Inc., No. 3:22-cv-02025 (S.D. Cal.)

473. Wright v. Ulta Salon, Cosmetics & Fragrance, Inc., No. 3:22-cv-01954 (S.D. Cal.)

474. Yockey v. Salesforce, Inc., No. 3:22-cv-09067 (N.D. Cal.)

475. Zarif v. Hwareh.com, Inc., No. 3:23-cv-00565 (S.D. Cal.)

## CERTIFICATE OF SERVICE WHEN ALL CASE PARTICIPANTS ARE CM/ECF PARTICIPANTS

U.S. Court of Appeals for the Ninth Circuit Docket Number: 23-15337

I hereby certify that I electronically filed the foregoing **DEFENDANTS-APPELLEES' ANSWERING BRIEF** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on November 2, 2023.

I hereby certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: November 2, 2023

Respectfully Submitted,

KELLEY DRYE & WARREN LLP

By  /s/ Lauri A. Mazzuchetti
 Lauri A. Mazzuchetti, Esq.

*Attorneys for Defendant-Appellee ActiveProspect, Inc.*